UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SALAMAN OBERLANDER, and SALAMON
OBERLANDER, as Trustee of THE ADER I TRUST
dated December 11, 2014

                        Plaintiffs,

      -against-

AMERICAN GENERAL LIFE INSURANCE
COMPANY, MARC FROHLICH, and FROHLICH
FINANCIAL GROUP, LLC,

                        Defendants.

-----------------------------------------------------------------X

Index No. 20-cv-00567 (ILG)(JO)

---

**DEFENDANTS MARC FROHLICH AND FROHLICH FINANCIAL GROUP, LLC'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

---

WINGET, SPADAFORA &
SCHWARTZBERG, LLP
45 Broadway, 32nd Floor
New York, New York 10006
*Attorneys for Defendants Marc
Frohlich and Frohlich Financial
Group, LLC*

Of Counsel:    Christina M. Rieker, Esq.
                   Andrew M. Janof, Esq.

**TABLE OF CONTENTS**

<u>Page No.</u>

PRELIMINARY STATEMENT ........................................................................................1

RELEVANT FACTS ......................................................................................................4

GOVERNING LAW .......................................................................................................7

    A.    New York Law Appears to Apply to Plaintiffs'
            Breach of Contract Claims...........................................................................7

    B.    Plaintiffs' Tort Claims should be Analyzed Under
            New York Substantive Law ..........................................................................8

STANDARD OF REVIEW ............................................................................................10

ARGUMENT................................................................................................................11

    POINT I - PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF
    ACTION FOR FRAUD AND/OR MISREPRESENTATION
    AGAINST THE FROHLICH DEFENDANTS .................................................................11

        A.    Plaintiffs' Complaint Fails to Allege Any Details of the
               Alleged Fraud...........................................................................................11

        B.    The Allegedly Fraudulent Statements and/or Misrepresentations
               Are Non-Actionable Statements of Opinion or Predictions
               of Future Occurrences...............................................................................12

        C.    Plaintiffs Could Not Have Reasonably Relied on the
               Statements at Issue...................................................................................14

    POINT II - PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF
    ACTION FOR BREACH OF CONTRACT OR BREACH OF THE
    IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
    AGAINST THE FROHLICH DEFENDANTS .................................................................17

        A.    Plaintiffs Have Failed to Adequately Plead the Existence of a
               Contract or the Frohlich Defendants' Breach Thereof. ............................17

        B.    A Claim for Breach of an Oral Contract is Barred by the
               Statute of Frauds .....................................................................................19

         C.    The Insurance Policy is a Contract Between the Insurance
               Company and the Insured ..........................................................................20

i

D.      The Plaintiffs' Claim for Breach of Contract Fails for
        Lack of Consideration.......................................................................21

E.      Plaintiffs' Claims for Breach of the Implied Covenant of
        Good Faith and Fair Dealing Fails as it is Redundant of the
        Plaintiffs' Breach of Contract Claim ..........................................................23

POINT III - PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF
ACTION FOR BREACH OF FIDUCIARY DUTY AGAINST THE
FROHLICH DEFENDANTS .........................................................................................24

A.      Plaintiffs Have Failed to Allege Facts Sufficient to Establish
        a Fiduciary Duty Between the Frohlich Defendants and Plaintiffs ...........24

B.      Plaintiffs Have Failed to Allege a Breach of Any Fiduciary
        Duty Under Florida Law..............................................................................26

C.      Plaintiffs' Cause of Action for Breach of Fiduciary Duty is
        Duplicative of the Cause of Action for Breach of Contract.......................27

POINT IV - PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF
ACTION FOR NEGLIGENCE AGAINST THE FROHLICH DEFENDANTS..............28

POINT V - PLAINTIFFS HAVE FAILED TO ALLEGE ANY
CONSUMER-ORIENTED CONDUCT NECESSARY TO STATE
A CAUSE OF ACTION UNDER NEW YORK
GENERAL BUSINESS LAW § 349................................................................................30

POINT VI - PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF
ACTION FOR UNJUST ENRICHMENT ......................................................................32

POINT VII - PLAINTIFFS' CAUSE OF ACTION FOR A
DECLARATORY JUDGMENT FAILS AS A MATTER OF LAW ...............................33

POINT VIII - PLAINTIFFS HAVE SUFFERED NO DAMAGES AS A
RESULT OF THE ALLEGED CONDUCT OF THE
FROHLICH DEFENDANTS .........................................................................................35

A.      Plaintiffs Have Admitted That Any Losses Relating to the
        Policy Were Caused by the Conduct of a Non-Party to this Action..........35

B.      Plaintiffs' Alleged Damages Consist of Non-Recoverable,
        Voluntary Payments.....................................................................................36

CONCLUSION.................................................................................................................37

## TABLE OF AUTHORITIES

### CASES

Abdale v. N. Shore Long Island Jewish Health Sys., Inc., 49 Misc. 3d 1027, 19 N.Y.S.3d 850
(N.Y. Sup. Ct. 2015) ...................................................................................................12

Am. Strategic Ins. Co. v. Lucas-Solomon, 927 So. 2d 184 (Fla. 2d D.C.A. 2006) ......................20

Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce, 70 A.D.3d 423,
894 N.Y.S.2d 47 (1st Dep't 2010) ...........................................................................24

Am. Gen. Life Ins. Co. v. Salamon, No. 09 Civ. 5428, 2011 WL 976411,
(E.D.N.Y. Mar. 16, 2011), aff'd, 483 Fed.Appx. 609 (2d Cir.2012) ...........................................30

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...............................10

Avila S. Condo. Ass'n v. Kappa Corp., 347 So.2d 599 (1977) ....................................................15

Beardmore v. Abbott, 218 So.2d 807 (Fla. 3d D.C.A. 1969) ......................................................27

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ..........10

Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co., 53 A.D.3d 140, 855 N.Y.S.2d 459
(1st Dep't 2008) .......................................................................................................20

Brahver v. Fishman, No. 19616-07, 2008 WL 2614847 (N.Y. Sup. Ct. 2008) ......................13, 14

Burns v. Consol. Am. Ins. Co., 359 So. 2d 1203, 1206 (Fla. 3d D.C.A. 1978) ..........................28

Burns v. Hartford Acc. & Indem. Co., 157 So.2d 84 (1963) .......................................................34

Busker On The Roof Limited Partnership Co. v. M.E. Warrington, 283 A.D.2d 376,
725 N.Y.S.2d 45 (1st Dep't 2001) ...........................................................................25

Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co., 152 F. Supp. 3d 159
(S.D.N.Y. 2016) ..................................................................................................29, 30

Canzona v. Atanasio, 118 A.D.3d 841, 988 N.Y.S.2d 637 (2d Dep't 2014) ..............................27

Cathy Daniels, Ltd. v. Weingast, 91 A.D.3d 431 (1st Dep't 2012) ............................................25

Chase Investments, Ltd. v. Kent, 256 A.D.2d 298, 681 N.Y.S.2d 319 (2d Dep't 1998) ............13

Chelton v. Tallahassee-Leon Cty. Civic Ctr. Auth., 525 So. 2d 972 (Fla.1st D.C.A. 1988) ........29

Cilente v Phoenix Life Ins. Co., No. 600313/08, 2014 WL 70336
(N.Y. Sup. Ct. 2014) ................................................................................................13, 14

Cty. of Nassau v. Expedia, Inc., 120 A.D.3d 1178, 992 N.Y.S.2d 293 (2d Dep't 2014) .............32

Cooney v. Osgood Mach., 81 N.Y.2d 66 (1993) ......................................................................8, 9

Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 967 N.E.2d 1177 (2012) .........................32

Cosmos, Queens Ltd. v. Matthias Saechang Im Agency, 74 A.D.3d 682, 904 N.Y.S.2d 386
(1st Dep't 2010) ...........................................................................................................29

Detwiler v. Bank of Cent. Fla., 736 So. 2d 757 (Fla. 5th D.C.A. 1999) .....................................27

Dillon v. U-A Columbia Cablevision of Westchester, Inc., 100 N.Y.2d 525,
790 N.E.2d 1155 (2003) ...............................................................................................36

Done v. HSBC Bank USA, No. 09-CV-4878 JFB ARL, 2010 WL 3824142
(E.D.N.Y. 2010) ...........................................................................................................10

Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689
(Fla. 3d D.C.A. 2018) ...................................................................................................32

Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc., 79 So. 3d 855
(Fla. 4th D.C.A. 2012) ..................................................................................................12

Eastman Kodak Co. v. Roopak Enterprises, Ltd., 202 A.D.2d 220, 608 N.Y.S.2d 445
(1st Dep't 1994) .......................................................................................................11, 12

Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) .................................7

Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs., 872 F. Supp. 2d 1353
(S.D. Fla. 2012) ............................................................................................................12

Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386 (2d Cir. 2001) ..............................................7

Flax v. Lincoln Nat. Life Ins. Co., 54 A.D.3d 992, 864 N.Y.S.2d 559 (2d Dep't 2008) .............31

Freeman v. Dean Witter Reynolds, Inc., 865 So. 2d 543 (Fla. 2nd D.C.A. 2003) .......................12

Friedman v. Markman, 11 A.D.2d 57, 201 N.Y.S.2d 743 (1st Dep't 1960) ................................19

Frigerio v. United States, No. 10 CIV. 9086 SAS, 2011 WL 3163330
(S.D.N.Y. 2011) ......................................................................................................10, 35

Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 116 S. Ct. 2211,

135 L. Ed. 2d 659 (1996) ...............................................................................................7

George Hunt, Inc. v. Wash-Bowl, Inc., 348 So.2d 910 (Fla. 2d D.C.A. 1977) ............................11

GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449 F.3d 377 (2d Cir. 2006) ..............7, 8

Goel v. Ramachandran, 111 A.D.3d 783, 975 N.Y.S.2d 428 (2d Dep't 2013) ..........................32

Goldsmith v. Brockhouse, 979 So. 2d 1135 (Fla. 3rd D.C.A. 2008) ........................................23

Goldstein v. Lewis, 90 A.D.2d 748, 455 N.Y.S.2d 810 (1982), aff'd, 59 N.Y.2d 706,
450 N.E.2d 227 (1st Dep't 1983) ...............................................................................20

Griffin Bros. Co. v. Mohammed, 918 So. 2d 425 (Fla. 4th D.C.A. 2006) ...................................16

