UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SALAMAN OBERLANDER, and SALAMON OBERLANDER, as Trustee of THE ADER I TRUST dated December 11, 2014,

*Plaintiffs*,

v.

AMERICAN GENERAL LIFE INSURANCE COMPANY, MARC FROHLICH, and FROHLICH FINANCIAL GROUP, LLC,

*Defendants*.

Case No.: 1:20-cv-00567 (ILG)(JO)

**DEFENDANTS MARC FROHLICH AND FROHLICH FINANCIAL GROUP, LLC'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

**WINGET, SPADAFORA & SCHWARTZBERG, LLP**
45 Broadway, 32nd Floor
New York, New York 10006
*Attorneys for Defendants Marc Frohlich and Frohlich Financial Group, LLC*

Of Counsel: Christina M. Rieker, Esq.

## TABLE OF CONTENTS


**Page No.**

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL POSTURE AND SCOPE OF LEAVE...............................................................2

ANALYSIS OF THE AMENDED COMPLAINT...........................................................................3

(i) Cosmetic and Jurisdictional Revisions ......................................................3

(ii) The Added "Agency" Theory of Liability ......................................................3

(iii) Additional New Theories and Factual Predicates .............................................4

ARGUMENT ....................................................................................................4

POINT I - PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD AN AGENCY RELATIONSHIP .........................................................................................4

A. Plaintiffs Fail To Plead Actual Authority ..............................................5

B. Plaintiffs Fail To Plead Apparent Authority ..........................................7

C. Plaintiffs Do Not Plead Agency by Ratification, and Any Such Claim Would Fail ..............................................8

D. Plaintiffs Cannot Selectively Invoke Some of Lichter's Sworn Allegations And Reject those which Contradict their Own Account ..........9

1. Lichter Affirms that Plaintiffs Requested Policy Directly from Him.............................................10

2. Lichter Affirms that Oberlander Suggested Premium Financing, not Defendants ..........................................10

3. Lichter's Complaint Refutes Plaintiffs' Claim of Unsophistication ..............................................11

4. Lichner Affirms that Collateralization was Disclosed to and Agreed by Oberlander.......................................11

5. Lichter and Plaintiffs Agree that Oberlander Accepted a $100,000 Payment Issued Directly From Lichter's Own Personal Bank.............................................11

POINT II - THE AMENDMENTS DO NOT CURE THE RULE 9(b) FRAUD DEFECTS .......... 12

A. The Fraud Allegations Still Fail Despite the Amendments .......... 12

B. The Alleged Statements Remain Non-Actionable Opinions and Predictions of Future Events .......... 13

C. Plaintiffs Cannot Establish Reasonable Reliance .......... 15

POINT III - THE BREACH OF CONTRACT AND IMPLIED-COVENANT CLAIMS REMAIN DEFICIENT .......... 17

A. The Plaintiffs Fail to Plead All Required Elements of a Breach of Contract Claim .......... 17

1. Allegations are Too Indefinite to be Actionable .......... 18

2. Any Claim as to an Oral Contract is Barred by the Statute of Frauds .......... 18

3. The Frohlich Defendants are not Parties to the Insurance Policy .......... 19

4. The Amended Complaint Fails to Plead Adequate Consideration .......... 19

B. The Implied Covenant Claim Remains Duplicative of the Breach of Contract Claim .......... 20

POINT IV - PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD A BREACH OF FIDUCIARY DUTY CLAIM .......... 21

POINT V - THE AMENDMENTS DO NOT SAVE PLAINTIFFS' NEGLIGENCE CLAIM .......... 22

POINT VI - THE GBL § 349 CLAIM IS TIME-BARRED AND FAILS BASED ON NO ALLEGATIONS OF CONSUMER-ORIENTED CONDUCT .......... 23

POINT VII - THE UNJUST ENRICHMENT CLAIM HAS NOT BEEN SAVED BY THE AMENDMENTS .......... 24

POINT VIII - THE DECLARATORY JUDGMENT CLAIM FAILS AS A MATTER OF LAW .......... 24

POINT IX - THE TORT AND STATUTORY CLAIMS ARE TIME-BARRED ............25

POINT X - THE AMENDED COMPLAINT DOES NOT CURE THE DAMAGES DEFECTS THAT REMAIN OPEN AFTER THE SECOND CIRCUIT'S RULING ............25

A. The Plaintiffs' Damages Theory Is Speculative ............26

B. The Loss-of-Insurability Damages Are Contradicted by the Pleading and the Incorporated Documents ............26

C. Reliance and Illegality Independently Undermine the Damages Theory ............27

POINT XI - PLAINTIFFS' NEW THEORIES OF LIABILITY EXCEED THE SCOPE OF LEAVE AND SHOULD BE STRICKEN OR DISREGARDED............27

A. Alter-Ego / Piercing the Corporate Veil (Exhibit 6 ¶¶ 8–11) ............27

B. Insurance Law § 2324 Anti-Rebating (Exhibit 6 ¶¶ 65–70) ............28

C. "Fraud on the Insurer" — Scripted Underwriting and False Execution (Exhibit 6 ¶¶ 80–94) ............28

CONCLUSION............28

**TABLE OF AUTHORITIES**

*Am. Gen. Life Ins. Co. v. Salamon,* No. 09 Civ. 5428, 2011 WL 976411, at *4 (E.D.N.Y. Mar. 16, 2011), aff'd., 483 Fed. Appx. 609 (2d Cir. 2012). ....................................23

*Am. Strategic Ins. Co. v. Lucas-Solomon,* 927 So. 2d 184 (Fla. Dist. Ct. App. 2006) ................19

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 894 N.Y.S.2d 47 (1st Dept., 2010) ....................................................................20

*Amedas, Inc. v. Brown,* 505 So. 2d 1091 (Fla. Dist. Ct. App. 1987) ............................................5

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...............................5

*Avila S. Condo. Ass'n, Inc. v. Kappa Corp*., 347 So. 2d 599 (Fla. 1977) ....................................15

*Barker v. Time Warner Cable, Inc*., 83 A.D.3d 750, 923 N.Y.S.2d 118 (2nd Dept., 2011) ..............................................................18

*Beardmore v. Abbott*, 218 So. 2d 807 (Fla. Dist. Ct. App. 1969) ................................................21

*Bigio v. Coca-Cola Co*., 675 F.3d 163 (2d Cir. 2012) ....................................................................6

*Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co*., 53 A.D.3d 140, 855 N.Y.S.2d 459 (1st Dept., 2008) ..................................................................19

*Brahver v. Fishman*, No. 19616-07, 2008 WL 2614847 (N.Y. Sup. Ct. June 19, 2008) ..................................................................................14, 15

*Burns v. Consol. Am. Ins. Co*., 359 So. 2d 1203 (Fla. Dist. Ct. App. 1978) ................................22

*Burns v. Hartford Acc. & Indem. Co*., 157 So. 2d 84 (Fla. Dist. Ct. App. 1963) .........................25

*Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp. 3d 159 (S.D.N.Y. 2016) ...............................................................................23

*Caniglia v. Chicago Trib.-New York News Syndicate, Inc.,* 204 A.D.2d 233, 612 N.Y.S.2d 146 (1st Dept., 1994) ..............................................................18

*Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 151 N.E.2d 833 (1958) ....................14, 15

*Chase Invs., Ltd. v. Kent*, 256 A.D.2d 298, 681 N.Y.S.2d 319 (2nd Dept., 1998) ....................14

*Chelton v. Tallahassee-Leon Cnty. Civic Ctr. Auth.*, 525 So. 2d 972 (Fla. Dist. Ct. App. 1988) ....................22, 23

*Cilente v. Phoenix Life Ins. Co.*, No. 600313/08, 2014 WL 70336 (N.Y. Sup. Ct. Jan. 7, 2014) ....................14

*Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 967 N.E.2d 1177 (2012) ....................24

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ....................10

*Cosmos, Queens Ltd. v. Matthias Saechang Im Agency*, 74 A.D.3d 682, 904 N.Y.S.2d 386 (1st Dept., 2010) ....................23

*Daly v. Kochanowicz*, 67 A.D.3d 78, 884 N.Y.S.2d 144 (2nd Dept., 2009) ....................13

*Detwiler v. Bank of Cent. Fla.,* 736 So. 2d 757 (Fla. Dist. Ct. App. 1999) ....................21, 22

*E & H Cruises, Ltd. v. Baker*, 88 So. 3d 291 (Fla. Dist. Ct. App. 2012) ....................6

*Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580 (Fla. 2013) ....................17