Harry M. Stevens, Inc. v. Medina, 63 A.D.2d 925, 406 N.Y.S.2d 99 (1st Dep't 1978) ...............34

HDR, Inc. v. International Aircraft Parts, Inc., 257 A.D.2d 603,
1999 N.Y. App. Div. LEXIS 330, (2d Dep't 1999) .......................................................21

Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362 (E.D.N.Y. 2009),
aff'd, 380 F. App'x 22 (2d Cir. 2010) ...........................................................................7

Hoffend & Sons, Inc. v. Rose & Kiernan, Inc., 19 A.D.3d 1056, 796 N.Y.S.2d 790
(4th Dep't 2005), aff'd, 7 N.Y.3d 152, 851 N.E.2d 1149 (2006) .....................................14

Ilarraza v. Medtronic, Inc., 677 F. Supp. 2d 582, (E.D.N.Y. 2009) ......................................10, 35

J.T. Magen & Co., Inc. v. Nissan N. Am., Inc., 178 A.D.3d 466, 113 N.Y.S.3d 702
(N.Y. App. Div. 2019) ..............................................................................................33

Johnson v. Edwards, 569 So. 2d 928 (Fla. 1st D.C.A. 1990) .................................................20

Kelner v. Woody, 399 So. 2d 35 (Fla. 3d D.C.A. 1981) ........................................................34

Koloski v. Metro. Life Ins. Co., 5 Misc. 3d 1028(A), 799 N.Y.S.2d 161 (Sup. Ct. 2004) ..........28

Kopelowitz & Co., Inc. v Mann, 83 A.D.3d 793, 921 N.Y.S.2d 108 (2d Dep't 2011) ...............21

Laufen, Inc. v. Andrew, 83 So. 3d 898 (Fla. 5th D.C.A. 2012) ..............................................28

Layden v. Boccio, 253 A.D.2d 540, 686 N.Y.S.2d 763 (2d Dep't 1998) ...................................27

Lipton v. Unumprovident Corp., 10 A.D.3d 703, 783 N.Y.S.2d 601 (2d Dep't 2004) ..........20, 21

Matter of Allstate Ins. Co. (Stolarz—New Jersey Mfrs. Ins. Co.), 81 N.Y.2d 219 (1993) ............7

v

Minsker v. John Hancock Mut. Life Ins. Co., 254 N.Y. 333, 173 N.E. 4 (1930) .........................16

Moore v. Liberty Power Corp., LLC, 72 A.D.3d 660, 897 N.Y.S.2d 723 (2010) ........................11

Murphy v. Kuhn, 90 N.Y.2d 266, 660 N.Y.2d 371 (1997) .....................................................25, 28

New Amsterdam Cas. Co. v. Intercity Supply Corp., 212 So.2d 110 (1968) ...............................34

New York University v. Continental Ins. Co., 87 N.Y.2d 308 (1995) .........................................24

Office Pavilion S. Fla., Inc. v. ASAL Prod., Inc., 849 So. 2d 367 (Fla. 4th D.C.A. 2003) ..........22

Orchid Const. Corp. v. Gonzalez, 89 A.D.3d 705, 932 N.Y.S.2d 125 (2nd Dep't 2011) ..............11

Orok Edem v. Grandbelle Int'l, Inc., 118 A.D.3d 848 (2d Dep't 2014) .......................................28

Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20,
623 N.Y.S.2d 529, 647 N.E.2d 741 (1995) .....................................................................................31

Padula v. Lilarn Props. Corp., 84 N.Y.2d 519 (1994) ...............................................................8, 9

Patton v. Carlson, 132 So. 2d 793 (Fla. 1st D.C.A. 1961) ............................................................17

Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp.,
450 So. 2d 1231 (Fla. 4th D.C.A. 1984) ........................................................................................11

Reznick v. Bluegreen Resorts Mgmt., Inc., 154 A.D.3d 891, 62 N.Y.S.3d 460
(2nd Dep't 2017) .......................................................................................................................17, 18

Roy L. Willard, Inc. v. Miller, 150 Fla. 458 (1942) ....................................................................17

Ruiz v. Brink's Home Sec., Inc., 777 So. 2d 1062 (Fla. 2d D.C.A. 2001) ...................................36

Sabharwal v Eminax LLC, No. 603395/00, 2002 WL 34338617 (N.Y. Sup. Ct. 2002) ..............23

Satra Ltd. v. Coca-Cola Co., 247 A.D.2d 248, 669 N.Y.S.2d 22 (1st Dep't 1998) ......................20

Schultz v. Boy Scouts, 65 N.Y.2d 189 (1985) .............................................................................9

Shibata v. Lim, 133 F. Supp. 2d 1311 (M.D. Fla. 2000) .............................................................23

Sorrentino v. Paganica, 18 A.D.3d 858, 859 (2d Dep't 2005) ....................................................29

Southtrust Bank and Right Equipment Co. of Pinellas County, Inc. v. Export Ins. Services, Inc.,
190 F.Supp.2d 1304 (M.D.Fla.2002) .............................................................................................19

Stutman v. Chemical Bank, 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000) ..............30

Sud v. Sud, 211 A.D.2d 423, 621 N.Y.S.2d 37 (1995) ...............................................................18

Sutton Park Development Corp. Trading Co. v. Guerin & Guerin Agency Inc.,
297 A.D.2d 430, 745 N.Y.S.2d 622 (3d Dep't 2002) ................................................................25

The Real Estate Value Co., Inc. v. Carnival Corp., No. 2004CA015280,
2011 WL 12882727, (Fla.Cir.Ct. May 12, 2011) .....................................................................27

Thompson v. Bank of New York, 862 So. 2d 768 (Fla. 4th D.C.A. 2003) ...........................14, 15

Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168 (Fla. 4th D.C.A. 1994) ..................14

Vance v. Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367
(Fla. 4th D.C.A. 1981) ..........................................................................................................13, 14

Von Keller v. Koehler, 264 A.D. 778, 34 N.Y.S.2d 673 (2d Dep't 1942) ..................................34

Wood Realty Tr. v. N. Storonske Cooperage Co., 229 A.D.2d 821, 646 N.Y.S.2d 410
(3d Dep't 1996) ..........................................................................................................................22

Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (1994) ...................................8

## STATUTES

27 Fla. Jur.2d, Fraud and Deceit, § 24 ........................................................................................14

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................1, 4

Florida Rules of Civil Procedure ("Fla.R.Civ.P."), Rule 1.120....................................................11

F.S.A. 725.01 ...............................................................................................................................19

Florida Statute § 86.011 ..............................................................................................................33

New York Civil Procedure Law and Rules ("CPLR") § 3001 .....................................................33

New York Civil Procedure Law and Rules ("CPLR") § 3016(b) ..................................................11

New York General Business Law § 349........................................................................30, 31, 37

New York General Obligations Law §5-701(a)(1) ......................................................................19

New York General Obligations Law §5-701 (a)(9) ........................................................................19

New York General Obligations Law §5-701 (a)(10) ....................................................................19

New York Insurance Laws, Article 32, §§ 3201-3241 .................................................................33

**PRELIMINARY STATEMENT**

Defendants Marc Frohlich and Frohlich Financial Group, LLC (the "Frohlich Defendants") respectfully request that this Honorable Court dismiss the Original Verified Complaint ("Complaint") (which is annexed to the Declaration of Christina M. Rieker in Support of Motion to Dismiss by the Frohlich Defendants ("Rieker Decl.") as **Exhibit "1")** filed by Plaintiffs Salaman Oberlander ("Plaintiff Oberlander") and Salamon Oberlander, as Trustee of the Ader I Trust (collectively referred to herein as "Plaintiffs"), for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

This matter arises out of the Plaintiffs' purchase of a life insurance policy issued by Defendant American General Life Insurance Company ("American General") insuring the life of Pearl Oberlander for a death benefit of $15,000,000 (the "Policy"), and naming the Ader I Trust as beneficiary (A true and correct copy of the Ader I Trust Agreement was attached to Complaint as **Exhibit "A"**, and is annexed to the Rieker Decl. as **Exhibit "2"**). A true and correct copy of the Life Insurance Policy at issue was attached to the Complaint as **Exhibit "B"**, and is annexed to the Rieker Decl. as **Exhibit "3"**.

The crux of the Complaint is that the Frohlich Defendants (or some unidentified agent(s) of Frohlich Defendants), sold Plaintiffs an unaffordable life insurance policy and made certain false statements and/or misrepresentations regarding the amount of premiums which would need to be paid by Plaintiffs. The Plaintiffs further allege that the Frohlich Defendants breached an agreement to secure a premium financing agreement to fund the premiums on the life insurance policy. See Rieker Decl., **Exhibit "1"**, *generally*.

A number of key admissions in the Plaintiffs' Complaint bar recovery in this matter.  First, Plaintiffs admit that, *prior to the purchase of the policy at issue*, there were "multiple policies in

1

force on Ms. Pearl Oberland [sic]" and that they "were having cash-flow difficulties with meeting the financial obligations for the premium payments on existing policies." See Rieker Decl. **Ex. "1"** ¶74(a) and(b). Plaintiffs also admit in the Complaint that they did in fact secure funding to pay the $250,000 quarterly premiums on the policy 'for a number of quarters' but ultimately allowed the policy to lapse in 2016. See Rieker Decl., **Exhibit "1"**, ¶¶ 65-67. The Plaintiffs now seek damages including "the loss of insurability on their mother" despite the fact that "there were already multiple policies in force on Ms. Oberland [sic]". **Id.** at ¶74(a), and return of their premium payments, which were paid to American General, and not the Frohlich Defendants.

The Plaintiffs' Complaint utterly fails to state a single claim against the Frohlich Defendants for several reasons. First and foremost, the Plaintiffs' claims fail as the Plaintiffs were inarguably aware of the amount of the monthly premiums at the time they purchased the policy, and the lack of premium financing in place. In fact, Plaintiffs indicated on the Application that the Owner (Salaman Oberlander) would be paying the premiums himself. See Rieker Decl. **Ex. "3"** pg. 4; **Ex. "4"**, pg. 3. Plaintiffs specifically represented to the Frohlich Defendants and the insurer in their Application for the Policy that ***Pearl Oberlander had a Personal Earned Income of $512,732 and a Net Worth of $119,810,961***. See Life Insurance Application, Part A, annexed to the Rieker Decl. as **Exhibit "4"** (the "Application")[1]. Thus, the Frohlich Defendants had no basis to believe the Plaintiffs could not afford the disclosed premiums.