*Ellison v. City of Fort Lauderdale*, 175 So. 2d 198 (Fla. 1965) ....................21

*Fennell v. TLB Kent Co*., 865 F.2d 498 (2d Cir. 1989) ....................7

*Fla. Power & Light Co. v. McRoberts*, 257 So. 3d 1023 (Fla. Dist. Ct. App. 2018) ....................6

*Flax v. Lincoln Nat. Life Ins. Co.*, 54 A.D.3d 992, 864 N.Y.S.2d 559 (2nd Dept., 2008) ....................23

*Ford v. Unity Hosp*., 32 N.Y.2d 464 (1973) ....................7

*Goel v. Ramachandran*, 111 A.D.3d 783, 975 N.Y.S.2d 428 (2nd Dept., 2013) ....................24

*Goldstein v. Lewis*, 90 A.D.2d 748, 455 N.Y.S.2d 810 (1982), aff'd, 59 N.Y.2d 706, 450 N.E.2d 227 (1983) ....................19

*H. S. A., Inc. v. Harris-In-Hollywood, Inc.*, 285 So. 2d 690 (Fla. Dist. Ct. App. 1973) ....................8

*Healy v. Kruger*, 247 A.D.3d 534, 250 N.Y.S.3d 96 (1st Dept., 2026) ....................17, 28

*Herbert Const. Co. v. Cont'l Ins. Co.,* 931 F.2d 989 (2d Cir. 1991) ....................8

*Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322 (2d Cir. 2010) ....................6

*Hoffend & Sons, Inc. v. Rose & Kiernan, Inc*., 19 A.D.3d 1056, 796 N.Y.S.2d 790 (2005), aff'd, 7 N.Y.3d 152, 851 N.E.2d 1149 (2006) ....................15

*Houri v. Boaziz,* 196 So. 3d 383 (Fla. Dist. Ct. App. 2016) ....................13

*HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 941 N.Y.S.2d 59 (1st Dept., 2012) ....................16

*Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582 (E.D.N.Y. 2009) ....................11

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co*., 62 F.3d 69 (2d Cir. 1995) ....................10

*Kenford Co. v. Erie Cnty*., 67 N.Y.2d 257, 493 N.E.2d 234 (1986) ....................26

*Kramer v. Time Warner Inc.,* 937 F.2d 767 (2d Cir. 1991) ....................10

*Kyung Sup Ahn v. Rooney, Pace Inc*., 624 F. Supp. 368 (S.D.N.Y. 1985) ....................5, 6

*LaBate v. Urban Foundation Engineering LLC*, No. 1486-04, 2008 WL 552887 (N.Y. Sup. Ct. Feb. 14, 2008) ....................14

*Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 668 N.E.2d 1370 (1996) ....................26, 27

*Laufen, Inc. v. Andrew*, 83 So. 3d 898 (Fla. Dist. Ct. App. 2012) ....................22

*Layden v. Boccio*, 253 A.D.2d 540, 686 N.Y.S.2d 763 (1998) ....................22

*Lipton v. Unumprovident Corp*., 10 A.D.3d 703, 783 N.Y.S.2d 601 (2nd Dept., 2004) ....................19

*McKinney-Green, Inc. v. Davis*, 606 So. 2d 393 (Fla. Dist. Ct. App. 1992) ....................18

*Minsker v. John Hancock Mut. Life Ins. Co.*, 254 N.Y. 333, 173 N.E. 4 (1930) ....................15

*Moore v. Liberty Power Corp., LLC*, 72 A.D.3d 660, 897 N.Y.S.2d 723 (2010) ....................12

*Morgenthow & Latham v. Bank of New York Co., Inc.*,
305 A.D.2d 74, 760 N.Y.S.2d 438 (1st Dept., 2003) ....................12

*Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191
(S.D.N.Y. 2014) ....................4

*Munno v. Town of Orangetown*, 391 F. Supp. 2d 263 (S.D.N.Y. 2005) ....................10

*Murphy v. Kuhn*, 90 N.Y.2d 266, 682 N.E.2d 972 (1997) ....................21, 22

*New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*,
145 A.D.3d 16, 41 N.Y.S.3d 1 (1st Dept., 2016) ....................17, 28

*New York State Med. Transporters Ass'n, Inc. v. Perales*,
77 N.Y.2d 126, 566 N.E.2d 134 (1990) ....................8, 9, 17, 28

*New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763 (1995) ....................20

*Off. Pavilion S. Fla., Inc. v. ASAL Prods., Inc.,* 849 So. 2d 367
(Fla. Dist. Ct. App. 2003) ....................19

*Orok Edem v. Grandbelle Int'l, Inc.*,
118 A.D.3d 848, 988 N.Y.S.2d 244 (2nd Dept., 2014) ....................22

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.,*
85 N.Y.2d 20, 647 N.E.2d 741 (1995) ....................4

*Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817,
59 N.E.3d 485 (2016) ....................28

*Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082 (2d Cir. 1997) ....................6

*Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp.,*
450 So. 2d 1231 (Fla. Dist. Ct. App. 1984) ....................12

*Pinkesz v. Massachusetts Mut. Life Ins. Co.*,
234 A.D.3d 886, 227 N.Y.S.3d 127 (2nd Dept. 2025) ....................................................5, 20, 27

*Precedo Cap. Grp., Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245 (S.D.N.Y. 2014) ..............................8

*Reznick v. Bluegreen Resorts Mgmt., Inc.*,
154 A.D.3d 891, 62 N.Y.S.3d 460 (2nd Dept., 2017) ................................................................18

*Sabharwal v. Eminax LLC*, No. 603395/00,
2002 WL 34338617 (N.Y. Sup. Ct. Apr. 5, 2002) ......................................................................20

*Shibata v. Lim,* 133 F. Supp. 2d 1311 (M.D. Fla. 2000) ..............................................................20

*Sorrentino v. Paganica*, 18 A.D.3d 858, 796 N.Y.S.2d 667 (2nd Dept., 2005) ...........................23

*Stalley v. Transitional Hosps. Corp. of Tampa*, 44 So. 3d 627
(Fla. Dist. Ct. App. 2010) ...............................................................................................................8

*Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 678 N.E.2d 874 (1997) .............................7, 8

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608 (2000) .................................................23

*Thompson v. Bank of New York*, 862 So. 2d 768 (Fla. Dist. Ct. App. 2003) ..........................14, 15

*Vance v. Indian Hammock Hunt & Riding Club, Ltd.*,
403 So. 2d 1367 (Fla. Dist. Ct. App. 1981) ...................................................................................14

*Villazon v. Prudential Health Care Plan, Inc.,* 843 So. 2d 842 (Fla. 2003) ..................................7

*Von Keller v. Koehler*, 264 A.D. 778, 34 N.Y.S.2d 673 (2nd Dept., 1942) ................................25

*Waknin v. Liberty Ins. Corp.,* 187 A.D.3d 821, 132 N.Y.S.3d 140, 143
(2nd Dept., 2020) ..........................................................................................................................16

*Wood Realty Tr. v. N. Storonske Cooperage Co.*,
229 A.D.2d 821, 646 N.Y.S.2d 410 (3rd Dept., 1996) ................................................................19

**RULES AND STATUTES**

GBL § 349 .......... 2

New York Insurance Law § 2324 .......... 2, 9, 16, 17, 27, 28

Fed. R. Civ. P. 9(b) .......... 2, 3, 4

CPLR § 3014 .......... 3

Rule 8(d) .......... 3

Rule 12(b)(6) .......... 10

CPLR 3211(a)(1) .......... 12

CPLR § 3016(b) .......... 12, 13

Fla. R. Civ. P. 1.120(b) .......... 12

New York General Obligations Law § 5-701(a)(1) .......... 18

New York General Obligations Law § 5-701(a)(9) .......... 18

N.Y. Gen. Oblig. Law § 5-701(a)(10) .......... 18

CPLR § 3001 .......... 24

Fla. Stat. § 86.011 .......... 24

CPLR § 214 .......... 25

## PRELIMINARY STATEMENT

Defendants Marc Frohlich and Frohlich Financial Group, LLC (together, the "Frohlich Defendants") respectfully submit this supplemental memorandum in further support of their motion to dismiss Plaintiffs' Complaint after reviewing Plaintiff's Amended Complaint (the "Amended Complaint"). A true and correct copy of the Amended Complaint is annexed to the Supplemental Declaration of Christina M. Rieker ("Rieker Decl.") as **Exhibit "6."** A true and correct copy of the redlined version of the Amended Complaint, attached to the Amended Complaint, is annexed to the Rieker Decl. as **Exhibit "7."**

After the Second Circuit's summary order vacating and remanding this Court's June 16, 2022 dismissal, the Court granted Plaintiffs leave to amend to cure prior pleading deficiencies and authorized supplemental briefing on the single, dispositive question: whether the Amended Complaint cures the defects identified in the Frohlich Defendants' original motion.