Despite accepting the Policy which outlined the Plaintiffs' premium obligations and paying the premiums on the Policy for "a number of quarters", Plaintiffs now attempt to argue that the Frohlich Defendants should have known that the Plaintiffs could not afford the premiums and should never have solicited the Plaintiffs to purchase the Policy. See Rieker Decl. **Ex. "1"**, ¶74.

---

[1] We refer to the true and correct copy of Rieker Decl., **Ex. "4"** that has previously been provided to the Court, as Plaintiffs' counsel requested that the same be filed under seal.

2

However, the Plaintiffs were in the best position to know their financial situation and plan accordingly.

Moreover, though the Plaintiffs were under no obligation to the purchase the allegedly unaffordable Policy, and in fact had the opportunity to surrender the Policy within twenty (20) days of receipt for a full refund of any premium paid (See Rieker Decl. **Ex. "3"**, pg. 1), they voluntarily chose to "borrow[] hundreds of thousands of dollars to continue paying premiums on the policy for a number of quarters." Rieker Decl., **Ex. "1"**, ¶ 66.  Thus, and despite the fact that premium financing, the promise for which is what Plaintiffs allege they relied upon in purchasing the Policy, was not secured by the Frohlich Defendants, instead of surrendering the policy for a full refund, the Plaintiffs instead ***voluntarily purchased the Policy and secured a loan on their own to pay the premiums***.  Plaintiffs cannot now seek recovery of these premiums from the Frohlich Defendants after they allowed the policy to lapse.

Critically fatal to the Plaintiffs' Complaint is that the Plaintiffs have suffered no recoverable damages. The Plaintiffs seek damages including "the loss of insurability on their mother" despite the fact that "there were already multiple policies in force on Ms. Oberland [sic]". **Id.** at ¶74(a), and return of their premium payments, which were voluntarily paid after given an opportunity to return the policy for a full refund of premiums.  Further, the Plaintiffs have acknowledged, in a document signed by Plaintiff and discussed at length in the Complaint, ***that any economic loss suffered relating to the Policy was caused by a non-party to this action, not the Frohlich Defendants.*** A true and correct copy of the document, labeled "Agreement", is annexed to the Rieker Decl. as **Exhibit "5"**.

3

Based upon the foregoing, the Frohlich Defendants respectfully request that this Court issue an Order dismissing the Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and award such other and further relief as it deems just and proper under the circumstances.

## RELEVANT FACTS

In their Complaint, the Plaintiffs allege that "[o]n or about July or August 2014" Plaintiff Oberlander was approached by "individuals acting on behalf of and with the express authority of the Frohlich Defendants," who "solicited the sale of a life insurance policy on the life of his mother, Ms. Pearl Oberlander." See Rieker Decl., **Ex. "1"**, ¶ 48. The Plaintiffs have not alleged that any relationship whatsoever existed between the Plaintiffs and the Frohlich Defendants prior to July or August of 2014, the time of the alleged solicitation of this life insurance policy.

The Plaintiffs admit that during the time of the solicitation of the life insurance policy at issue, they informed the Frohlich Defendants that: (i) "there were already multiple policies in force on Ms. Pearl Oberland [sic] that, if anything, she may have been over-insured;" (ii) "Plaintiffs were having cash-flow difficulties with meeting the financial obligations for the premium payments on existing policies"; and (iii) "the Plaintiffs were in no a position to afford additional premium payments." See Rieker Decl., **Ex. "1"**, ¶ 74(a)(b)and(c).

Nonetheless, on December 17, 2014, Salamon Oberlander executed the Life Insurance Application, identifying Pearl Oberlander as the proposed insured, seeking a $30,000,000 life insurance policy, for the purpose of "Estate Conservation." Rieker Decl., **Ex. "4"**. Subsequently, on January 19, 2015, Pearl Oberlander executed this same application reporting a Personal Earned Income of $512,732 and a Net Worth of nearly $120 million. **Id.** at pg. 1. Plaintiffs also represent that Pearl Oberlander, at the time of the execution of the Application, had three existing life insurance policies with death benefits in the amounts of $7.5 million (Zurich), $5 million (New

4

York Life) and 3 million (Principal). **Id.** at pg. 3.  There is no allegation that these policies were procured by the Frohlich Defendants as they were, in fact, not.  The Plaintiffs also report that, in the past 90 days, they submitted applications for life insurance, naming Pearl Oberlander as the proposed insured, through Mass Mutual and AXA which were "withdrawn due to unfavorable offers." **Id.** at pg. 4. Clearly they were shopping for insurance through other insurers and agents, and were not the victims of any 'hard sell' by the Frohlich Defendants as they'd have this Court belief.  Finally, the Application indicated that Salamon Oberlander would be responsible for paying the premiums for the applied for policy, and not any third-party lender. **Id.** at pg. 3. In executing the Application, the Plaintiffs represented as follows:

> I, the Primary Proposed Insured and Owner signing below, agree that I have read the statements contained in this application and any attachments or they have been read to me. They are true and complete to the best of my knowledge and belief.
>
> Rieker Decl., **Ex. "4"**, pg. 5.

On March 5, 2015, the Policy was issued, naming Pearl Oberlander as the insured, with a $15,000,000 death benefit. Rieker Decl., **Ex. "3"**. Pursuant to the Policy, *and written in bold print on the cover page*, Plaintiffs had the option to "return this policy within twenty* days after delivery" if they were "not satisfied with it for any reason…Upon surrender of this policy within the twenty* day period, it will be void from the beginning" and the insurer would "refund any premium paid." **Id.** at pg. 1.

Pursuant to the Policy, the Plaintiffs were required to pay an Initial Premium of $87,346.45, and a Planned Periodic Payment, Payable "MONTHLY" of $87,346.45.  The Target Premium was presented as $1,029,900.00. Rieker Decl., **Ex. "3"**, pg. 4.

5

Finally, the Plaintiffs allege that after they "borrowed hundreds of thousands of dollars" to pay the premiums "for a number of quarters", the Policy "lapsed in 2016." Rieker Decl., **Ex. "1"**, ¶¶ 66-7.

According to the Complaint, in January 2019, Plaintiff Oberlander executed what Plaintiffs refer to as a "cooperation agreement," Rieker Decl. **Ex. "1"**, ¶¶40-41. While Plaintiffs allege this cooperation agreement did not go into effect because "all conditions precedent" were not present, Plaintiffs do not deny that Oberlander executed the Agreement.  The cooperation agreement entitled "Agreement," signed by Plaintiff Oberlander, states that: "to the best of Oberlander's knowledge, Menachem Lichter[2] perpetrated and is responsible for the economic loss of the Policy." Rieker Decl., **Ex. "5"**, ¶¶ (C) and (D). "Policy" is defined as "life insurance policy issued by American General on the life of Pearl Oberlander, and bearing policy number A71011941L." **Id.**  According to the Complaint, Defendant Frohlich made an "initial payment" of $50,000 to Plaintiff Oberlander as required under the Agreement.  Rieker Decl. **Ex. "1"**, ¶ 41.  The remaining payments were to be made after a Hearing in the matter of Menachem Lichter v. Marc Frohlich commenced. Rieker Decl. **Ex. "5(A)"**.  It appears, according to the Complaint, that the Hearing never went forward and as such, the remaining payments were not made. Rieker Decl. **Ex. "1"**, ¶¶ 41-44.

In light of the allegations set forth in the Complaint and the documents incorporated by reference therein, as well as the applicable case law, the Plaintiffs cannot proceed on any of their claims against the Frohlich Defendants.  Their claims are not only directly refuted by their own admissions set forth in binding, legal documents, but also fail as a matter of law.

---

[2] While Menachem Lichter was originally named as a Defendant in this matter, Plaintiffs filed a Notice of Discontinuance of their claim against him, without prejudice, with the Kings County Clerk on January 20, 2020 (NYSCEF Doc. No. 4; Index No.: 520832/2019).

6

## GOVERNING LAW

"Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996); see also Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In matters where a Federal Court sits in diversity jurisdiction, "in determining which state law controls, the Court applies the choice-of-law rules of the forum state." Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), aff'd, 380 F. App'x 22 (2d Cir. 2010).

"New York employs two different choice-of-law analyses, one for contract claims, another for tort claims." Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001). While in the present matter, Plaintiffs rely exclusively on New York law we undertake an analysis of both Florida and New York law for the Court's consideration.

### A.  New York Law Appears to Apply to Plaintiffs' Breach of Contract Claims

"Under the contracts analysis, the court evaluates the center of gravity or grouping of contacts, with the purpose of establishing which state has the most significant relationship to the transaction and the parties." Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 394 (2d Cir. 2001).

The New York Court of Appeals has noted several factors relevant in this consideration: "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." Matter of Allstate Ins. Co. (Stolarz—New Jersey Mfrs. Ins. Co.), 81 N.Y.2d 219, 227, (1993). Moreover, the Second Circuit Court of Appeals has previously noted that where insurance policies are at issue, the applicable law generally "is the law of the state of the insured risk." GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., 449

7

F.3d 377, 384 (2d Cir. 2006) referring to Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309 (1994). However, the Court noted that "the choice-of-law analysis remains the center of gravity or grouping of contacts for claims sounding in breach of contract between a broker and an insured." GlobalNet, 449 F.3d at 384.

There are, in essence, two (2) potential contracts at issue in this matter; (i) the alleged contract between the Plaintiffs and the Frohlich Defendants; and (ii) the Life Insurance Policy. First and foremost, the "insured risk" in this matter, Pearl Oberlander, listed an address in Brooklyn, New York in the Application. Rieker Decl., **Ex. "4"**. Pursuant to GlobalNet, this would support application of New York law. GlobalNet, 449 F.3d at 384. Additionally, the Plaintiffs allege that the solicitation of the Policy occurred through conversations which allegedly occurred in New York. Rieker Decl., **Ex. "1"**, ¶ 71. However, it bears noting that both the Owner and the Insured signed the application in Florida. Rieker Decl., **Ex. "4"**.

With respect to the Life Insurance Policy at issue, the first page of the Policy refers to application of "law in the state where this policy is issued for delivery." See Rieker Decl., **Ex. "3"**, pg. 1. Upon information and belief, the Policy was delivered to Plaintiff Ader I Trust c/o Salaman Oberlander in Miami Beach, Florida.