It does not.

The Amended Complaint is materially longer than the original Verified Complaint, but the added length is a function of two things, neither of which advances Plaintiffs' claims. First, Plaintiffs attempt to supply particularity and causation by relabeling non-party Menachem Lichter, an independent life insurance professional associated with a different firm, as the Frohlich Defendants' "agent" and attributing to them every statement Lichter allegedly made. That relabeling is the linchpin of the Amended Complaint and fails as a matter of law. Although the Court prohibited new theories of liability and suggested removing specious causes of action, Plaintiffs instead assert a new 'agency' theory against the Frohlich Defendants, which is impermissible, time-barred, and baseless. A bare commission-sharing arrangement between independent brokers does not create agency. Lastly, Plaintiffs' incorporated source, Lichter's

verified complaint in a related action, refutes their allegations of solicitation, unsophistication, nondisclosure, and reliance.

Once that agency theory is rejected, the Amended Complaint remains in the same posture that led to dismissal. Of the three statements attributed directly to the Frohlich Defendants, two postdate the Policy's issuance and first premium payments and could not have induced the purchase. The third was made by Lichter, with the Frohlich Defendants allegedly participating by telephone, and is a non-actionable prediction of future events.

The remaining claims fare no better. Contract claims remain barred by the Statute of Frauds and fail for indefiniteness and lack of consideration; no fiduciary or special relationship supports the fiduciary-duty claim; and the negligence, GBL § 349, unjust enrichment, and declaratory judgment claims remain deficient and, in several instances, time-barred. Plaintiffs' new allegation that the inducement was an illegal rebate under Insurance Law § 2324 defeats, rather than supports, reliance, and is barred by the doctrine of *in pari delicto*.

Finally, Plaintiffs added new theories the Court specifically forbade, including: (i) veil piercing/alter ego against Mr. Frohlich personally (Rieker Decl., **Exhibit "6"** ¶¶ 8–11); (ii) an anti-rebating theory under New York Insurance Law § 2324 (*Id.* ¶¶ 65–70); and (iii) a "fraud on the insurer" theory based on a scripted underwriting interview and allegedly false execution of the application (*Id.* ¶¶ 80–94). These theories exceed the scope of leave and should be stricken or disregarded.

The Amended Complaint should therefore be dismissed with prejudice.

## PROCEDURAL POSTURE AND SCOPE OF LEAVE

This Court dismissed the original Verified Complaint in its entirety on June 16, 2022, finding no cognizable damages and noting a "host of fatal defects" including failure to satisfy Fed.

R. Civ. P. 9(b), failure to allege reasonable reliance or any common-law or fiduciary duty, and preclusion by the statute of frauds and/or the statute of limitations. A copy of the dismissal order is annexed to the Rieker Decl. as **Exhibit "8."** On April 10, 2023, the Second Circuit vacated and remanded, holding only that the District Court mischaracterized the damages theory and drew an inference against Plaintiffs on reliance. A copy of the Second Circuit's Summary Order is annexed to the Rieker Decl. as **Exhibit "9."** The Second Circuit did not reach the alternative grounds for dismissal; it remanded them "for consideration by the district court in the first instance," and declined to decide whether the damages theory was "too speculative to support a cause of action," noting that the issue had not been raised below." *Id.* at 5 & n.1.

On remand, the Court permitted amendment and supplemental briefing on whether the Amended Complaint cures the identified defects, while prohibiting new theories or claims and suggesting removal of those with fatal defects. The analysis below shows that the Amended Complaint does neither.

## ANALYSIS OF THE AMENDED COMPLAINT

The changes to the Complaint fall into three categories; none rehabilitates the pleading.

### (i) Cosmetic and Jurisdictional Revisions

Plaintiffs recast the state-court "Verified Complaint" as a federal "First Amended Complaint," restate diversity jurisdiction, and replace CPLR § 3014 alternative-pleading recitals with Rule 8(d) language. *See, e.g.*, Rieker Decl., **Exhibit "6"**, ¶¶ 31–37, 113–115, 122–124. These revisions are non-substantive.

### (ii) The Added "Agency" Theory of Liability

The core changes recast non-party Lichter as the Frohlich Defendants' "agent" and assert that "[a]ll of the relevant acts and omission[s] by Lichter . . . are fully attributable to the Frohlich

Defendants." *Id.* ¶¶ 12–17. It then attributes to the Frohlich Defendants detailed alleged solicitation meetings that, on its face, were overwhelmingly conducted by Lichter. *Id.* ¶¶ 74(a)–(k).

**(iii) Additional New Theories and Factual Predicates**

The Amended Complaint adds factual predicates and theories absent from prior pleadings, including an illegal-rebate theory based on the alleged $100,000 payment (¶¶ 65–70, 107(g)); a "scripted underwriting" theory (¶¶ 80–85); allegedly false execution of the application in Boca Raton (¶¶ 86–94); and revised damages alleging that Plaintiffs "borrowed hundreds of thousands of dollars in reasonable reliance" and lost those sums when the Policy lapsed (¶¶ 99–101).

## ARGUMENT

## POINT I

## PLAINTIFFS FAIL TO SUFFICIENTLY PLEAD AN AGENCY RELATIONSHIP

The Amended Complaint depends almost entirely on attributing non-party Lichter's conduct to the Frohlich Defendants. By Plaintiffs own account, the meetings pleaded in an effort to satisfy Rule 9(b) were conducted by Lichter, not Mr. Frohlich. *See* Rieker Decl., **Exhibit "6"**, ¶¶ 74(a)–(k) (nine of the eleven occasions are pleaded as meetings at which "Lichter met with Plaintiff Oberlander"). Without attribution, the Amended Complaint collapses. New York law forecloses it.

Even at the pleading stage, a plaintiff must plead "specific allegations from which an agency relationship can be inferred." *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014). "[A] simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship." *Id*. "Conclusory allegations – claims consisting of bare legal conclusions with no factual specificity

– are insufficient to survive a motion to dismiss." *Pinkesz v. Massachusetts Mut. Life Ins. Co.*, 234 A.D.3d 886, 888, 227 N.Y.S.3d 127 (2nd Dept. 2025).

Plaintiffs' labels that Lichter was an "agent" and his conduct was "fully attributable" to the Frohlich Defendants are legal conclusions, not entitled to a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (courts need not accept legal conclusions as true). The Amended Complaint identifies Lichter as a life-insurance professional associated with "10/50 Group LLC" and alleges that he emailed from that firm's address, signing as its "Managing Partner." See Rieker Decl., **Exhibit "6",** ¶¶ 12, 81. By its own allegations, Lichter is affiliated with a *different* firm from the Frohlich Defendants.

The agency theory rests on three facts drawn from Lichter's sworn complaint for a separate, since-dismissed action: that Mr. Frohlich was Lichter's "senior colleague" who "assisted" him; the two agreed to split commissions 50/50; and the application was placed under Frohlich's name because Lichter's *own employer* did not permit him to sell AIG products. *Id.* ¶ 15(iii)(a)–(c).

Taken as true, as the court must on a motion to dismiss, those facts show at most a commission-sharing or referral arrangement between independent brokers, not agency. *Kyung Sup Ahn v. Rooney, Pace Inc.*, 624 F. Supp. 368 (S.D.N.Y. 1985) (no agency between an introducing broker and clearing broker because the two were clearly separate entities with no control over the other); *Amedas, Inc. v. Brown*, 505 So. 2d 1091 (Fla. Dist. Ct. App. 1987) (no agency relationship despite commission sharing agreement because of lack of control).

**A. Plaintiffs Fail To Plead Actual Authority**

"Actual authority is created by direct manifestations from the principal to the agent, and the extent of the agent's actual authority is interpreted in the light of all circumstances attending those manifestations, including the customs of business, the subject matter, any formal agreement

between the parties, and the facts of which both parties are aware." *Highland Cap. Mgmt. LP v. Schneider*, 607 F.3d 322 (2d Cir. 2010) (*quoting Peltz v. SHB Commodities, Inc.*, 115 F.3d 1082, 1088 (2d Cir. 1997)); *Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) (New York agency law requires a principal's consent that the agent act on its behalf and be subject to its control); *see also Fla. Power & Light Co. v. McRoberts*, 257 So. 3d 1023, 1026 (Fla. Dist. Ct. App. 2018) (under Florida law, to establish actual authority a plaintiff must prove "(1) acknowledgement by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent.").