As to the claims against the Frohlich Defendants (as the Policy at issue is undisputedly a contract between American General and the Insured) (Rieker Decl., **Ex. "3"**, pg. 4), the factors weigh slightly in favor of the application of New York law.

#### B. **Plaintiffs' Tort Claims should be Analyzed Under New York Substantive Law**

"In the context of tort law, New York utilizes an interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." Padula v. Lilarn Props. Corp., 84 N.Y.2d 519, 521 (1994). New York aims to give "controlling

8

effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." Cooney v. Osgood Mach., 81 N.Y.2d 66, 72 (1993) (internal citations omitted). The interest analysis addresses two inquiries: "(1) what are the significant contacts and in which jurisdiction are they located; and (2) whether the purpose of the law [at issue] is to regulate conduct or allocate loss." Padula, 84 N.Y.2d at 521. A state's interest is defined based on the facts or contacts "which relate to the purpose of the particular law in conflict." Schultz v. Boy Scouts, 65 N.Y.2d 189, 197 (1985). The significant contacts in such an analysis are, "almost exclusively, the parties' domiciles and the locus of the tort." Id.

As to the tort analysis, Plaintiff Oberlander alleges he is domiciled in New York (Rieker Decl., **Ex. "1"**, ¶ 1) and the Insured listed a New York address on the Application. Rieker Decl., **Ex. "4"**. The Frohlich Defendants are domiciled in Florida (Rieker Decl., **Ex. "1"**, ¶¶ 6-7), and American General has a principal place of business in Texas (**Id.** ¶ 4). The Plaintiffs allege that the "facts and circumstances giving rise to this Original Verified Complaint concern acts and omissions done…in the County of Kings." Rieker Decl. Ex. "1", ¶ 28). As the significant contacts for the tort analysis is "almost exclusively, the parties' domiciles and the locus of the tort" New York law should apply assuming the allegations in the Complaint are true (Schultz, 65 N.Y.2d at 197 (1985)).

Nonetheless, as the laws of both the states of New York and Florida appear to be consistent on the issues before the Court, the Frohlich Defendants have included an analysis of both New York and Florida law in support of this Motion. It is clear that, under either state's law, Plaintiffs' claims should be dismissed outright.

## STANDARD OF REVIEW

In considering a motion to dismiss, a federal court must "assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party." Ilarraza v. Medtronic, Inc., 677 F. Supp. 2d 582, 584 (E.D.N.Y. 2009). However, federal courts must also ensure "that the complaint sets forth 'enough facts to state a claim to relief that is plausible on its face.'" Id. *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Moreover, a pleading that merely recites "facts and bare legal conclusions is insufficient to 'unlock the doors of discovery…and only a complaint that states a plausible claim for relief survives a motion to dismiss.'" Ilaraza, 677 F.Supp.2d at 584, *citing* Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

Additionally, on a motion to dismiss, a federal court can consider "documents incorporated by reference in the complaint," or "a document that is not incorporated by reference, where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Frigerio v. United States, No. 10 CIV. 9086 SAS, 2011 WL 3163330, at *6 (S.D.N.Y. 2011); *see also* Ilaraza, 677 F.Supp.2d at 584 ("the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action."); Done v. HSBC Bank USA, No. 09-CV-4878 JFB ARL, 2010 WL 3824142, *2 (E.D.N.Y. 2010).

## ARGUMENT

## POINT I

### PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR FRAUD AND/OR MISREPRESENTATION AGAINST THE FROHLICH DEFENDANTS

#### A. Plaintiffs' Complaint Fails to Allege Any Details of the Alleged Fraud

Where a cause of action is based upon misrepresentation or fraud, "the circumstances constituting the wrong shall be stated in detail." New York Civil Procedure Law and Rules ("CPLR") § 3016(b); *see also* Florida Rules of Civil Procedure ("Fla.R.Civ.P."), Rule 1.120 ("[T]he circumstances constituting fraud or mistake shall be stated with such particularity as the circumstances may permit."). Additionally, such a cause of action requires allegations of: (i) a representation of a material fact; (ii) falsity; (iii) intent; (iv) reliance; and (v) injury. *See* Moore v. Liberty Power Corp., LLC, 72 A.D.3d 660, 661, 897 N.Y.S.2d 723, 725 (2010) ("To make out a prima facie case of fraud, the complaint must contain allegations of a representation of material fact, falsity, scienter, reliance and injury"). Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp., 450 So. 2d 1231, 1232 (Fla. 4th D.C.A. 1984) (Plaintiff asserting a cause of action for fraud failed to allege "that plaintiff relied to his detriment on a false statement containing a material fact made with knowledge of its falsity and an intent to induce reliance.") *referring to* George Hunt, Inc. v. Wash-Bowl, Inc., 348 So.2d 910 (Fla. 2d D.C.A. 1977).

Additionally, a plaintiff must state, in detail, items such as the time or place of the alleged misrepresentation, and the individual who made the false statement. *See* Orchid Const. Corp. v. Gonzalez, 89 A.D.3d 705, 708, 932 N.Y.S.2d 125, 128 (2nd Dep't 2011) (finding plaintiff failed to adequately plead claim for fraud in the inducement where complaint failed to "set forth the time or place" of the alleged misrepresentation."); *see also* Eastman Kodak Co. v. Roopak Enterprises, Ltd., 202 A.D.2d 220, 222, 608 N.Y.S.2d 445, 446 (1st Dep't 1994) (Dismissal was required where

11

"defendant alleged neither the time nor the place of the purported misrepresentations nor which employee of the plaintiff purportedly made them."); *see also* Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs., 872 F. Supp. 2d 1353, 1361 (S.D. Fla. 2012) (Complaint alleging fraud must plead "who made the false statement, the substance of the false statement, the time frame in which it was made and the context in which the statement was made"), *citing* Eagletech Commc'ns, Inc. v. Bryn Mawr Inv. Grp., Inc., 79 So. 3d 855, 862 (Fla. 4th D.C.A. 2012).

The Plaintiffs' Complaint is bereft of any allegation as to when or who made the allegedly fraudulent statements and/or misrepresentations. See Rieker Decl., **Ex. "1"**, ¶ 70. In fact, despite alleging that these supposed "statements" were made to Plaintiff Oberlander directly, the Plaintiffs merely allege that the "Defendants," or "agents of" the Defendants made such statements. Such group pleading is wholly inappropriate in the context of a claim for fraud. Abdale v. N. Shore Long Island Jewish Health Sys., Inc., 49 Misc. 3d 1027, 1043, 19 N.Y.S.3d 850, 862 (N.Y. Sup. Ct. 2015) (Finding that where a plaintiff had made "fraud allegations collectively as to all defendants such group pleading is impermissible. A fraud claim asserted against multiple defendants must include specific allegations for each defendant."); *see also* Freeman v. Dean Witter Reynolds, Inc., 865 So. 2d 543, 553 (Fla. 2nd D.C.A. 2003) (finding that multiple plaintiffs had "improperly filed deficient and collective claims for fraud," as "there is no basis to permit this kind of collective pleading."). Thus, as Plaintiffs have failed to allege such necessary details as to who made the allegedly fraudulent statements and/or misrepresentations and when, Plaintiffs' claim for fraud and misrepresentation fail, as a matter of law.

### B. The Allegedly Fraudulent Statements and/or Misrepresentations Are Non-Actionable Statements of Opinion or Predictions of Future Occurrences

Plaintiffs have alleged that the statements forming the basis of this lawsuit consisted of, in essence, promises that the Plaintiffs would not be required to pay any money for the insurance

12

policy at issue, and that the Frohlich Defendants would obtain premium financing with a third-party lender to fund the premiums. See Rieker Decl., **Ex. "1"**, ¶ 70. Even if the Plaintiffs had identified when such statements were made, and by whom, such statements *still* fail to support a cause of action for fraud.

In fact, the Supreme Court of New York County has previously found that representations almost identical to those at issue in this matter were insufficient to support a claim for fraud. In Brahver v. Fishman, No. 19616-07, 2008 WL 2614847 (N.Y. Sup. Ct. 2008), the Supreme Court found that statements "***to the effect that the plaintiff would never have to make any insurance premium payments or that the policy would never cost the Brahvers any money is nothing more than an opinion or prediction of something which is hoped to occur in the future, and cannot sustain a claim for fraud.***" Id. (emphasis added); *see also* Cilente v Phoenix Life Ins. Co., No. 600313/08, 2014 WL 70336, at *1 (N.Y. Sup. Ct. 2014) (dismissing fraud claims for failure to state the circumstances constituting the wrong in detail, where fraud claims were "based upon the ***generalized and conclusory allegations that defendants "made numerous other misrepresentations and omissions pertaining to [the 896 Policy] and the premium financing***…and that defendants ***knowingly issued false and misleading oral and written representations to induce Trustee Cilente to purchase [the 896 Policy.]***") (internal citations omitted) (emphasis added); *see also* Chase Investments, Ltd. v. Kent, 256 A.D.2d 298, 299, 681 N.Y.S.2d 319, 320 (2d Dep't 1998) (Noting "a representation of opinion or a prediction of something which is hoped or expected to occur in the future will not sustain an action for fraud.") (internal citation omitted).

Similarly, Florida law is well established that "a false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future." Vance v.

13

Indian Hammock Hunt & Riding Club, Ltd., 403 So.2d 1367, 1371 (Fla. 4th D.C.A. 1981) *citing* 27 Fla. Jur.2d, Fraud and Deceit, § 24; *see also* Thompson v. Bank of New York, 862 So. 2d 768, 770 (Fla. 4th D.C.A. 2003) (finding that representation by seller that purchaser was "financially able to qualify and afford" the property at issue in that matter was a non-actionable "matter of opinion," and that an individual "has to know his own financial capacity" better than a stranger.); *see also* Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168, 172 (Fla. 4th D.C.A. 1994) ("Participants in a normal business transaction are not entitled to rely upon ephemeral matters as opinions, judgments or legal views.")

As in Brahver and Cilente, the alleged statements at issue concern the Plaintiffs' ability to purchase and pay for the insurance policy at issue, and the funding of the future premium payments to keep the life insurance policy in effect. *Cf.* Rieker Decl., **Ex. "1"**, ¶ 70. These alleged statements, even if true, clearly and unequivocally constitute opinion and/or a promise or prediction of what is going to occur in the future, which simply cannot support a cause of action for fraud. Brahver, No. 19616-07, 2008 WL 2614847.  Further, Plaintiffs were in the best position to know their own financial capacity to purchase the policy and pay the premiums. Accordingly, the Plaintiffs claim for fraud and misrepresentation fails, as a matter of law.