The Amended Complaint alleges neither a manifestation *by the Frohlich Defendants to Lichter* authorizing the specific promises nor control over Lichter's manner and means. It alleges only that the Frohlich Defendants acted "through agents, including" Lichter, associated with 10/50 Group LLC; that Lichter "personally solicited the Policy"; and that he was the writing agent. *See* Rieker Decl., **Exhibit "6",** ¶¶ 12, 15(i)–(ii). It relies on the commission split and application placement under Frohlich's name to assert that Lichter's acts were authorized and "fully attributable" to the Frohlich Defendants. *Id.* ¶¶ 15(iii), 16-17.

None of those allegations pleads a right of control or a principal-to-agent manifestation. Cooperation, a commission split, or use of one producer's paper because another could not place the carrier's product does not create agency absent control. *Kyung Sup Ahn v. Rooney, Pace Inc.*, 624 F. Supp. 368 (S.D.N.Y. 1985); *Bigio v. Coca-Cola Co.*, 675 F.3d 163 (2d Cir. 2012) (no agency between corporate parent and subsidiary where the parent invested in and advised the subsidiary due to lack of control); *E & H Cruises, Ltd. v. Baker*, 88 So. 3d 291 (Fla. Dist. Ct. App. 2012) (no agency between two entities because no evidence of control over operations).

While Plaintiff would ask this Court to believe in some long-running scheme between two insurance brokers to defraud Plaintiffs, even if established, the alleged arrangement is consistent only with Lichter's referral to an unaffiliated agent who could procure an AIG policy and a request for part of the commission as a referral fee. The Amended Complaint alleges neither that Lichter could bind the Frohlich Defendants nor that they controlled him. The pleadings instead show different business names, addresses, email addresses, and phone numbers. Claims against Lichter for his individual conduct are not at issue here. Plaintiffs therefore fail to plead actual authority, warranting dismissal.

**B. Plaintiffs Fail To Plead Apparent Authority**

Apparent authority fails because the Amended Complaint relies on *Lichter's* statements. Apparent authority requires "words *or conduct of the principal*, communicated to a third party" that create the appearance of authority. *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551, 678 N.E.2d 874 (1997) (emphasis in original); *see also Villazon v. Prudential Health Care Plan, Inc.,* 843 So. 2d 842, 855 (Fla. 2003) ("apparent authority exists only where the *principal* creates the appearance of an agency relationship.") (emphasis in original). An agent cannot create apparent authority through his own representations; authority must be traceable to the principal. *Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989). "One who deals with an agent does so at his peril, and must make the necessary effort to discover the actual scope of authority. Upon failure to properly determine the scope of authority, and in the face of damages resulting from an agent's misrepresentations, "apparent authority" is not automatically available to the injured third party to bind the principal." *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 473 (1973).

Plaintiffs attempt to establish Lichter's authority through his sworn statements about Frohlich in another court filing. Rieker Decl., **Exhibit "6",** ¶15. But the allegation that the

application was "placed under" Frohlich's name because Lichter's employer could not sell AIG products, coupled with a commission split, is not a manifestation by the Frohlich Defendants to Plaintiffs that Lichter is an agent. It shows an employer-imposed constraint, not authorization by the Frohlich Defendants.

Because the Amended Complaint alleges no representation by the Frohlich Defendants that Lichter could bind them to premium financing promises, apparent authority fails. *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 678 N.E.2d 874 (1997) (no apparent authority where an insurance agent went outside the agency agreement to guarantee premium financing because there were no actions by the principal granting authority); *Herbert Const. Co. v. Cont'l Ins. Co.*, 931 F.2d 989 (2d Cir. 1991) (agent's unilateral representations without the principal's assent did not establish apparent authority); *Precedo Cap. Grp., Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245 (S.D.N.Y. 2014) (granting dismissal where representations did not come from the principal); *H. S. A., Inc. v. Harris-In-Hollywood, Inc.,* 285 So. 2d 690 (Fla. Dist. Ct. App. 1973) (no apparent authority where the representations did not come from the principal).

**C. Plaintiffs Do Not Plead Agency by Ratification, and Any Such Claim Would Fail**

Ratification requires the principal's knowledge of all material facts, acceptance of the transaction's benefits, and intent to adopt the agent's acts. *New York State Med. Transporters Ass'n, Inc. v. Perales*, 77 N.Y.2d 126, 566 N.E.2d 134 (1990); *see also Stalley v. Transitional Hosps. Corp. of Tampa*, 44 So. 3d 627 (Fla. Dist. Ct. App. 2010) (under Florida law, ratification requires the principal be fully informed of the agent's act and affirmatively manifest an intent to approve the act). The Amended Complaint alleges no facts showing the Frohlich Defendants knew Lichter's specific representations, adopted them, or accepted benefits intending to do so. It alleges

only generalized cooperation, a commission split, and that Lichter's acts were "fully attributable" to them. Rieker Decl., **Exhibit "6",** ¶ 17. That is insufficient.

Ratification independently fails because Plaintiffs allege that Lichter's inducement - a ten percent (10%) rebate of policy commissions - was "prohibited by New York Insurance Law § 2324." *Id*. at ¶¶ 66-69. Though the Frohlich Defendants deny agreeing to any rebate, whether through Lichter or otherwise, they could not ratify an act they could not lawfully authorize.

"Illegal contracts are not generally enforceable – a rule that applies as well to ratification." *New York State Med. Transporters Ass'n, Inc. v. Perales*, 77 N.Y.2d 126, 131-32, 566 N.E.2d 134 (1990) (cleaned up). "A principal cannot ratify an agent's act that the principal itself could not have authorized." *Id.* Because the Frohlich Defendants could not lawfully authorize an illegal rebate, they cannot be deemed to have ratified it. Plaintiffs' new allegations defeat ratification.

### D. Plaintiffs Cannot Selectively Invoke Some of Lichter's Sworn Allegations And Reject those which Contradict their Own Account

The agency theory rests on Lichter's sworn allegations in a related Kings County action, *Lichter v. Oberlander*, No. 501193/2022 (the "Lichter Complaint"), annexed to the Rieker Decl. as **Exhibit "10".** Plaintiffs expressly rely on Lichter's statements that Frohlich was his "senior colleague" (Rieker Decl., **Exhibit "6"** ¶ 15(iii)(a); **Exhibit "10"** ¶ 26), that Lichter and Frohlich agreed to split commissions 50/50 (**Exhibit "6"** ¶ 15(iii)(b); **Exhibit "10"** ¶ 27), and that the AIG application was placed under Frohlich's name because Lichter's employer would not permit him to sell AIG products (**Exhibit "6"** ¶ 15(iii)(c); **Exhibit "10"** ¶ 27). Plaintiffs also rely on Lichter's allegation concerning the $100,000 payment (**Exhibit "6"** ¶ 68; **Exhibit "10"** ¶ 41 which terms it a loan). They cannot selectively invoke that pleading while ignoring allegations fatal to their account.

On a motion to dismiss, the Court may consider written instruments attached to or incorporated by reference in the complaint and documents integral to it. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005). "Were courts to refrain from considering such documents, complaints that quoted only selected portions of such documents could not be dismissed under Rule 12(b)(6) even though they would be doomed to failure." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Conversion to summary judgment is unnecessary where Plaintiffs had notice of and relied on the documents in framing the complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

The Lichter Complaint, which Plaintiffs ask the Court to consider, contradicts the Amended Complaint's central narrative in five material respects:

**1. Lichter Affirms that Plaintiffs Requested Policy Directly from Him**

Lichter alleges that Oberlander "sought out life insurance policies on his mother" and contacted Lichter about obtaining one. Rieker Decl., **Exhibit "10",** ¶¶ 5, 13. That allegation contradicts the Amended Complaint's allegation that the Frohlich Defendants "solicited" and "preyed on an unsophisticated individual." Rieker Decl., **Exhibit "6",** ¶¶ 54, 57.

**2. Lichter Affirms that Oberlander Suggested Premium Financing, not Defendants**

Lichter alleges that Oberlander preferred a bank to fund the premiums so his "money would not be tied up." Rieker Decl., **Exhibit "10",** ¶ 17. That allegation contradicts the premise that premium financing was a Frohlich inducement on which Oberlander unwittingly relied. Rieker Decl., **Exhibit "6"**, ¶ 57.