### C.  Plaintiffs Could Not Have Reasonably Relied on the Statements at Issue

Even if the Plaintiffs had adequately pled the circumstances of the allegedly fraudulent statements at issue in the Complaint (which they have not) and even if these statements were actionable (which they are not), Claimants have failed to allege reasonable reliance sufficient to support a cause of action for fraud. *See* Hoffend & Sons, Inc. v. Rose & Kiernan, Inc., 19 A.D.3d 1056, 1058, 796 N.Y.S.2d 790, 791 (4th Dep't 2005), aff'd, 7 N.Y.3d 152, 851 N.E.2d 1149 (2006) (finding insurance broker could not be held liable for fraud where plaintiff could not have

14

"reasonably relied on the alleged misrepresentation.."); *see also* <u>Avila S. Condo. Ass'n v. Kappa Corp.</u>, 347 So.2d 599, 604 (1977) (finding complaint for fraud must allege "reasonable reliance on material misrepresentations of existing fact").

Here, the Plaintiffs generally and in an utterly conclusory manner allege that they "reasonably relied on the Frohlich Defendants' representations in their purchase of the policy." Rieker Decl., **Ex. "1"**, ¶ 76. However, Plaintiffs also allege that they informed the Frohlich Defendants, *before the purchase of the policy* that (1) Pearl Oberlander "may have been over-insured"; (2) Plaintiffs were having difficulty meeting financial obligations for premium payments on existing policies; and (3) "were in no position to afford additional premium payments." Rieker Decl., **Ex. "1"**, ¶ 74. As previously noted, an individual "has to know his own financial capacity" better than a stranger. <u>Thompson v. Bank of New York</u>, 862 So. 2d at 770. Thus, Plaintiffs simply cannot argue that despite being in the best position to know their own finances, and despite being well aware of the fact that they were having "difficulty" paying premiums on other life insurance policies, and that the Plaintiffs could not "afford additional premium payments," that they reasonably relied on the alleged statements at issue in this matter. Rieker Decl., **Ex. "1"**, ¶ 74.

If this were not enough, the Policy at issue (which Plaintiffs annex to the Complaint) clearly identifies monthly premium payments of $87,346.45 and a Target Premium of $1,029,900. See Rieker Decl., **Ex. "3"** at pg. 4. Had the Plaintiffs, upon receipt of the Policy, decided such premiums were not affordable or were otherwise unhappy with the terms, they had 20 days to return the policy for a full refund of any premiums paid. See Rieker Decl., **Ex. "3"** at pg. 1. However, they accepted the Policy despite the fact, as alleged by the Plaintiffs, there was no premium financing secured by the Frohlich Defendants at the time they purchased and/or received the policy. Further, they elected to keep the policy, and voluntarily elected to borrow "hundreds

15

of thousands of dollars to continue paying premiums" to keep the policy in effect. See Rieker Decl., **Ex. "1"**, ¶ 66. Critically, the Plaintiffs have a duty to read and understand the insurance policy before purchasing it. Minsker v. John Hancock Mut. Life Ins. Co., 254 N.Y. 333, 173 N.E. 4 (1930); Griffin Bros. Co. v. Mohammed, 918 So. 2d 425 (Fla. 4th D.C.A. 2006).

Regardless, this is not a situation where the insurance professional was in a better position to understand the relevant terms at issue in this matter. *As evidenced by the representations Plaintiffs specifically allege that they made to the Frohlich Defendants, Plaintiffs were fully aware of the fact that they would have to pay premiums on any policy purchased and that they were already struggling to pay premiums on existing policies*. Rieker Decl., **Ex. "1"**, ¶ 74. Despite this, they signed a Life Insurance Policy Application seeking $30 million in coverage. On the Application, the Plaintiffs represented to the Frohlich Defendants and the insurer, that Pearl Oberlander *had a Net Worth of nearly $120 million and three (3) existing life insurance policies totaling over $14 million*. *The application also states in no uncertain terms that Salaman Oberlander was responsible for the premium payments.* Rieker Decl., **Ex. "4"**. They also represented that they were shopping for Life Insurance Policies through other insurers (including Mass Mutual and AXA) and brokers. Plaintiffs executed the Application affirming that the contents of the Application were true. **Id**. Thus, given the Plaintiffs' extensive experience in purchasing life insurance policies, and evidence of policy shopping through other agents and insurance carriers, it defies reason to suggest that it would have been reasonable for the Plaintiffs to rely on these alleged fraudulent misrepresentations, where Plaintiffs were acutely aware of the facts which they allege establish why such statements were fraudulent in the first place. The fact that Plaintiffs did not return the policy upon receipt (though they were clearly informed of their right to do so), but instead continuing payment premiums on the policy for nearly two (2) years, is

16

strong evidence that they were well aware of their obligations and undertook same with full knowledge and awareness.

## POINT II

### PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR BREACH OF CONTRACT OR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST THE FROHLICH DEFENDANTS

#### A. Plaintiffs Have Failed to Adequately Plead the Existence of a Contract or the Frohlich Defendants' Breach Thereof.

In the Complaint, the Plaintiffs allege that "[t]he Frohlich Defendants entered into a contract to serve as the life insurance agents to the Plaintiffs."  Rieker Decl., **Ex. "1"**, ¶ 83. In order to plead the existence of a written contract, a plaintiff "must identify the provisions of the contract that were breached," and "vague allegations suggesting that there may have been an agreement do not suffice." Reznick v. Bluegreen Resorts Mgmt., Inc., 154 A.D.3d 891, 893, 62 N.Y.S.3d 460, 463 (2nd Dep't 2017); *see also* Patton v. Carlson, 132 So. 2d 793, 796 (Fla. 1st D.C.A. 1961) (On a claim for breach of contract, plaintiff is required "to set forth the terms of the contract, specifications, and letter of intent."); Roy L. Willard, Inc. v. Miller, 150 Fla. 458, 465 (1942) (A "plaintiff must allege the elements of the contract with *precision*.")(Emphasis added).

In the present matter, the supposed contract terms at issue are that the Frohlich Defendants were "to provide life insurance advisory services, premium financing services" and "other obligations." Rieker Decl., **Ex. "1"**, ¶ 84. Plaintiffs further allege that these terms were violated by the Frohlich Defendants' "selling the Policy, failing to obtain third-party financing for the premiums, and otherwise failing to live up to their contractual duties." **Id.** at ¶ 85.

First and foremost, it must be noted that the Plaintiffs have not attached any written contract between the Plaintiffs and the Frohlich Defendants, or identified any such written contract by date,

title, terms or otherwise. In fact, there is no written contract between the parties. Further, it is abundantly clear that "other obligations" and "otherwise failing to live up to their contractual duties" are insufficient allegations to support a claim for breach of contract. *See* Reznick, 154 A.D.3d at 893. The remaining allegations are similarly and improperly vague, as there is not even a suggestion as to what advisory or premium financing services the Frohlich Defendants were required to provide. There is no allegation that the Frohlich Defendants were hired, retained or compensated for performing insurance advisory services. Further, the Frohlich Defendants are not a lender, so could not contract to provide premium financing. The fact of the matter is that Plaintiffs' allegations are purposefully vague as there is no written contract between the parties.

Moreover, to suggest that "selling the Policy" could constitute a breach of contract is utterly unsupportable, as ***it was the Plaintiffs' own decision to purchase the Policy; they were under no obligation to do so, nor have they alleged that they were***. Likewise, the Plaintiffs were not under any obligation to purchase the Policy in the absence of premium financing, nor do they allege that they were. Thus, it simply cannot be said that the Frohlich Defendants breached their supposed contractual duty in selling insurance to the Plaintiffs.

If this were not enough, New York courts have previously found a cause of action for breach of a contract was "too vague and indefinite" where the plaintiff failed to allege "whether the alleged agreement was, in fact, written or oral." Sud v. Sud, 211 A.D.2d 423, 424, 621 N.Y.S.2d 37, 38 (1995). Here, Plaintiffs do not allege, for example, whether the contract at issue was written or was oral. Simply, Plaintiff has utterly failed to adequately plead a cause of action for breach of contract.

**B.  A Claim for Breach of an Oral Contract is Barred by the Statute of Frauds**

Since there is clearly no written contract between Plaintiffs and the Frohlich Defendants, and Plaintiffs' Complaint is vague as to whether they are alleging the breach of an oral or written contract, we will address why, assuming the alleged contract is an oral one, such claim must be dismissed.

Even assuming that the Plaintiffs had adequately pleaded the existence of an oral contract, which they have not, pursuant to the applicable Statutes of Frauds such contract would be unenforceable for the following reasons.

First, New York General Obligations Law §5-701(a)(1) and (9) require that all agreements relating to life insurance policies or agreements that cannot be performed within one (1) year must be in writing, which wholly undermines Plaintiffs' entire breach of oral contract claim since it violates the Statute of frauds. *See* Friedman v. Markman, 11 A.D.2d 57, 62, 201 N.Y.S.2d 743, 748 (1st Dep't 1960).  *See also* F.S.A. 725.01; Southtrust Bank and Right Equipment Co. of Pinellas County, Inc. v. Export Ins. Services, Inc., 190 F.Supp.2d 1304 (M.D.Fla.2002).

Here, the alleged contract clearly relates to a life insurance policy.  Further, Plaintiffs' Complaint is entirely devoid of any allegation to suggest that the contract at issue was to be performed within one (1) year, and in fact, could not be performed within one (1) year given the nature of Life Insurance Policies and the continuing obligation to pay premium payments until the death of the Insured.  For the Life Insurance Policy at bar, the estimated length of premium payments exceeds 11 years.  See Rieker Decl. **Ex. "3"**, pg. 3 (indicating Target Premiums of $1,029,900, with $87,346 due monthly).

Furthermore, contracts "to pay compensation for services rendered in negotiating a loan" must also be in writing. N.Y. Gen. Obl. Law § 5-701(a)(10). New York's courts have previously

found premium financing to constitute a loan. Goldstein v. Lewis, 90 A.D.2d 748, 749, 455 N.Y.S.2d 810, 811 (1982), aff'd, 59 N.Y.2d 706, 450 N.E.2d 227 (1st Dep't 1983) (noting individuals had been charged with fraudulently obtaining insurance premium loans from insurance premium finance companies).