### 3. Lichter's Complaint Refutes Plaintiffs' Claim of Unsophistication

Lichter alleges that Oberlander owns a 50% interest in a family business generating $180 million in gross sales, owns at least four properties, holds multiple policies with nearly $1 million in cash value, and "assured Lichter that he had the financial means to support these life insurance policies and their premiums." Rieker Decl., **Exhibit "10", ¶¶** 5, 19–21. Those allegations contradict the Amended Complaint's characterization of Oberlander as unsophisticated and unable to afford additional premiums. Rieker Decl., **Exhibit "6", ¶¶** 57, 107(c).

### 4. Lichner Affirms that Collateralization was Disclosed to and Agreed by Oberlander

Lichter alleges that Oberlander himself "agreed to provide his mother's house . . . as collateral," and that Ms. Oberlander "confirmed that she agreed to collateralize[] her house." Rieker Decl., **Exhibit "10", ¶¶** 21–23. That allegation contradicts the omission theory that the financing's collateralization requirement was undisclosed. Rieker Decl. **Exhibit "6", ¶** 76.

### 5. Lichter and Plaintiffs Agree that Oberlander Accepted a $100,000 Payment Issued Directly From Lichter's Own Personal Bank Account

The Lichter Complaint pleads that the payment was a loan issued to Oberlander directly from his own personal bank account and asserts breach of contract and unjust enrichment claims. Rieker Decl., **Exhibit "6"**, ¶67; **Exhibit "10", ¶¶** 41, 58–61, 80–85. That contradicts the Amended Complaint's allegation that it was a §2324 "kickback." Rieker Decl., **Exhibit "6", ¶¶** 66–68.

Plaintiffs aver that Lichter's sworn statement in his pleading must be taken as true. As such, this Court must afford Plaintiffs such benefit of the doubt on a motion to dismiss. Rieker Decl., **Exhibit "6"**, ¶ 15. *See Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 584 (E.D.N.Y. 2009) (a Court must "assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party."). Further, "prior statements or averments of parties or their

agents in the course of litigation that refute an essential element of a plaintiff's present claim may constitute documentary evidence within the meaning of CPLR 3211(a)(1)." *Morgenthow & Latham v. Bank of New York Co., Inc.*, 305 A.D.2d 74, 80, 760 N.Y.S.2d 438 (1st Dept., 2003).

In *Morgenthow*, the defendant argued that the plaintiffs' fraud allegations conflicted with allegations in a separate action and should be dismissed. *Id.* The Court agreed, reversing to grant dismissal and finding that the separate complaint was documentary evidence whose allegations "flatly contradict" those in the present action. *Id.* at 82. The same result follows here.

Plaintiffs may not pick and choose which of Lichter's statements to have this Court accept as true. Having adopted his sworn statements to manufacture agency, Plaintiffs are bound by the rest, most of which support dismissal. In short, the very document Plaintiffs invoke to attribute Lichter's conduct to the Frohlich Defendants refutes their allegations of solicitation, unsophistication, nondisclosure, and reliance. Plaintiffs cannot have it both ways.

Because Lichter's conduct cannot be attributed to the Frohlich Defendants, the particularized meetings pleaded in **Exhibit "6"** ¶¶ 74(a)–(k) drop out, leaving only Mr. Frohlich's alleged statements. Those statements independently fail, as shown in Point II, below.

## POINT II

## THE AMENDMENTS DO NOT CURE THE RULE 9(b) FRAUD DEFECTS

### A. The Fraud Allegations Still Fail Despite the Amendments

Fraud claims must state the circumstances constituting the wrong in detail under CPLR § 3016(b) and Fla. R. Civ. P. 1.120(b) and must allege (i) a representation of material fact; (ii) falsity; (iii) intent; (iv) reliance; and (v) injury. *Moore v. Liberty Power Corp., LLC*, 72 A.D.3d 660, 661, 897 N.Y.S.2d 723 (2010); *see also Peninsular Fla. Dist. Council of Assemblies of God v. Pan Am. Inv. & Dev. Corp.*, 450 So. 2d 1231, 1232 (Fla. Dist. Ct. App. 1984) (same).

Once Lichter's allegations are disregarded, the Amended Complaint attributes only three conversations to the Frohlich Defendants: December 9, 2014; March 27, 2015; and May 17, 2015. Rieker Decl., **Exhibit "6",** ¶¶ 74(h), (j)-(k). The March and May conversations postdate issuance of the Policy, which was issued on March 5, 2015. *Id.* ¶ 95. They therefore could not have induced the purchase, as they occurred *after* the Policy was obtained.

The lone pre-issuance statement also fails for particularity. Where a claim sounds in fraud, "the circumstances constituting the wrong shall be stated in detail." CPLR 3016(b). A particular defendant must be identified through allegations specifying the "specific misrepresentations, who made such misrepresentations, and when they were made." *Daly v. Kochanowicz*, 67 A.D.3d 78, 90, 884 N.Y.S.2d 144 (2nd Dept., 2009); *see also Houri v. Boaziz, 196 So. 3d 383, 393 (Fla. Dist. Ct. App. 2016)* (a fraud claim "must not only specifically identify a misrepresentation of fact but also identify when, where, or the manner in which it was made."). As pleaded, Lichter – not the Frohlich Defendants – made the statement that Plaintiffs would ""get reimbursed on all [their] outlays." (or words to that effect)" *Id.* ¶ 74(h). The allegation that the Frohlich Defendants "participated in the meeting" provides no details of any misrepresentation they made. Plaintiffs could not even state with certainty how the Frohlich Defendants participated in the meeting, indicating that it may have been via phone or it may have been via video. *Id*. The claim rests on precisely the kind of vague, equivocal allegation the particularity requirement forbids.

**B. The Alleged Statements Remain Non-Actionable Opinions and Predictions of Future Events**

The gravamen of the fraud claim is unchanged: Plaintiffs allege the Frohlich Defendants represented that they would obtain premium financing and Plaintiffs would "not be required to pay 'a nickel out of their pocket.'" Rieker Decl., **Exhibit "6",** ¶¶ 61–62, 103(e)–(f). Even if Lichter's

statements could be attributed to the Frohlich Defendants, these remain non-actionable opinions or predictions of future events.

New York law holds that statements that a purchaser would never have to pay insurance premiums or that a policy would not cost "any money" are "nothing more than an opinion or prediction of something which is hoped to occur in the future, and cannot sustain a claim for fraud." *Brahver v. Fishman*, No. 19616-07, 2008 WL 2614847 (N.Y. Sup. Ct. June 19, 2008); *see also Cilente v. Phoenix Life Ins. Co.*, No. 600313/08, 2014 WL 70336 (N.Y. Sup. Ct. Jan. 7, 2014). Repetition does not convert a prediction into a misrepresentation of existing fact.

Florida law reaches the same result: "[A] false statement of fact, to be a ground for fraud, must be of a past or existing fact, not a promise to do something in the future." *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So. 2d 1367, 1371 (Fla. Dist. Ct. App. 1981); *see also Thompson v. Bank of New York,* 862 So. 2d 768, 770 (Fla. Dist. Ct. App. 2003) (finding that the representation by seller that purchaser was "financially able to qualify and afford" the property at issue was a non-actionable matter of opinion). The alleged financing and "not a nickel" representations are predictions of future conduct.

Plaintiffs cite no authority holding that a promise that a purchaser would not pay a nickel or that financing would be obtained is an actionable misrepresentation of existing fact. After multiple opportunities to correct the allegations, Plaintiffs still plead no actionable fraud. *See Chase Invs., Ltd. v. Kent*, 256 A.D.2d 298, 681 N.Y.S.2d 319 (2nd Dept., 1998) (reversing and denying leave to amend where the alleged representation was a prediction of something which is hoped for the future); *LaBate v. Urban Foundation Engineering LLC*, No. 1486-04, 2008 WL 552887 (N.Y. Sup. Ct. Feb. 14, 2008) ("an expression of opinion will not sustain an action for fraud"); *Channel Master Corp. v. Aluminum Ltd. Sales, Inc.*, 4 N.Y.2d 403, 408, 151 N.E.2d 833

(1958) (fraud is "not a case of prophecy and prediction of something which it is merely hoped or expected will occur in the future.").

**C. Plaintiffs Cannot Establish Reasonable Reliance**

Even assuming that Lichter's allegations are attributable to the Frohlich Defendants and that the representations are actionable - which this Court should not do - the fraud claim fails for lack of reasonable reliance. Reliance is an essential element of fraud. *See Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.,* 19 A.D.3d 1056, 1058, 796 N.Y.S.2d 790 (2005), *aff'd*, 7 N.Y.3d 152, 851 N.E.2d 1149 (2006) (finding insurance broker could not be held liable for fraud where the plaintiff could not have "reasonably relied on the alleged misrepresentations…"); *Avila S. Condo. Ass'n, Inc. v. Kappa Corp.*, 347 So. 2d 599, 609 (Fla. 1977) (a complaint for fraud must allege reasonable reliance on material misrepresentations of existing fact). The Amended Complaint itself defeats reliance.