Finally, the allegations that the alleged contract "to provide life insurance advisory services, premium financing services, and…other obligations" (Rieker Decl., **Ex. "1"**, ¶ 84) are entirely devoid of any discussion of **when** these services were to be provided or for how long. Moreover, it is well established that "partial performance of a contract for personal services is not an exception to the provisions of the Statute of Frauds." Johnson v. Edwards, 569 So. 2d 928, 929 (Fla. 1st D.C.A. 1990); *see also* Satra Ltd. v. Coca-Cola Co., 247 A.D.2d 248, 249, 669 N.Y.S.2d 22, 23 (1st Dep't 1998) (Finding Statute of Frauds bars claims relating to "the rendition of services and payment of commissions over an indefinite period of time."). Thus, it is abundantly clear that the Plaintiffs' claims for breach of contract are barred by the Statute of Frauds.

### C. The Insurance Policy is a Contract Between the Insurance Company and the Insured

The Life Insurance Policy at issue states in no uncertain terms that the policy is a legal contract between the Insured (Pearl Oberlander) and American General.  Rieker Decl., **Ex. "3"**, page 4.  New York and Florida law is clear that "[a]n insurance policy is a contract between the insurer and the insured." Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co., 53 A.D.3d 140, 855 N.Y.S.2d 459 (1st Dep't 2008); *see also* Am. Strategic Ins. Co. v. Lucas-Solomon, 927 So. 2d 184, 186 (Fla. 2d D.C.A. 2006).

New York law is also clear that a defendant who is not a party to a contract owes no contractual duties to a plaintiff and cannot be bound by any such contract. *See, e.g.,* Lipton v. Unumprovident Corp., 10 A.D.3d 703, 783 N.Y.S.2d 601 (2d Dep't 2004) (defendant was not a

20

party to the contract of insurance, and thus owed no contractual duty to the plaintiff); Kopelowitz & Co., Inc. v Mann, 83 A.D.3d 793, 921 N.Y.S.2d 108 (2d Dep't 2011) (as defendants were not party to the subject agreement, they could not be bound by it); HDR, Inc. v. International Aircraft Parts, Inc., 257 A.D.2d 603, 1999 N.Y. App. Div. LEXIS 330, *1 (2d Dep't 1999) (court held that a person or entity who is not a party to a contract cannot be held liable for its breach).

As the Frohlich Defendants were not parties to the subject life insurance policy, and it is clear that the subject life insurance policy was a contract between the Insured, Pearl Oberlander and American General, Plaintiffs' claim for breach of contract against the Frohlich Defendants must fail.

**D.  The Plaintiffs' Claim for Breach of Contract Fails for Lack of Consideration**

Plaintiffs allege that the Frohlich Defendants entered into a contract to serve as the life insurance agents to the Plaintiffs. Rieker Decl., **Ex. "1"**, ¶ 83.  Assuming there *was* any such contract (which there was not), by virtue of the fact that the Plaintiffs were provided with a life insurance policy which only lapsed when Plaintiffs stopped paying the premiums, Plaintiffs' cause of action fails since Defendants procured a policy of insurance for the Plaintiffs.

To the extent the Plaintiffs allege that the Frohlich Defendants agreed to "provide life insurance advisory services, premium financing services, and imposed other obligations", it is clear based on the allegations in the Complaint that such contract fails for lack of adequate consideration assuming all of the allegations in the Complaint to be true.  In the Complaint, the Plaintiffs merely assert that they "***provided consideration in the nature of their purchase of the life insurance policy.***" Rieker Decl., **Ex. "1"**, ¶ 84 (emphasis added).  This is insufficient consideration under both New York and Florida law.

21

New York courts have held that performance of an act was "insufficient, in and of itself, to constitute valid consideration," where there were no allegations the promise to do was given "in return for defendant's promise." *See* Wood Realty Tr. v. N. Storonske Cooperage Co., 229 A.D.2d 821, 823, 646 N.Y.S.2d 410, 411 (3d Dep't 1996) (finding that there were no allegations "of any promise to forego future litigation given by plaintiff in return for defendant's promise. That plaintiff did in fact forebear from bringing suit for a period of time is insufficient, in and of itself, to constitute valid consideration."). Likewise, Florida courts have declined to allow a "promise to place future orders" to serve as consideration, noting that if that "[w]ere the case, then any promise to place orders with no obligation to do so would constitute consideration," and that such promises are illusory. Office Pavilion S. Fla., Inc. v. ASAL Prod., Inc., 849 So. 2d 367, 371 (Fla. 4th D.C.A. 2003).

The Plaintiffs do not allege that they were required to purchase the Policy at issue, or any other policy offered to them by the Frohlich Defendants. There is simply no precedent to support, and in fact it flies in the face of reason to suggest, that a decision to purchase an offered insurance policy can act retroactively to establish the existence of a contract between an insurance agent and a purchaser of insurance.

One can imagine the implications if the Court were to consider one person's oral <u>offer</u> to assist with the purchase of a product, <u>acceptance</u> in the form of "oral conversations" and <u>consideration</u> created by the purchase of a product to be deemed an enforceable oral contract sufficient to bind parties.  In this scenario, every single time a purchaser submits an application for, by way of examples: a lease on an apartment, a job, a mortgage, a loan, a credit card, the adoption of a child, multiple parties are subject to liability by that purchaser in connection with the completion of that application. Imagine a scenario where an individual was searching to rent

22

an apartment. The individual requests the assistance of a real estate agent, who shows the individual a few apartments available to rent. The individual selects an apartment and submits an application for same through the agent, which was approved. Though under no obligation to rent the apartment, the individual decides to enter into a lease agreement with the owner. It would be a patently absurd result if the individual then fails to pay rent, and sues the real estate agent on the grounds that a contract existed between the parties, based upon this individual's voluntary decision to rent the property. Under Plaintiffs' reasoning, just such a result would occur. Neither the New York nor Florida Courts have upheld such a theory of liability in such an instance.

Based upon the foregoing, it is clear that Plaintiffs breach of contract claims fail as a matter of law for lack of consideration.

### E. Plaintiffs' Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing Fails as it is Redundant of the Plaintiffs' Breach of Contract Claim

It is axiomatic that in the absence of an enforceable contract, a cause of action for the implied covenant of good faith and fair dealing must fail as a matter of law. *See generally* Sabharwal v Eminax LLC, No. 603395/00, 2002 WL 34338617 (N.Y. Sup. Ct. 2002); Goldsmith v. Brockhouse, 979 So. 2d 1135, 1137 (Fla. 3rd D.C.A. 2008) (party may not "impose an implied covenant of good faith…in the absence of an enforceable contract."). As discussed herein, no enforceable contract exists between the Plaintiffs and the Frohlich Defendants, and as such this claim must fail.

Even if an enforceable contract did exist, these two claims are completely and irredeemably redundant, such that the Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must be dismissed. *See* Shibata v. Lim, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (Interpreting Florida law, finding that "a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause

23

of action alleging breach of contract."); <u>New York University v. Continental Ins. Co.</u>, 87 N.Y.2d 308, 319–20, (1995) (a good faith claim will be dismissed as redundant if it merely pleads that defendant did not act in good faith in performing its contractual obligations); <u>Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce</u>, 70 A.D.3d 423, 894 N.Y.S.2d 47, 49–50 (1st Dep't 2010) (dismissing a good faith and fair dealing claim because it arose from the same facts as the breach of contract claims).

Here, the Plaintiffs' cause of action for breach of contract is based upon allegations that the Frohlich Defendants "breached their contractual obligations by selling the Policy, failing to obtain third-party financing for the premiums, and otherwise failing to live up to their contractual duties." Rieker Decl., **Ex. "1"**, ¶ 86. The Plaintiffs' cause of action for breach of the implied covenant of good faith and fair dealing is based on ***identical allegations***; that the "Frohlich Defendants breached their covenant of good faith and fair dealing by selling the Policy, failing to obtain third-party financing for the premiums, and otherwise failing to live up to their contractual duties." Rieker Decl., **Ex. "1"**, ¶ 96. It is simply inarguable that these claims are redundant of each other, such that the claim for breach of the implied covenant of good faith and fair dealing must be dismissed.

## POINT III

### PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY AGAINST THE FROHLICH DEFENDANTS

#### A. Plaintiffs Have Failed to Allege Facts Sufficient to Establish a Fiduciary Duty Between the Frohlich Defendants and Plaintiffs

Under New York law, the relationship between an insurance agent and his client is an ordinary commercial relationship that does not give rise to special or fiduciary duties on the part

of the agent. *See* Murphy v. Kuhn, 90 N.Y.2d 266, 272-73, 660 N.Y.2d 371, 375 (1997); *see also* Sutton Park Development Corp. Trading Co. v. Guerin & Guerin Agency Inc.*,* 297 A.D.2d 430, 432, 745 N.Y.S.2d 622, 625 (3d Dep't 2002) (affirming dismissal of breach of fiduciary duty claim against agent because there was "nothing more than . . . a common consumer-insurance broker relationship"); Busker On The Roof Limited Partnership Co. v. M.E. Warrington*,* 283 A.D.2d 376, 377, 725 N.Y.S.2d 45, 47 (1st Dep't 2001) (affirming dismissal of breach of fiduciary duty claim against broker because special or fiduciary duty was absent).  Here, Plaintiffs have not asserted the existence of a special relationship between themselves or the Frohlich Defendants sufficient to establish a fiduciary duty.  "In the absence of a special relationship, a claim against an insurance agent or broker for breach of fiduciary duty does not lie." Cathy Daniels, Ltd. v. Weingast, 91 A.D.3d 431, 433 (1st Dep't 2012).

Similarly, it has been held that "insurance agents or brokers are not personal financial advisors and risk managers…Insurance agents have a common law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so." Murphy v. Kuhn, 90 N.Y.2d 266, 273, 682 N.E.2d 972, 976 (1997).  There is no common law duty for insurance agents or brokers to obtain premium financing or to "provide professional advice". Rieker Decl. **Ex. "1"**, ¶ 103.

Because the Frohlich Defendants obtained the requested coverage for the Plaintiffs, they met their common law duty to Plaintiffs.   Further, assuming the allegations in the Complaint to be true, the Plaintiffs voluntarily secured a loan to pay premiums on their own, instead of cancelling the policy for a full refund of the premiums, which they were advised they had a right to do within twenty (20) days of receipt of the policy. Under the circumstances alleged in the Complaint, Plaintiff has not sufficiently alleged a fiduciary relationship between the parties

25

sufficient to create any duty beyond the common law. As such, the claim for breach of fiduciary duty fails as a matter of law.