First, Plaintiffs allege that Oberlander told the Frohlich Defendants that he "may have been over-insured," was experiencing cash-flow difficulties with existing policies, and could not afford additional premiums. Rieker Decl., **Exhibit "6",** ¶ 107(a)–(c). An individual "has to know his own financial capacity" better than a stranger. *Thompson v. Bank of New York*, 862 So. 2d 768, 770 (Fla. Dist. Ct. App. 2003). A party who knows it cannot afford a policy cannot reasonably rely on a stranger's prediction that it will cost nothing. *Brahver v. Fishman*, No. 19616-07, 2008 WL 2614847 (N.Y. Sup. Ct. June 19, 2008).

Plaintiffs also had experience buying high-premium life insurance. The Application annexed to the Policy refers to three policies on Ms. Oberlander, issued by three insurers, totaling more than $15 million. Rieker Decl., **Exhibit "4",** ¶ 14(b). "A sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged

misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." *HSH Nordbank AG v. UBS AG*, 95 A.D.3d 185, 194-95, 941 N.Y.S.2d 59 (1st Dept., 2012). Given Plaintiffs' demonstrated experience with high-premium life insurance and their own admitted financial circumstances, any reliance on the alleged "not a nickel" representation was unjustifiable as a matter of law.

Second, the Policy disclosed the $87,346.45 monthly premium and provided a 20-day review period during which Plaintiffs could surrender coverage for a refund. Plaintiffs had a duty to read the Policy. *Minsker v. John Hancock Mut. Life Ins. Co.*, 254 N.Y. 333, 338, 173 N.E. 4 (1930) ("When an insured receives a policy, it is his duty to read it or have it read, and if an application incorporated therein does not contain correct answers…it is his duty to have it corrected."); *Waknin v. Liberty Ins. Corp.*, 187 A.D.3d 821, 132 N.Y.S.3d 140, 143 (2nd Dept., 2020) (granting summary judgment finding no justifiable reliance stating "[a]n insured is conclusively presumed to have read and assented to the terms of an insurance policy that he or she has received.").

Despite that information, Plaintiffs paid premiums for "a number of quarters" and borrowed "hundreds of thousands of dollars" to keep the Policy intact. Rieker Decl., **Exhibit "6",** ¶ 99. They continued paying for at least six months *after* the last alleged financing representation in May 2015; the Policy did not lapse until 2016. *Id.* ¶¶ 74, 100. Those payments, made without a further alleged inducement, show that Plaintiffs voluntarily continued coverage.

Third, Plaintiffs allege that the Frohlich Defendants or Lichter offered to refund commissions from first-year premiums, violating Insurance Law § 2324. *Id.* ¶¶ 65, 69. The Frohlich Defendants <u>specifically deny offering any kind of refund or repayment,</u> and in fact

Plaintiffs admit they accepted a payment directly from Lichter's personal bank account. *Id.* ¶ 67. Even if true, this allegation would destroy reasonable reliance as a matter of law.

Reliance on an unlawful promise is not justifiable. *Healy v. Kruger*, 247 A.D.3d 534, 535, 250 N.Y.S.3d 96 (1st Dept., 2026) ("the illegality of the agreement precluded plaintiff from asserting a fraud claim..."); *New York State Med. Transporters Ass'n, Inc. v. Perales*, 77 N.Y.2d 126, 131-32, 566 N.E.2d 134 (1990). The fraud claim therefore fails for lack of reasonable reliance.

Further, Plaintiffs' admission that they accepted a payment from Lichter requires dismissal under *in pari delicto*. Under New York law, the "doctrine of in pari delicto mandates the courts will not intercede to resolve a dispute between two wrongdoers." *New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*, 145 A.D.3d 16, 41 N.Y.S.3d 1 (1st Dept., 2016)*; see also Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) ("a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing"). By Plaintiffs' own account, Oberlander did not merely *encounter* the alleged rebate scheme, he accepted and deposited the unlawful payment that New York Insurance Law § 2324 forbids. Having pleaded himself into the wrongdoing he invokes, Plaintiffs cannot ask this Court to referee the fallout.

## POINT III

## THE BREACH OF CONTRACT AND IMPLIED-COVENANT CLAIMS REMAIN DEFICIENT

### A. The Plaintiffs Fail to Plead All Required Elements of a Breach of Contract Claim

The Amended Complaint does not cure the deficiencies with the breach of contract claim. Plaintiffs allege that the Frohlich Defendants entered into a contract to serve as Plaintiffs' life-insurance agents through oral conversations, emails, and other writings. Rieker Decl., **Exhibit "6",** ¶ 116. The claim fails on multiple independent grounds, detailed below and in prior briefs.

**1. Allegations are Too Indefinite to be Actionable**

New York law requires a breach of contract claim to identify the essential terms, the terms breached, whether the contract was written or oral, and the compensation rate. *Caniglia v. Chicago Trib.-New York News Syndicate, Inc.*, 204 A.D.2d 233, 612 N.Y.S.2d 146 (1st Dept., 1994). "[V]ague allegations suggesting that there may have been an agreement do not suffice." *Reznick v. Bluegreen Resorts Mgmt., Inc.*, 154 A.D.3d 891, 893, 62 N.Y.S.3d 460 (2nd Dept., 2017).

The Amended Complaint alleges only that the Frohlich Defendants agreed "to provide life insurance advisory services, premium financing services, and imposed other obligations" and breached that agreement by "failing to obtain third-party financing for the premiums, and otherwise failing to live up to their contractual duties." Rieker Decl., **Exhibit "6",** ¶¶ 117-18. These vague terms and catchalls do not identify an enforceable agreement or breach. *See McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 395 (Fla. Dist. Ct. App. 1992) (a "plaintiff must allege elements of the contract with precision so that the person against whom redress is sought may properly defend."); *Barker v. Time Warner Cable, Inc.*, 83 A.D.3d 750, 751, 923 N.Y.S.2d 118 (2nd Dept., 2011) ("the plaintiff's allegations must identify the provisions of the contract that were breached."). The claim therefore fails for indefiniteness.

**2. Any Claim as to an Oral Contract is Barred by the Statute of Frauds**

New York General Obligations Law § 5-701(a)(1) and (9) require agreements relating to life-insurance policies or not performable within one year to be in writing. This alleged contract concerns a life-insurance policy and, given the continuing premium obligation, could not be performed within one year. An oral contract therefore violates the Statute of Frauds.

Furthermore, contracts "to pay compensation for services entered in negotiating a loan" must also be in writing. N.Y. Gen. Oblig. Law § 5-701(a)(10). New York courts have treated

premium financing as a loan. *See generally Goldstein v. Lewis*, 90 A.D.2d 748, 455 N.Y.S.2d 810 (1982), *aff'd*, 59 N.Y.2d 706, 450 N.E.2d 227 (1983). Because Plaintiffs allege a contract to "obtain third-party financing for premiums," the claim is also barred on this ground.

**3. The Frohlich Defendants are not Parties to the Insurance Policy**

New York law provides that "[a]n insurance policy is a contract between the insurer and the insured." *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 53 A.D.3d 140, 145, 855 N.Y.S.2d 459 (1st Dept., 2008); *see also Am. Strategic Ins. Co. v. Lucas-Solomon*, 927 So. 2d 184, 186 (Fla. Dist. Ct. App. 2006) (applying Florida law, "an insurance policy is a contract between the insurer and the insured"). A nonparty to a contract owes no contractual duties and cannot be bound by its terms. *Lipton v. Unumprovident Corp.*, 10 A.D.3d 703, 706, 783 N.Y.S.2d 601 (2nd Dept., 2004) (finding the defendant was not a party to the contract of insurance and therefore owed no contractual duty).

The Frohlich Defendants were not parties to the Policy; it was a contract between Pearl Oberlander, the insured, and AIG. Plaintiffs' breach of contract claim therefore fails.