### B. Plaintiffs Have Failed to Allege a Breach of Any Fiduciary Duty Under Florida Law

Under Florida law, Plaintiffs' Complaint fails to allege any conduct by the Frohlich Defendants that could constitute a breach of any alleged duty.

In <u>Beardmore v. Abbott</u>, 218 So.2d 807 (Fla. 3d D.C.A. 1969), the District Court of Appeal of Florida for the Third District considered a claim for breach of fiduciary duty against a "life insurance counselor." In <u>Beardmore</u>, the counselor had recommended the purchase of a life insurance policy which the purchaser "could not afford." <u>Id.</u> at 808. Subsequently, the purchaser defaulted on premium payments after the first year, and let the policy lapse, at which point the purchaser instituted an action against the counselor. In affirming the dismissal, the court in this matter determined that there was no showing that the purchaser "received unsuitable, bad, or misrepresented insurance coverage." <u>Id.</u> at 809. Likewise, in the Complaint it has not been alleged that the insurance policy was misrepresented in any way. The premiums are clearly stated on page 2 of the Policy (Rieker Decl., **Ex. "3"**), and the Plaintiffs elected to secure a loan *on their own* to purchase the policy and keep it in effect. Rieker Decl, **Ex. "1"**, ¶ 74.

The court in <u>Beardmore</u> noted that it was significant "that he was protected by this insurance policy for the first year and did not complain or permit the policy to lapse until the premium for the second year became due." <u>Beardmore</u>, 218 So.2d at 808. In this Complaint, it has been specifically alleged that the Plaintiffs paid "premiums on the policy for a number of quarters," despite never receiving the premium financing it is alleged the Frohlich Defendants promised. Rieker Decl., **Ex. "1"**, ¶ 66. Thus, as in <u>Beardmore</u>, it is abundantly clear that to the extent a fiduciary duty exists between the parties, there has been no breach of this alleged duty.

### C. Plaintiffs' Cause of Action for Breach of Fiduciary Duty is Duplicative of the Cause of Action for Breach of Contract

It is well established that claims for "breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties." Detwiler v. Bank of Cent. Fla., 736 So. 2d 757, 759 (Fla. 5th D.C.A. 1999); see also Layden v. Boccio, 253 A.D.2d 540, 541, 686 N.Y.S.2d 763, 764 (2d Dep't 1998) (finding breach of fiduciary duty and fraud claims "based upon the same allegations contained in the first cause of action to recover damages for breach of contract" failed where plaintiff was "not alleging tort liability or a breach of a duty distinct from, or in addition to, the breach of contract claim.").

Plaintiffs' cause of action for breach of fiduciary duty alleges that the Frohlich Defendants breached a supposed fiduciary duty "by selling the Policy, failing to obtain third-party financing for the premiums as they had committed, and otherwise providing improper professional advice." Rieker Decl., **Ex. "1"**, ¶ 103. Despite Plaintiffs' conclusory statement that "[t]hese duties were separate and apart from Frohlich Defendants' contractual duties," it is abundantly clear that this is simply not the case. In support of their breach of contract case, the Plaintiffs allege that the Frohlich Defendants agreed to "provide life insurance advisory services, premium financing services, and imposed other obligations." Rieker Decl., **Ex. "1"** ¶ 84. The claims are identical.

Not only are the Plaintiffs' claims for breach of contract and breach of fiduciary duty based upon the same facts, but they also seek identical damages, such that the claims are irredeemably duplicative. Canzona v. Atanasio, 118 A.D.3d 841, 843, 988 N.Y.S.2d 637, 640 (2d Dep't 2014); see also The Real Estate Value Co., Inc. v. Carnival Corp., No. 2004CA015280, 2011 WL 12882727, at *20 (Fla.Cir.Ct. May 12, 2011) (noting the economic loss rule precludes a party from seeking damages in both contract and tort for a purported breach of the same agreement, where the party sought "damages in tort for breach of a fiduciary duty based on the same exact conduct.").

27

It is abundantly clear from the Complaint that the damages sought in the contract and fiduciary duty claims are identical. The losses allegedly consist of the loss of all the premiums the Plaintiffs paid, and other damage including "the loss of insurability on their mother, the liability for the loans taken to pay the premiums, the opportunity costs of making the premiums, and other damages." **Id.** ¶ 68. Thus, as the Plaintiffs' claim for breach of fiduciary duty is duplicative of the claim for breach of contract, this cause of action must be dismissed.

## POINT IV

### PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR NEGLIGENCE AGAINST THE FROHLICH DEFENDANTS

A claim for negligence that is duplicative of a claim for breach of contract must be dismissed. Orok Edem v. Grandbelle Int'l, Inc., 118 A.D.3d 848, 849 (2d Dep't 2014); Laufen, Inc. v. Andrew, 83 So. 3d 898 (Fla. 5th D.C.A. 2012). The allegations in the negligence claim are identical to those in the breach of contract claim. Compare Rieker Decl., **Ex. "1"**, ¶85 [breach of contract] to ¶111 [negligence] ("The Frohlich Defendants owed a duty to the Plaintiffs and breached that duty by selling the Policy, failing to obtain third-party financing for the premiums…")

Even if the negligence claim were not duplicative, it is subject to dismissal as Plaintiffs have not established a negligence claim against the Frohlich Defendants. Insurance agents have a limited duty "to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so." Murphy v. Kuhn, 90 N.Y.2d 266, 270, 660 N.Y.2d 371, 375 (1997); *see also* Koloski v. Metro. Life Ins. Co., 5 Misc. 3d 1028(A), 799 N.Y.S.2d 161 (Sup. Ct. 2004) (in dismissing the negligence claim against the insurance agent, the Court held that there is no question that the agent obtained coverage for the insured); *see also* Burns v. Consol. Am. Ins.

28

Co., 359 So. 2d 1203, 1206 (Fla. 3d D.C.A. 1978) ("An agent who agrees to obtain insurance, and through his own fault or neglect, fails to do no [sic], may be liable in damages, but if, after diligent effort, the agents is unable to procure the requested coverage, his only duty is to inform the party of his inability within a reasonable time.") It is undisputed that the requested coverage was procured; as such the Frohlich Defendants fulfilled their duties as insurance agent to Plaintiffs.

Moreover, a defense to a claim for negligence is that "the plaintiff's own negligence was the sole proximate cause of the injury." Chelton v. Tallahassee-Leon Cty. Civic Ctr. Auth., 525 So. 2d 972, 974 (Fla.1st D.C.A. 1988); Sorrentino v. Paganica, 18 A.D.3d 858, 859 (2d Dep't 2005). Plaintiffs represented that Pearl Oberlander had a Net Worth of approximately $120 million in her Application for Life Insurance.  At the time of the completion of the Application, there were three (3) other Life Insurance Policies in effect on her life, valued at nearly $16 million. Rieker Decl., **Ex. "4"**.  The Policy stated in no uncertain terms that the Insured was responsible for monthly premium payments of $87,346.45. Rieker Decl. **Ex. "3"**.  Upon receipt of the Policy, Plaintiffs had the option of surrendering the Policy within twenty (20) days of receipt in exchange for a full refund of any and all premiums paid. Rieker Decl., **Ex. "3"**, pg. 1. In fact, courts have previously found that an insured was the proximate cause of their own injuries in the context of an insurance policy where they were "fully aware" of the terms of a policy and yet did nothing. Cosmos, Queens Ltd. v. Matthias Saechang Im Agency, 74 A.D.3d 682, 684, 904 N.Y.S.2d 386, 389 (1st Dep't 2010) (Finding it was plaintiff's "own inaction which constituted a superseding act.").

By virtue of the receipt and acceptance of the policy and continuing to make payments of the premiums thereon "for a number of quarters", the negligence claim fails outright. Rieker Decl. **Ex. "1"**, ¶¶ 66-67. It has previously been determined that "an act such as an acceptance of benefits

29

may constitute ratification." Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co., 152 F. Supp. 3d 159, 165 (S.D.N.Y. 2016). Moreover, in a similar situation where a party was allegedly aware of certain misrepresentations, but instead accepted payment under a contract, that party was found to have ratified the act, and thus acted as a waiver. Am. Gen. Life Ins. Co. v. Salamon, No. 09 Civ. 5428, 2011 WL 976411, at *4 (E.D.N.Y. Mar. 16, 2011), aff'd, 483 Fed.Appx. 609 (2d Cir.2012) ("While plaintiff correctly states that [r]atification must be performed with full knowledge of the material facts relating to the transaction and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language, plaintiff fails to acknowledge that the required intent may be implied from knowledge of the principal coupled with a failure to timely repudiate.") (internal citations and quotation marks omitted).

Thus, Plaintiffs simply cannot allege that the Frohlich Defendants were responsible for the Plaintiffs' decision to purchase and pay premiums on a policy they allegedly could not afford when they represented on the Application that they had a net worth of nearly $120 million and all of the material terms were stated clearly on the face of the Policy and they paid the premiums on the policy for a substantial length of time.

**POINT V**

**PLAINTIFFS HAVE FAILED TO ALLEGE ANY CONSUMER-ORIENTED CONDUCT NECESSARY TO STATE A CAUSE OF ACTION UNDER NEW YORK GENERAL BUSINESS LAW § 349**

The Plaintiffs blindly allege that the Frohlich Defendants violated New York General Business Law ("GBL") § 349. "A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." Stutman v. Chemical Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).

30

The Plaintiffs allege that the alleged deceptive acts or practices consist of "[t]he Frohlich Defendants' representations to the Plaintiffs to solicit the policy." Rieker Decl., **Ex. "1"**, ¶ 120. Any alleged deceptive act or practice is subject to an "objective definition" when it relates to representations or omissions, and is limited to deceptive acts and practices "likely to mislead a reasonable consumer acting reasonably under the circumstances." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995). This objective standard "may be determined as a matter of law or fact (as individual cases require)." Id.