**4. The Amended Complaint Fails to Plead Adequate Consideration**

The Amended Complaint repeats that Plaintiffs "provided consideration in the nature of their purchase of the life insurance policy." Rieker Decl., **Exhibit "6",** ¶ 117. But performance of an act is "insufficient, in and of itself, to constitute valid consideration" absent allegations that it was given "in return for defendant's promise." *Wood Realty Tr. v. N. Storonske Cooperage Co.*, 229 A.D.2d 821, 823, 646 N.Y.S.2d 410 (3rd Dept., 1996); *see also Off. Pavilion S. Fla., Inc. v. ASAL Prods., Inc.*, 849 So. 2d 367 (Fla. Dist. Ct. App. 2003) (finding a promise to place future orders is illusory). No authority supports using a decision to purchase an offered policy to retroactively establish a contract between a customer and an agent.

**B. The Implied Covenant Claim Remains Duplicative of the Breach of Contract Claim**

Without an enforceable contract, the implied covenant of good faith and fair dealing claim fails. *See generally Sabharwal v. Eminax LLC,* No. 603395/00, 2002 WL 34338617 (N.Y. Sup. Ct. Apr. 5, 2002) (a party may not impose an implied-covenant claim in the absence of a contract).

Even if a contract existed, the implied-covenant claim is duplicative of the breach of contract claim and must be dismissed. *See Shibata v. Lim*, 133 F. Supp. 2d 1311 (M.D. Fla. 2000) (applying Florida law, finding that "a breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract."); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 662 N.E.2d 763 (1995) (a good faith claim will be dismissed as redundant if it is duplicative of a breach of contract cause of action); *Amcan Holdings, Inc. v. Canadian Imperial Bank of Com.*, 70 A.D.3d 423, 894 N.Y.S.2d 47 (1st Dept., 2010) (dismissing a good faith and fair dealing claim because it arose from the same facts as the breach of contract claims).

The Amended Complaint repeats the same conduct as the breach of contract claim – selling the Policy, failing to obtain financing, and failing to perform contractual duties. Rieker Decl., **Exhibit "6",** ¶ 129. The implied covenant claim is therefore duplicative.

Plaintiffs attempt to save their doomed claim by alleging in the Amended Complaint that the claim is pleaded in the alternative. This assertion has no basis in law or reason. If a plaintiff were permitted to have all non-meritorious claims survive solely because they were pleaded in the alternative, all causes of action would come to be plead in the alternative to survive a motion to dismiss. Because Plaintiffs' claims have no basis in fact or law, they must be dismissed. *See Pinkesz v. Massachusetts Mut. Life Ins. Co.*, 234 A.D.3d 886, 888, 227 N.Y.S.3d 127 (2nd Dept., 2025) ("Where the plaintiff fails to assert facts in support of an element of the claim, or if the

factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery, dismissal of the cause of action is warranted.") (internal quotations omitted); *Ellison v. City of Fort Lauderdale*, 175 So. 2d 198, 200 (Fla. 1965) ("A complaint may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim.").

**POINT IV**

**PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD A BREACH OF FIDUCIARY DUTY CLAIM**

Under New York law, the relationship between an insurance agent and client is ordinarily commercial and creates no fiduciary obligation. *Murphy v. Kuhn*, 90 N.Y.2d 266, 682 N.E.2d 972 (1997) (holding "[i]nsurance agents or brokers are not personal financial advisors and risk managers," and have no common-law duty to obtain premium financing or provide professional advice).

The only duty imposed upon Frohlich was to obtain the requested insurance coverage or advise of inability to do so. The Frohlich Defendants met that duty. If Plaintiffs secured a loan to pay premiums instead of canceling the policy for a full refund, which the Policy allowed them to do, that was their decision. *See also Beardmore v. Abbott*, 218 So. 2d 807 (Fla. Dist. Ct. App. 1969) (applying Florida law, an insurance broker did not breach any duties in allegedly recommending a policy which the insured "could not afford" because the insured was aware of the terms and paid the premiums for multiple years).

The breach of fiduciary duty claim is also duplicative of the breach of contract claim and must be dismissed because it rests on the same conduct. *Detwiler v. Bank of Cent. Fla.*, 736 So.

2d 757 (Fla. Dist. Ct. App. 1999); *see also Layden v. Boccio*, 253 A.D.2d 540, 686 N.Y.S.2d 763 (1998) (finding claims for breach of fiduciary duty and fraud failed where based on the same allegations as the breach of contract claim).

Plaintiffs assert that the fiduciary duties were "separate and apart" from and broader than their contractual duties. Rieker Decl., **Exhibit "6",** ¶ 137. But the alleged duties are identical: selling the Policy, failing to obtain financing, and providing improper financial advice. *Compare* **Exhibit "6",** ¶ 136 with ¶ 117. The claim is duplicative and must be dismissed.

## POINT V

## THE AMENDMENTS DO NOT SAVE PLAINTIFFS' NEGLIGENCE CLAIM

Plaintiffs' negligence claim matches their claim for breach of contract and must be dismissed. *Compare* **Exhibit "6",** ¶ 118 with ¶ 144. *Orok Edem v. Grandbelle Int'l, Inc.*, 118 A.D.3d 848, 988 N.Y.S.2d 244 (2nd Dept., 2014); *Laufen, Inc. v. Andrew*, 83 So. 3d 898 (Fla. Dist. Ct. App. 2012).

Beyond that, the amended claim STILL identifies no breached duty. Insurance agents have a limited duty "to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so." *Murphy v. Kuhn*, 90 N.Y.2d 266, 270, 682 N.E.2d 972 (1997); *see also Burns v. Consol. Am. Ins. Co.,* 359 So. 2d 1203, 1206 (Fla. Dist. Ct. App. 1978). Because the requested coverage was procured, the Frohlich Defendants satisfied that duty.

Plaintiffs' own negligence was the sole cause of their alleged damages. Before accepting the Policy, they knew of multiple other policies on Ms. Oberlander's life, cash-flow difficulties, and their inability to afford the premium. Rieker Decl., **Exhibit "6",** ¶ 107. The Policy included a 20-day surrender period with a full refund. Plaintiffs' continued payments beyond that period were a superseding act of negligence breaking causation and negating liability. *See Chelton v.*

*Tallahassee-Leon Cnty. Civic Ctr. Auth.*, 525 So. 2d 972, 974 (Fla. Dist. Ct. App. 1988) ("the plaintiff's own negligence was the sole proximate cause of the injury"); *Sorrentino v. Paganica*, 18 A.D.3d 858, 796 N.Y.S.2d 667 (2nd Dept., 2005); *Cosmos, Queens Ltd. v. Matthias Saechang Im Agency*, 74 A.D.3d 682, 684, 904 N.Y.S.2d 386 (1st Dept., 2010) (finding that the plaintiff's "own inaction" constituted a "superseding cause" because the plaintiff was "fully aware" of the terms of a policy and yet did nothing).

Further, Plaintiffs accepted the policy's benefits by repeatedly paying premiums without financing in place. The negligence claim must therefore be dismissed based on ratification and waiver. *Cammeby's Mgmt., Co., LLC v. Affiliated FM Ins. Co.*, 152 F. Supp. 3d 159 (S.D.N.Y. 2016); *Am. Gen. Life Ins. Co. v. Salamon*, No. 09 Civ. 5428, 2011 WL 976411, at *4 (E.D.N.Y. Mar. 16, 2011), aff'd., 483 Fed. Appx. 609 (2d Cir. 2012).

## POINT VI

## THE GBL § 349 CLAIM IS TIME-BARRED AND FAILS BASED ON NO ALLEGATIONS OF CONSUMER-ORIENTED CONDUCT

"A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 611 (2000). The Amended Complaint alleges only that the Frohlich Defendants' representations to Plaintiffs to solicit the Policy were false and deceptive. Rieker Decl., **Exhibit "6",** ¶ 153. It does not even satisfy the first prong.

Marketing a life insurance policy to an individual is not "consumer-oriented" conduct with "a broader impact on consumers at large." *Flax v. Lincoln Nat. Life Ins. Co.*, 54 A.D.3d 992, 994, 864 N.Y.S.2d 559 (2nd Dept., 2008). To be "consumer-oriented," plaintiffs "must demonstrate

that the acts or practices have a broader impact on consumers at large. Private contract disputes unique to the parties, for example, would not fall within the ambit of the statute." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741 (1995). The Amended Complaint alleges no misrepresentations to the public at large and therefore, the claim should be dismissed.

**POINT VII**

**THE UNJUST ENRICHMENT CLAIM HAS NOT BEEN SAVED BY THE AMENDMENTS**

Unjust enrichment is unavailable where it duplicates a conventional contract or tort claim. *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177 (2012). The Amended Complaint bases the claim on the same conduct and seeks commissions paid to the Frohlich Defendants and premiums paid to AIG. Rieker Decl., **Exhibit "6",** ¶ 164. It is therefore duplicative of the contract and tort claims and must be dismissed.