Plaintiffs' claim fails at the first prong of the test.  To be "consumer-oriented," plaintiffs "must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Id. at 25. In fact, the New York courts have previously found marketing a life insurance policy to an individual was "insufficient to show that the defendants engaged in consumer oriented conduct," and dismissed the cause of action for violation of GBL. §349 (and denied leave to amend the complaint). Flax v. Lincoln Nat. Life Ins. Co., 54 A.D.3d 992, 995, 864 N.Y.S.2d 559, 562 (2d Dep't 2008) (finding that allegations of fraudulent misrepresentations regarding the future returns on a life insurance policy, and regarding the nature of the policy were "unique" to the plaintiff, "and do not have an impact on the public at large").

The Complaint is devoid of any allegation to suggest that the alleged misrepresentations were made to the public at-large. Rather, each alleged deceptive act is alleged to have been made "through telephone calls to Plaintiff Oberlander…and during in-person meetings with Plaintiff Oberlander." Rieker Decl., **Ex. "1"**, ¶71. Thus, the Plaintiffs' cause of action for violation of GBL §349 should be dismissed outright.

31

## POINT VI

### PLAINTIFFS HAVE FAILED TO STATE A CAUSE OF ACTION FOR UNJUST ENRICHMENT

"The elements of unjust enrichment are that the defendants were enriched, at the plaintiff's expense, and that it is against equity and good conscience to permit the defendants to retain what is sought to be recovered." Cty. of Nassau v. Expedia, Inc., 120 A.D.3d 1178, 1180, 992 N.Y.S.2d 293, 296 (2d Dep't 2014); *see also* Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d D.C.A. 2018). However, under New York law "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." Corsello v. Verizon New York, Inc., 18 N.Y.3d 777, 791, 967 N.E.2d 1177, 1185 (2012).

Moreover, an allegation that a defendant "received benefits, standing alone, is insufficient to establish a cause of action to recover damages for unjust enrichment…Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust." Goel v. Ramachandran, 111 A.D.3d 783, 791, 975 N.Y.S.2d 428, 437 (2d Dep't 2013). Plaintiffs here allege that under New York law, "it is inequitable for Defendants to retain the benefits conferred by Plaintiffs' payment of premiums." Rieker Decl., **Ex. "1"**, ¶ 132. Plaintiffs simply have not and cannot establish that the enrichment was unjust, as ***Plaintiffs were insured under the policy at issue until they voluntarily ceased making premium payments causing the policy to lapse.*** Had the Insured died while premium payments were being made, the beneficiary would have been entitled to receive a death benefit on the $15 million policy.

From a public policy stand-point, should this Honorable Court allow Plaintiffs' unjust enrichment claim to proceed, any time an insured voluntarily ceases payments of their insurance premiums, causing the policy to then lapse, they would then have an unjust enrichment claim against the insurance company or their broker.  This would create an untenable situation where an

insured could receive the full benefits of being insured under a policy and then recoup their investment should the policy lapse before paying out any benefit. That precedent could potentially put all insurance companies out of business as it goes against the very nature of 'insurance'.

Regardless, "it is well-settled that the theory of unjust enrichment lies as a quasi-contract claim, and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." J.T. Magen & Co., Inc. v. Nissan N. Am., Inc., 178 A.D.3d 466, 467, 113 N.Y.S.3d 702, 704 (N.Y. App. Div. 2019). Notably, New York law is clear that life insurance policies are contracts. *See generally*, New York Insurance Laws, Article 32, §§ 3201-3241. The commissions and premium payments Plaintiffs seek return of were made under the terms of the life insurance policy, and are governed by said policy, rendering the claim for unjust enrichment improper.

## POINT VII

**PLAINTIFFS' CAUSE OF ACTION FOR A DECLARATORY JUDGMENT FAILS AS A MATTER OF LAW**

Pursuant to CPLR § 3001, a declaratory judgment may be rendered "as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed." Similarly, under Florida Statute § 86.011, courts have the jurisdiction "to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed."

While declaratory judgment claims are typically brought in order to rescind a policy of insurance or overturn a prior denial of an insurance claim, such claim has no place in the present proceeding.

The declaratory judgment statutes are not available to settle factual issues bearing on liability under a contract which is clear and unambiguous and which presents no need for its construction.  Burns v. Hartford Acc. & Indem. Co., 157 So.2d 84 (1963); New Amsterdam Cas. Co. v. Intercity Supply Corp., 212 So.2d 110 (1968); *see also* Kelner v. Woody, 399 So. 2d 35, 37 (Fla. 3d D.C.A. 1981) (finding that the issue of whether a party is "in breach of the agreement is factual in nature and properly determinable in an action at law.")

New York courts have also previously found that where "the essence of the plaintiff's complaint is an ordinary action at law to recover commissions…there is no necessity to resorting to a declaratory judgment action." Von Keller v. Koehler, 264 A.D. 778, 779, 34 N.Y.S.2d 673, 674 (2d Dep't 1942) (reversing denial of motion to dismiss). Similarly, New York courts have dismissed a declaratory judgment action concerning an oral contract where another action would resolve the issue of whether or not the contract was enforceable. Harry M. Stevens, Inc. v. Medina, 63 A.D.2d 925, 925, 406 N.Y.S.2d 99, 99 (1st Dep't 1978).  It is clear that no claim for declaratory judgment against the Frohlich Defendants may stand.

Further, there is no issue of ambiguity as to the terms of the contract for insurance.  As such, while any claim for a declaratory action would be directed to the insurance company and not the agent (as an agent cannot rescind an insurance policy or return premium payments), such claim fails.

34

<u>POINT VIII</u>

**PLAINTIFFS HAVE SUFFERED NO DAMAGES AS A RESULT OF THE ALLEGED CONDUCT OF THE FROHLICH DEFENDANTS**

### A. Plaintiffs Have Admitted That Any Losses Relating to the Policy Were Caused by the Conduct of a Non-Party to this Action

As noted herein, documents incorporated by reference into the Complaint are properly considered by federal courts on motions to dismiss. *See* <u>Frigerio</u>, No. 10 CIV. 9086 SAS, 2011 WL 3163330, at \*6 (S.D.N.Y. 2011); *see also* <u>Ilaraza</u>, 677 F.Supp.2d at 584 ("the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing the action.").

In their Complaint, the Plaintiffs make repeated reference to a "cooperation agreement," between the Plaintiffs and the Frohlich Defendants. See Rieker Decl., **Ex. "1"**, ¶¶ 40-47. Plaintiffs rely on this "cooperation agreement" in an effort to establish that this Honorable Court has jurisdiction over the present matter. Moreover, the Plaintiffs do not dispute that this "cooperation agreement" was negotiated at arms-length between the Plaintiffs and the Frohlich Defendants through counsel. Accordingly, it is simply inarguable that this "cooperation agreement" is incorporated by reference into the Complaint.

Incredibly, what the Plaintiffs fail to mention about this "cooperation agreement", is that Plaintiff Oberlander admits that a third-party "is responsible for the economic loss of the Policy." See Rieker Decl., **Ex. "5(C)"**. The life insurance policy at issue in this matter is specifically referenced in the document (Rieker Decl. **Ex. "5":** "This Agreement is made…with respect to certain life insurance policy issued by American General Life Insurance Company on the life of Pearl Oberlander, and bearing policy number A71011941L"). This document was duly executed

35

by Plaintiff Salamon Oberlander and Mr. Oberlander admittedly received the initial payment from the Frohlich Defendants as outlined in paragraph "A" of the Agreement.  See Rieker Decl. **Ex. "1"**, ¶41; See **Ex. "5"** ¶ (A).

The Plaintiffs' admission that they have suffered no damages as a result of any alleged conduct of the Frohlich Defendants, and in fact accepted a monetary settlement from the Frohlich Defendants out of court, warrant dismissal of each and every cause of action against the Frohlich Defendants.  Plaintiffs' actions of resolving this matter outside of Court, accepting payment and then pursuing Defendants in this Court is akin to forum shopping and harassment.  Such actions cannot be condoned.

### B.  Plaintiffs' Alleged Damages Consist of Non-Recoverable, Voluntary Payments

The Plaintiffs allege that the damages they suffered consist of "the premiums that they paid…the loss of insurability on their mother, the liability for loans taken to pay the premiums, the opportunity costs of making the premiums, and other damages." Rieker Decl., **Ex. "1"**, ¶ 68. First, Plaintiffs did not lose any insurability on their mother, as not only does the Policy Application completed the Plaintiffs indicate the Plaintiffs had $15 million of dollars in life insurance coverage on the life of Pearl Oberlander *before this Policy was issued* (see Rieker Decl., **Ex. "4"**), but the Plaintiffs also admit in their Complaint that Pearl Oberlander "*may have been over-insured*." Rieker Decl., **Ex. "1"**, ¶ 74(a) (emphasis added).

As to the remainder of the Plaintiffs' damages, the voluntary payment doctrine bars the recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law. *See* Dillon v. U-A Columbia Cablevision of Westchester, Inc., 100 N.Y.2d 525, 526, 790 N.E.2d 1155, 1156 (2003); *see also* Ruiz v. Brink's Home Sec., Inc., 777 So. 2d 1062 (Fla. 2d D.C.A. 2001). Here, the Plaintiffs were well aware that premium

36

financing had not been obtained at the time each premium payment was due, and were under no duty to make such payments as they simply could have allowed the policy to lapse. In fact, the Plaintiffs have not at any point alleged that the supposed loans that they took out to pay these premiums was recommended in any way by the Frohlich Defendants, ***nor have the Plaintiffs alleged that premium financing on better terms than these loans was even available to them***.

Based upon the foregoing, the Plaintiffs' claims for (i) fraud and/or misrepresentation; (ii) breach of contract and the implied covenant of good faith and fair dealing; (iii) breach of fiduciary duty; (iv) negligence; (v) violation of GBL § 349; and (vi) unjust enrichment as to the Frohlich Defendants all fail as a matter of law, and for lack of damages.

## CONCLUSION

For the reasons set forth herein, the Frohlich Defendants respectfully request that the Court dismiss the Plaintiffs' Complaint with prejudice, and for such other and further relief as it may be deemed just and proper under the circumstances.

Dated: March 25, 2020
New York, New York

> WINGET, SPADAFORA &
> SCHWARTZBERG, LLP
>
> By:    */s/ Christina M. Rieker*
> Christina M. Rieker, Esq. (CR1566)
> Andrew M. Janof, Esq. (AJ1234)
> 45 Broadway, 32nd Floor
> New York, New York 10003
> *Attorneys for Defendants Marc Frohlich and Frohlich Financial Group, LLC*

37