The claim also fails because Plaintiffs received coverage during the period for which they paid. Unjust enrichment requires enrichment to be unjust as between the parties. *Goel v. Ramachandran*, 111 A.D.3d 783, 791, 975 N.Y.S.2d 428 (2nd Dept., 2013). Plaintiffs cannot show unjust enrichment because they received the benefit of coverage. Had the insured died during that period, the beneficiary would have been entitled to a death benefit on the $15 million policy.

**POINT VIII**

**THE DECLARATORY JUDGMENT CLAIM FAILS AS A MATTER OF LAW**

The declaratory judgment claim seeks retroactive rescission of the Policy and repayment of all premiums. Rieker Decl., **Exhibit "6",** ¶ 171. CPLR § 3001 and Fla. Stat. § 86.011 permit declarations concerning rights in a justiciable controversy, but the claim cannot settle factual issues

under a clear contract. *Burns v. Hartford Acc. & Indem. Co.*, 157 So. 2d 84 (Fla. Dist. Ct. App. 1963). Where the "essence of the plaintiff's complaint is an ordinary action at law to recover commissions…there is no necessity to resorting to a declaratory judgment." *Von Keller v. Koehler*, 264 A.D. 778, 779, 34 N.Y.S.2d 673 (2nd Dept., 1942).

No ambiguity in the Policy requires construction, and the Frohlich Defendants cannot rescind it or return premiums paid to the insurer. Any declaratory claim belongs, if anywhere, against the insurance company, not the agents, and should be dismissed.

## POINT IX

## THE TORT AND STATUTORY CLAIMS ARE TIME-BARRED

The negligence, breach-of-fiduciary-duty, and GBL § 349 claims each carry a three-year limitations period. CPLR § 214. The alleged conduct occurred in 2014–2015 and the Policy lapsed in 2016. *See generally* **Exhibit "6**." This action was filed on September 23, 2019, more than three years later. The Amended Complaint's new allegations do not alter those accrual dates. Each claim is untimely and must be dismissed.

## POINT X

## THE AMENDED COMPLAINT DOES NOT CURE THE DAMAGES DEFECTS THAT REMAIN OPEN AFTER THE SECOND CIRCUIT'S RULING

The Second Circuit vacated this Court's prior decision on damages because it read the prior complaint to allege that Plaintiffs borrowed and paid premiums *in reliance* on the financing promise, holding that, if proven, loan liability could constitute contract damages and the value differential could constitute "pecuniary loss" for fraud. Rieker Decl., **Exhibit "4"** at 4. It expressly declined to decide "whether the measure of such damages is too speculative to support a cause of

action," observing that the issue was "not raised below." *Id*. at 5 n.1. The Frohlich Defendants now squarely raise it, and two additional record-based defects remain.

### A. The Plaintiffs' Damages Theory Is Speculative

Plaintiffs claim as damages: "the loss of insurability on their mother, the liability for the loans taken to pay the premiums, the opportunity costs of making the premiums, and other damages to be proved at trial." Rieker Decl., **Exhibit "6",** ¶ 101. These are unquantified, contingent losses. Contract damages "must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes." *Kenford Co. v. Erie Cnty.*, 67 N.Y.2d 257, 261, 493 N.E.2d 234 (1986). Fraud damages are limited by the "out-of pocket" rule to "the actual pecuniary loss sustained as the direct result of the wrong." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421, 668 N.E.2d 1370 (1996).

The Amended Complaint identifies no non-speculative loss distinct from Plaintiffs' decision to accept the Policy and borrow to pay premiums. Opportunity costs and lost insurability are undeterminable and excluded by the rules. Therefore, the claimed damages remain impermissibly speculative.

### B. The Loss-of-Insurability Damages Are Contradicted by the Pleading and the Incorporated Documents

Plaintiffs allege lost "insurability on their mother," but also allege that she already had multiple policies and "may have been over-insured." Rieker Decl., **Exhibit "6",** ¶ 107(a). The incorporated insurance policy application reflects approximately $15.5 million in existing coverage in place on Ms. Oberlander. Rieker Decl., **Exhibit "4"**. Plaintiffs cannot plausibly claim loss of insurability that was already saturated. The value of foregone coverage is also speculative under the out-of-pocket rule. *See Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 668

N.E.2d 1370 (1996) (the loss of an alternative contractual bargain cannot serve as a basis for damages as they are too speculative).

### C. Reliance and Illegality Independently Undermine the Damages Theory

Reliance and illegality independently defeat the damages theory. As explained in Point II, post-issuance statements could not induce the purchase, the pre-issuance statement is a non-actionable future promise, and the Amended Complaint alleges that the reimbursement inducement violated Insurance Law § 2324. Damages based on those statements or an unlawful promise are not cognizable.

## POINT XI

## PLAINTIFFS' NEW THEORIES OF LIABILITY EXCEED THE SCOPE OF LEAVE AND SHOULD BE STRICKEN OR DISREGARDED

The Court, in no uncertain terms, permitted amendment only to cure identified pleading defects and omit non-viable claims. Judge Cogan specifically barred new causes of action. Plaintiffs nevertheless asserted theories absent from the original Verified Complaint. Each exceeds the scope of leave and independently fails.

### A. Alter-Ego / Piercing the Corporate Veil (Exhibit 6 ¶¶ 8–11)

The original complaint asserted no veil-piercing theory. The Amended Complaint now alleges that Frohlich Financial Group, LLC was a "shell," "mere instrumentality," and "alter ego.” Rieker Decl., **Exhibit “6”,** ¶ 10. This new theory exceeds the scope of leave and is conclusory: allegations of “complete domination” and abuse of the corporate form lack specific support, and such "bare legal conclusions with no factual specificity are insufficient to survive a motion to dismiss." *Pinkesz v. Massachusetts Mut. Life Ins. Co.*, 234 A.D.3d 886, 888, 227 N.Y.S.3d 127 (2nd Dept., 2025).

**B. Insurance Law § 2324 Anti-Rebating (Exhibit 6 ¶¶ 65–70)**

The statutory anti-rebating theory is new. Beyond exceeding the scope of leave, § 2324 provides no private right of action, and as shown herein, the alleged illegal inducement defeats ratification and reasonable reliance. *See New York State Med. Transporters Ass'n, Inc. v. Perales*, 77 N.Y.2d 126, 131-32, 566 N.E.2d 134 (1990); *Healy v. Kruger*, 247 A.D.3d 534, 535, 250 N.Y.S.3d 96 (1st Dept., 2026). It is also frivolous and barred by the in pari delicto theory because the Amended Complaint alleges that Plaintiffs accepted a check from non-party Lichter issued from his personal bank account. *See New Greenwich Litig. Tr., LLC v. Citco Fund Servs. (Eur.) B.V.*, 145 A.D.3d 16, 41 N.Y.S.3d 1 (1st Dept., 2016). No allegation says money passed between Plaintiffs and the Frohlich Defendants.

**C. "Fraud on the Insurer" — Scripted Underwriting and False Execution (Exhibit 6 ¶¶ 80–94)**

The allegations that the Frohlich Defendants "scripted" Ms. Oberlander's underwriting interview and falsely executed the application with a Boca Raton date-and-place legend concern alleged misrepresentations *to AIG*, not Plaintiffs. Plaintiffs lack standing to assert injury from those statements. *See Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 59 N.E.3d 485 (2016) (a plaintiff cannot claim reliance on a misrepresentation that defendant made to third parties). They also conflict with Plaintiffs' reliance theory and are new theories forbidden by the Court's order.

## CONCLUSION

For the foregoing reasons, the Frohlich Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety and with prejudice, strike or disregard the new theories asserted in violation of the order granting leave to amend, and grant such other and further relief as the Court deems just and proper.

Dated: September 21, 2026
New York, New York

**WINGET, SPADAFORA & SCHWARTZBERG, LLP**
*Attorneys for Defendants Marc Frohlich and Frohlich Financial Group, LLC*

By: */s/ Christina M. Rieker*
Christina M. Rieker, Esq.
45 Broadway, 32nd Floor
New York, New York 10006

**ATTORNEY CERTIFICATION**

I, Christina M. Rieker, an attorney duly admitted to practice law before the Courts of the State of New York, hereby certify that this Brief complies with the word count limit set forth in the Joint Local Rules of the United States District courts for the Southern and Eastern Districts of New York, Rule 7.1(c), because it contains 8,439 words, excluding the parts of the memorandum exempted by the same. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this brief.

Dated: September 21, 2026
New York, New York

*/s/ Christina M. Rieker*