# EXHIBIT 7

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SALAMAN OBERLANDER**, *personally and as Trustee of* **THE ADER I TRUST**, *Plaintiffs,* – *against* – **AMERICAN GENERAL LIFE INSURANCE COMPANY**; **FROHLICH FINANCIAL GROUP, LLC**; **MARC FROHLICH**; *Defendants.* | Case No. **1:20-cv-00567** **FIRST AMENDED COMPLAINT** |

## FIRST AMENDED COMPLAINT[1]

Deleted: ORIGINAL VERIFIED COMPLAINT

**COMES NOW** your Plaintiff **SALAMAN OBERLANDER**, personally; and **SALAMON OBERLANDER** *as Trustee of* **THE ADER I TRUST** by and through their counsel, **BARUCH S. GOTTESMAN, ESQ.**, and pursuant to Rule 15 of the Federal Rules of Civil Procedure and other relevant provisions of Federal practice with their First Amended Complaint against **AMERICAN GENERAL LIFE INSURANCE COMPANY; MARC FROHLICH; FROHLICH FINANCIAL GROUP, LLC;** and does respectfully allege as follows:

Deleted: s

Deleted: New

Deleted: s

Deleted: York Civil Practice Laws § 3011 and other

Deleted: New York law

Deleted: Original Verified Complaint

[1] A red-line version showing the changes from the Original Verified Complaint is annexed as Exhibit A.

**I. THE PARTIES AND**
**<u>THE DEFENDANTS' RELATIONSHIPS WITH ONE ANOTHER</u>**

1. The first Plaintiff, **SALAMAN OBERLANDER**, is a natural person resident in the County of Kings in the State of New York. On some of his government-issued documentation and on some of the paperwork relevant to this lawsuit his name is alternatively spelled as SALAM**O**N (with an "O" for the third vowel) OBERLANDER.

**Deleted:** here

2. The second Plaintiff is **THE ADER I TRUST**, a life insurance trust settled pursuant to Florida law on December 11, 2014. The Ader I Trust appears in this action through its Trustee **SALAMON OBERLANDER**.

3. In this First Amended Complaint, Plaintiff Salaman Oberlander and The Ader I Trust are sometimes referred to collectively as "**PLAINTIFFS**" where appropriate. Salaman Oberlander, personally, is sometimes referred to as "**OBERLANDER**", where appropriate.

**Deleted:** Original Verified Complaint

**Deleted:** S

4. Upon information and belief, the first Defendant **AMERICAN GENERAL LIFE INSURANCE COMPANY** is a life insurance company organized under Texas Law with a principal place of business at Houston in the County of Harris in the State of Texas.

5. In this First Amended Complaint, American General Life Insurance Company is sometimes referred to as the "**LIFE INSURANCE COMPANY**" or "**AIG**" (because upon information and belief, AIG is the name of the life insurance company's parent company and the name under which American General Life Insurance Company policies are marketed).

**Deleted:** Original Verified Complaint

6. Upon information and belief, the second Defendant **MARC FROHLICH** is a natural person who resides at Boca Raton, in the County of Palm Beach in the State of Florida. **MARC FROHLICH** is sometimes referred to in the paperwork relevant to this lawsuit as MAR**K** (with a "K") FROHLICH.

7. Upon information and belief, the third Defendant **FROHLICH FINANCIAL GROUP, LLC** is a unauthorized foreign limited liability company organized and existing under Florida law whose principal place of business is at Boca Raton in the County of Palm Beach in the State of Florida.

8. As described fully below, the Causes of Action in this First Amended Complaint are based on alleged acts or omissions by both Defendant Frohlich personally as well as Defendant Frohlich Financial Group, LLC.

**Deleted:** Original Verified Complaint

9. Plaintiff respectfully submits that Defendant Frohlich is personally liable for the acts and omissions by Frohlich Financial Group, LLC because those acts and omissions giving rise to the Causes of Action in this First Amended Complaint constituted a wrong and injustice which abused the privilege of doing business in the corporate form and therefore this Court, sitting in equity, should set aside the corporate form of Frohlich Financial Group, LLC. The Causes of Action section alleges specific acts and omissions by Frohlich personally which illustrate his abuse of the privilege of doing business in the corporate form.

**Deleted:** Original Verified Complaint

10. Additionally, upon information and belief, Defendant Frohlich was the sole member and exercised complete domination over Defendant Frohlich Financial Group, LLC that was a shell for his insurance brokerage business. Plaintiff therefore

alleges on information and belief that: (i.) with respect to the acts and omissions alleged in this First Amended Complaint, Frohlich Financial Group, LLC was merely an alter ego for Defendant Frohlich and his mere instrumentality; and (ii.) Defendant Frohlich's domination of Frohlich Financial Group, LLC was used to commit the Causes of Actions alleged in this First Amended Complaint, which include allegations of unfair and inequitable conduct (including fraud).

**Deleted:** Original Verified Complaint

**Deleted:** Original Verified Complaint

11. For the reasons described above in Paragraphs 8 – 10, Defendant Frohlich is personally liable for the acts and omissions of Defendant Frohlich Financial Group, LLC and therefore in this First Amended Complaint they are sometimes referred to collectively as the "**FROHLICH DEFENDANTS**" where appropriate.

**Deleted:** Original Verified Complaint

12. At all times relevant to this First Amended Complaint, the Frohlich Defendants acted both personally and through agents, including non-Party Menachem Lichter ("LICHTER"), a life insurance professional associated with 10/50 Group LLC of Suffern, New York.

13. Lichter is not a party to this action.

14. Lichter acted as the Frohlich Defendants' agent with respect to the solicitation and sale of the Policy at issue in this First Amended Complaint.

15. Among other roles that Lichter undertook on behalf of the Frochlich Defendnats:

(i.) Lichter personally solicited the Policy on behalf of the Frohlich Defendants and sold the Policy to the Plaintiffs;

(ii.) The Policy application was completed and executed by Lichter as writing agent; and

(iii.) in a since-dismissed lawsuit that Lichter filed in the Supreme Court of the State of New York, County of Kings (Index No. 501193/2022), Lichter Verified under oath that:

(a.) Defendant Frohlich was his "senior colleague" who "assisted Lichter in the transactions"

(b.) Lichter and Defendant Frohlich "agreed to split the subject policy commissions 50/50";

(c.) and the application for the Policy was placed under Defendant Frohlich's name because Lichter's then-employer did not permit him to sell the AIG products and that Defendant Frohlich agreed "to provide Lichter with half of the AIG policy commission."

16. Accordingly, the acts, statements, promises and omissions of Lichter described in this First Amended Complaint were undertaken as agent for, with the authority of, for the financial benefit of, and in concert with the Frohlich Defendants.

17. All of the relevant acts and omission by Lichter as described in this First Amended Complaint (and otherwise) are fully attributable to the Frohlich Defendants.

18. Upon information and belief, at all times relevant to the allegations in this First Amended Complaint and with respect to all relevant acts and omissions, AIG provided the Frohlich Defendants express authority to act as AIG's agents in their solicitation of the Policies and related activities.

**Deleted:** Original Verified Complaint

19. Upon information and belief, AIG had specific information about the Frohlich Defendants, their business practices, and their "pitch" of unaffordable policies to potential customers.

20. The basis for Plaintiffs' knowledge and belief described in the prior paragraph includes but is not limited to the Frohlich Defendants' reputation in the industry as leading promoters of unaffordable policies whose premiums would be financed by third parties, and AIG's reliance on the sale of such policies to meet their quarterly sale targets.

[Deleted:]

[Deleted: for]

21. Defendants are in sole custody of all documentation of their relationship with one another and the terms of their agency agreement. However, even without access to that documentation, the Plaintiffs are informed and this Honorable Court may take judicial notice that it is standard life insurance industry practice and required by law for insurance companies to expressly authorize insurance brokers to act as their agents in soliciting the sale of life insurance policies, and to set forth the terms of that relationship, including what agents may (and may not) represent to potential customers.

22. Upon information and belief, the express authority that AIG gave the Frohlich Defendants was granted voluntarily, knowingly and with substantial certainty that the Frohlich would solicit policies in the manner described fully in this First Amended Complaint.

[Deleted: Original Verified Complaint]

23. Therefore, upon information and belief, when engaging in their acts or omissions that gave rise to the Causes of Action in this First Amended Complaint, the Frohlich Defendants were at all relevant times acting as agents of AIG pursuant to AIG's express authority.

[Deleted: Original Verified Complaint]

24. Additionally, and/or in the alternative, upon information and belief, at all times relevant to the allegations in this First Amended Complaint and with respect to all relevant acts and omissions, AIG communicated to the Plaintiffs that the Frohlich Defendants were acting on AIG's behalf.

**Deleted:** Original Verified Complaint

25. These communications included, but are not limited to letters from AIG to Plaintiffs that represented the Frohlich Defendants as their agents, AIG's consent to the preparation of the life insurance policy application paperwork by the Frohlich Defendants, and other express representations from AIG to Plaintiffs that appeared to communicate that the Frohlich Defendants were acting as AIG's agents.

26. Plaintiffs interpretation of these communications to mean that Frohlich Defendants were agents of AIG was reasonable.

27. These communications by AIG to Plaintiffs in fact did give rise to the appearance that the Frohlich Defendants were AIG's agents.

28. The Plaintiffs reasonably relied on this apparent authority, and at all times that they dealt with the Frohlich Defendants, the Plaintiffs reasonably believed that they were AIG's agents.

29. Therefore, upon information and belief, when engaging in their acts or omissions that gave rise to the Causes of Action in this First Amended Complaint, the Frohlich Defendants were at all relevant times acting as apparent agents of AIG.

**Deleted:** Original Verified Complaint

30. The majority of documentation and facts that show the Defendants relationships with one another are solely in the custody of the Defendants. Therefore, to the extent that this Honorable Court were inclined to find that the Plaintiff failed to sufficiently establish Defendant Frohlich's personal liability for the acts and omissions by Defendant Frohlich Financial

Group, LLC (as described above); or failed to establish the Frohlich Defendants' role as an express or apparent agent of AIG (as described above in Paragraphs 18 through 29), the Plaintiffs will respectfully request a leave to at least take limited Discovery on the issue of the Defendants' relationships with one another and/or will respectfully seek leave (to the extent leave of Court is required) to amend this First Amended Complaint to further clarify the Defendants' relationships with one another so as to establish their co-liability.

**Deleted:** in Paragraphs 8 – 11

**Deleted:** 12 – 228–

**Deleted:** Original Verified Complaint

## II. JURISDICTION AND VENUE

31. This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the Plaintiffs and each of the Defendants and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

**Deleted:** This Court has jurisdiction pursuant to New York Civil Practice Laws and Rules § 301, et seq. and other relevant provisions of New York law because, among other things, Plaintiff Oberlander are domiciled within New York State, and all Defendants regularly transact business in the State of New York, derive substantial revenue from goods or services provided in the State of New York, and have otherwise submitted themselves to the jurisdiction of New York State courts.

32. Specifically: (i.) Plaintiff Oberlander is a citizen of the State of New York, domiciled in the County of Kings in the State of New York; (ii.) Plaintiff the Ader I Trust appears in this action through its Trustee, Salamon Oberlander, and for diversity purposes is a citizen of the State of New York, the State of citizenship of its Trustee; (iii.) Defendant American General Life Insurance Company is a corporation organized under the laws of the State of Texas with its principal place of business at Houston, Texas, and is therefore a citizen of the State of Texas; (iv.) Defendant Marc Frohlich is a citizen of the State of Florida, domiciled in the County of Palm Beach in the State of Florida; and (v.) Defendant Frohlich Financial Group, LLC is a limited liability company whose sole

**Deleted:** This Court also has jurisdiction pursuant to New York Civil Practice Laws and Rules § 301, et seq., and other relevant provisions of New York law because, among other things, the facts and circumstances giving rise to this Original Verified ComplaintFirst Amended Complaint concern acts and omissions done here in New York State, including but not limited to the solicitation of the Policy as described below in Section III.A. of this Original Verified ComplaintFirst Amended Complaint.

member, upon information and belief, is Defendant Frohlich, and it is therefore a citizen of the State of Florida.

33. The amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, because the Plaintiffs seek, among other things, the recovery of the premiums and related outlays, which totals more than one million dollars ($1,000,000.00) together with further compensatory and other damages.

34. The description of the bases for this Honorable Court's subject-matter jurisdiction above in Paragraphs 31 through 33 is without limitation to further facts and circumstances that provide for jurisdiction over this action in this Court.

**Deleted:** The description of the bases for this Honorable Court's jurisdiction above in Paragraphs 24 and 25 are without limitation to further facts and circumstances that further provide for jurisdiction over all the Defendants here in New York State courts.

35. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims in this First Amended Complaint occurred in this District. This includes and is not limited to the Defendants' solicitation of the Policy in Kings County, New York, as described below in Section III.A. of this First Amended Complaint.

**Deleted:** Venue is proper here in the County of Kings pursuant to New York Civil Practice Laws and Rules § 503 and other relevant provisions of New York law because, among other things, Plaintiff Oberlander resides in Kings County.

36. This Court has personal jurisdiction over each of the Defendants because, among other things, the Defendants transacted business within the State of New York and committed tortious acts within the State of New York out of which the claims in this First Amended Complaint arise.

**Deleted:** Venue is also proper here in the County of Kings pursuant to New York Civil Practice Law and Rules § 503 and other relevant provisions of New York law because, among other things, the facts and circumstances giving rise to this Original Verified ComplaintFirst Amended Complaint concern acts and omissions done here in the County of Kings, including but not limited to the solicitation of the Policy as described below in Section III.A. of this Original Verified ComplaintFirst Amended Complaint.

37. The descriptions of the bases for venue and for personal jurisdiction above in Paragraphs 35 and 36 are without limitation to further facts and circumstances that further provide for venue in this District and for personal jurisdiction over the Defendants.

**Deleted:** The description of the bases for this Honorable Court's jurisdiction above in Paragraphs 27 and 28 are without limitation to further facts and circumstances that further provide for Venue here in the County of Kings.

38. The parties are not subject to any arbitration with respect to the causes of action alleged in this First Amended Complaint, as explained fully below in Paragraphs 39 – 45.

39. By way of background: In or about January 2019, Plaintiff Oberlander and Defendant Frohlich discussed the possibility of entering into an agreement to arbitrate the dispute between them.

40. As it happened, while the parties made steps toward the execution of that arbitration agreement, the conditions precedent for the parties to conclude their putative arbitration agreement did not exist (including, but not limited to, the failure of a third party to execute the proposed arbitration agreement).

41. Further, even if all conditions precedent to the arbitration agreement entering into effect were present, the putative arbitration agreement never came into effect because it lacked any consideration and there were other elements missing that prevented the putative arbitration agreement from going into effect.

42. Further, even if the putative arbitration agreement did go into effect, the putative arbitration agreement was merely a non-binding "agreement to agree". Specifically, pursuant to the practices and the Rules and Procedures of the named arbitration forum, where there is no binding arbitration agreement, the parties are required to engage in an "invitation" procedure and also execute a standard arbitration agreement. The "invitation" procedure was initiated and no standard arbitration agreement was executed before the named arbitration forum, which goes to show that the putative arbitration agreement was merely an agreement to agree and was non-binding.

**Deleted:** <#>This case is properly assigned to the Kings County Commercial Division pursuant to Section 202.70(a) and (b) of the Uniform Civil Rules for the Supreme Court because the claims in this lawsuit include Breach of Contract and Breach of Fiduciary Duty and the amount in controversy exclusive of punitive damages, interests, costs, disbursements and counsel fees claimed is not less than one hundred and fifty thousand dollars ($150,000.00).

**Deleted:** <#>Original Verified Complaint

**Deleted:** <#>2 – 38

43. Further, even if the putative arbitration agreement did go into effect and was not merely an "agreement to agree", the parties' mutual failure to move forward with the arbitration pursuant to the Rules and Procedures of the named arbitration forum cancelled and voided the putative arbitration agreement.

44. Further, on or about mid-2019, Plaintiff Oberlander and Defendant Frohlich mutually authorized the submission of a formal request to the named arbitration forum explaining their intent to litigate in court, and not at arbitration. This submission served as a consent and a written agreement by and between Plaintiff Oberlander and Defendant Frohlich to not arbitrate the dispute between themselves (and Defendant Frohlich's representations in that submission, estops Defendant Frohlich from now arguing that a binding arbitration agreement exists between themselves and the Plaintiffs).

**Deleted:** –

45. Therefore, no binding arbitration agreement prevents this Honorable Court from presiding over the claims in this First Amended Complaint.

**Deleted:** Original Verified Complaint

46. Further, the parties are not subject to any settlement with respect to the causes of action alleged in this First Amended Complaint, as explained fully below in Paragraphs 47 – 52.

**Deleted:** Original Verified Complaint

**Deleted:** 0 – 46

47. By way of further background: In or about January 2019, Plaintiff Oberlander and Defendant Frohlich discussed potential cooperation if Defendant Frohlich pursued a claim against some third party.

48. While the parties made steps toward the execution of that cooperation agreement including an initial payment by Defendant Frohlich, the conditions precedent

for the parties to conclude their putative cooperation agreement did not exist (including, but not limited to, the failure of Defendant Frohlich to pursue the relevant claim).

Deleted: arbitration

49. Further, even if all conditions precedent to the cooperation agreement entering into effect were present, the putative cooperation agreement never came into effect because it lacked any consideration and there were other elements missing that prevented the putative cooperation agreement from going into effect.

Deleted: arbitration

50. Further, even if the putative cooperation agreement did go into effect, the putative cooperation agreement provided that Plaintiff Oberlander would cooperate in the future if a claim was pursued and therefore it was a non-binding "agreement to agree".

51. Further, even if the putative cooperation agreement did go into effect and was not merely an "agreement to agree", the Defendant Frohlich's failure to move forward with his claim against the third party rendered the putative cooperation agreement a non-starter.

52. Therefore, no binding cooperation agreement prevents this Honorable Court from presiding over the claims in this First Amended Complaint.

Deleted: <#>Further, on or about mid-2019, Plaintiff Oberlander and Defendant Frohlich mutually authorized the submission of a formal request to the forum where Defendant Frohlich was to pursue his claim against that third party explaining their intent to litigate in court – and not at arbitration. This submission served as a consent and a written agreement by and between Plaintiff Oberlander and Defendant Frohlich to not move forward with the putative arbitration agreement. (and Defendant Frohlich's representations in that submission, estops Defendant Frohlich from now arguing that a binding arbitration agreement exists between themselves and the Plaintiffs).¶

Deleted: <#>Original Verified Complaint

53. It should be further noted that even to the extent that this Honorable Court were to find that the putative arbitration agreement and putative cooperation agreement described above are binding and strips this Court of jurisdiction over the claims in this First Amended Complaint, this would only be relevant to the direct claims by Plaintiff Oberlander personally against Defendant Frohlich personally; and all other claims by Plaintiff Oberlander against the remaining Defendants; and all other claims by the Ader I Trust against all Defendants may move forward.

Deleted: Original Verified Complaint

Deleted: a

## III. FACTUAL ALLEGATIONS

Deleted: ------Page Break------ ¶

### A. Defendants' Solicitation of the Oberlander Policy

54. On or about July or August 2014, individuals acting on behalf of and with the express authority of the Frohlich Defendants, approached Plaintiff Oberlander and solicited the sale of a life insurance policy on the life of his mother, Ms. Pearl Oberlander

55. The individuals through whom the Frohlich Defendants solicited the Policy included Lichter.

56. Lichter acted on behalf of the Frohlich Defendants and Defendant Frohlich acting on behalf of himself and his company, personally solicited the Policy.

57. Plaintiff Oberlander was not a sophisticated life insurance professional and was inexperienced in making life insurance policy purchasing decisions. The Frohlich Defendants' solicitation of the policy at issue in this First Amended Complaint preyed on an unsophisticated individual who recently came into an inheritance and reasonably relied on the Frohlich Defendants' professional qualifications and advice to guide him on how to properly manage his funds.

Deleted: therefore in his

Deleted: Original Verified Complaint

58. The Plaintiffs reasonably relied on the express representations made by the Frohlich Defendants and their agents in their capacity as life insurance professionals to determine how to deal with their inheritance and to determine what insurance to purchase on his mother.

Deleted:

Deleted: in

Deleted: ing

Deleted: their

59. At all times relevant to the solicitation of the policy at issue in this First Amended Complaint, the Frohlich Defendants and their agents were under a fiduciary, contractual, and statutory duty to act and give advice for the benefit of Plaintiff Oberlander;

Deleted: Original Verified Complaint

and the Frohlich Defendants knew that Plaintiff Oberlander would reasonably rely on the Frohlich Defendants' professional life insurance advice.

60. While soliciting the sale of the policy at issue in this First Amended Complaint, the Frohlich Defendants advised Plaintiff Oberlander to purchase an entirely inappropriate product to insure the life of his mother. The solicited policy was an entirely inappropriate for Plaintiff Oberlander's life insurance needs and was completely unaffordable.

61. The Frohlich Defendants expressly promised Plaintiff Oberlander, that the Frohlich Defendants would secure a financing agreement with a third-party lender to fund the unaffordable premiums.

62. The Frohlich Defendants expressly promised that Plaintiff Oberlander would not be required to pay "a nickel out of their pocket" (or words to that effect) for the policy being solicited.

63. To induce Plaintiffs to purchase the life insurance policy at issue in this First Amended Complaint, the Frohlich Defendants expressly represented that Defendant Frohlich was a large life insurance producer and a professional expert in the business of obtaining "premium financing", which is the financing of premiums on unaffordable life insurance policies.

64. To induce Plaintiffs to purchase the life insurance policy at issue in this First Amended Complaint, Frohlich Defendants' made representations to the effect of "Frohlich is the largest premium-financed life insurance producer in the Northeast" and

**Deleted:** Original Verified Complaint

**Deleted:** e

**Deleted:** in

**Deleted:** g

**Deleted:** Original Verified Complaint

**Deleted:** –

**Deleted:** Original Verified Complaint

that the Frohlich Defendants would obtain premium financing for Plaintiffs to fund the premiums on the life insurance policy at issue in this case.

65. To induce Plaintiffs to purchase the life insurance policy at issue in this First Amended Complaint, the Frohlich Defendants represented that they would refund some of the commissions that the Frohlich Defendants would receive from the first-year premiums to be paid on the solicited life insurance policy.

**Deleted:** Original Verified Complaint

66. Specifically, the Frohlich Defendants, through Lichter, promised Plaintiff Oberlander that approximately ten percent (10%) of the commissions earned on the Policy would be paid as a kickback to Plaintiff Oberlander.

67. In or about February 2016, in partial performance of that promise, Lichter paid Plaintiff Oberlander one hundred thousand dollars ($100,000.00) by check drawn on Lichter's TD Bank account, which was deposited into Plaintiff Oberlander's account.

68. Lichter has admitted the fact of that payment under oath: in the since-dismissed verified complaint that Lichter filed in the Supreme Court of the State of New York, County of Kings (Index No. 501193/2022), Lichter alleged that in February 2016 he wrote Oberlander a check from his TD Bank account in the amount of $100,000.00 (while mischaracterizing the payment as a loan).

69. Plaintiffs are now informed and believe that the payment or promise of a rebate of life insurance commissions to induce the purchase of a policy is prohibited by New York Insurance Law § 2324. Plaintiff Oberlander, who is not an insurance professional, did not know that the promised rebate was improper.

70. The Frohlich Defendants, as licensed insurance professionals, knew or should have known that it was, and their use of an unlawful inducement is further evidence of the deceptive character of their solicitation of the Policy.

71. The Frohlich Defendants recommended to Plaintiff Oberlander and professionally advised him to settle a Life Insurance Trust pursuant to Florida law and to have that Trust apply for a fifteen million dollar ($15,000,000.00) life insurance policy on the life of his mother.

72. These representations, promises, recommendations and other acts of solicitation by the Frohlich Defendants occurred principally in the County of Kings in the State of New York, and otherwise within the State of New York, as described here in this First Amended Complaint.

**Deleted:** physically occurred here in the County of Kings in the State of New York

73. These acts (and omissions to the extent that the Frohlich Defendants failed to provide professionally appropriate advice) took place both through telephone calls to Plaintiff Oberlander when Plaintiff Oberlander was physically in Brooklyn and through in-person meetings with Plaintiff Oberlander that physically occurred in Brooklyn.

**Deleted:** –

**Deleted:** e –

74. Without limitation, the occasions on which the Frohlich Defendants acting through Lichter and Frohlich, personally, solicited the Policy and made the false representations and promises described in this First Amended Complaint that give rise to the claims include the following:

a. on October 21, 2014, at approximately 11:39 A.M. E.S.T., at the offices of Lightstone Management, 4424 18th Avenue, Brooklyn, New York, Lichter met with Plaintiff Oberlander in the presence of one Barry Farkas. Farkas and Lichter vouched that the Frohlich Defendants could deliver premium-financed life insurance without the

purchaser "investing a dime" (or words to that effect). Upon information and belief, the Frohlich Defendants had paid Farkas approximately fifteen thousand dollars ($15,000.00) to pose as an independent person vouching for the Frohlich Defendants' premium-financing pitch, and litigation concerning that payment was later filed in the Supreme Court of the State of New York, County of Rockland;

b. on or about November 3, 2014, Lichter met with Plaintiff Oberlander and continued the solicitation of the Policy including through false representations about the costs of the policy and the benefits of purchasing the policy;

c. on or about November 9, 2014, Lichter met with Plaintiff Oberlander in advance of the telephonic underwriting interview of Ms. Pearl Oberlander. He did so to script the answers to the policy application, and during that meeting made false representations and induced Plaintiffs to make inappropriate purchase decisions, as described below in Section III.B.;

d. on November 24, 2014, at approximately 1:00 P.M. E.S.T., Lichter met with Plaintiff Oberlander in Williamsburg, Brooklyn during which he made false representations to the Plaintiffs about the wisdom and value of the policy, and how much it would cost the Plaintiffs to carry the policy;

e. on November 27, 2014, at approximately 4:30 p.m., Lichter met with Plaintiff Oberlander at Plaintiff Oberlander's home in Boro Park, Brooklyn during which he made false representations to the Plaintiffs about the wisdom and value of the policy, and how much it would cost the Plaintiffs to carry the policy;

f. on December 2, 2014, Lichter met with Plaintiff Oberlander at 500 Fifth Avenue, 15th Floor, Suite 1520, New York, New York, during which he made false representations to the Plaintiffs about the wisdom and value of the policy, and how much it would cost the Plaintiffs to carry the policy;

g. on December 4, 2014, at approximately 1:00 p.m., Lichter met with Plaintiff Oberlander at 250 West 55th Street, 14th Floor, New York, New York, during which he made false representations to the Plaintiffs about the wisdom and value of the policy, and how much it would cost the Plaintiffs to carry the policy;

h. on December 9, 2014, at approximately 7:21 p.m., Lichter met with Plaintiff Oberlander at Plaintiff Oberlander's home at 1430 47th Street, Brooklyn, New York, and specifically promised that the

Plaintiffs would "get reimbursed on all [their] outlays" (or words to that effect), with Defendant Frohlich personally participating in the meeting by telephone or video;

i. on January 5, 2015, Lichter met with Plaintiff Oberlander at the Core Club, 66 East 55th Street, New York, New York, together with one Eli Gross, who — upon information and belief, at the Frohlich Defendants' request — vigorously vowed that the financing would be obtained and that the Plaintiffs would not "have to pay a dime" (or words to that effect);

j. on March 27, 2015, at approximately 3:30 p.m. (a Friday afternoon shortly before sundown, which Plaintiff Oberlander specifically recalls) Defendant Frohlich personally telephoned Plaintiff Oberlander and promised that the Plaintiffs would be reimbursed for their outlays and would "not pay a nickle" (or words to that effect); and

k. on May 17, 2015, at the Meor Yitzchok annual dinner at Ateres Charna Hall, 790 Main Street, Spring Valley, New York, Lichter again assured Plaintiff Oberlander that he "shouldn't worry" and that the Plaintiffs "will get reimbursed" (or words to that effect); upon information and belief, Defendant Frohlich, who was present personally or participated by telephone, repeated his slogan that the Plaintiffs would not "invest a nickel."

75. At most of these meetings, Lichter appeared in person while Defendant Frohlich participated by telephone or video. Defendant Frohlich also met with Plaintiff Oberlander in person, both in Brooklyn, New York and in Miami, Florida.

76. Moreover, although the Frohlich Defendants promised that the premium financing they would obtain would not cost the Plaintiffs "a nickel," upon information and belief the "financing" actually contemplated by the Frohlich Defendants would have required, among other things, the collateralization of Ms. Pearl Oberlander's residences in Brooklyn, New York and in Florida. This was a material fact that the Frohlich Defendants did not disclose when soliciting the Policy.

77. The Frohlich Defendants and their agents facilitated the preparation and execution of the Ader I Trust which was presented by the Frohlich Defendants' agents to Plaintiff Oberlander in Brooklyn for execution.

78. The Trust was physically signed here in the County of Kings in the State of New York.

79. A true and accurate copy of the Trust is annexed and made a part of this First Amended Complaint as **Exhibit B**. Pursuant to the practices of this Court, personally identifiable information has been redacted from Exhibit A, unredacted versions will be disclosed to the Defendants upon the entry of an appropriate protection order.

Deleted: Original Verified Complaint

Deleted: A

**B. The Frohlich Defendants' Script the Underwriting Process**

80. As part of the underwriting of the Policy, the AIG required Ms. Pearl Oberlander, the proposed insured, to complete a telephonic interview with Hooper Holmes, a vendor engaged in connection with the underwriting of American General policies.

81. On or about October 28, 2014, at approximately 8:15 P.M. E.S.T., Lichter sent an e-mail from his e-mail address at 1050group.com and signing as "Managing Partner" of 10/50 Group LLC with a subject line of "Mother Interview".

82. That e-mail scripted in advance the answers that the proposed insured was to give in her underwriting interview. It instructed the Plaintiffs that she should call Hooper Holmes, identify herself as a client who wants to make a policy with American General, and provide the scripted responses.

83. Among other things, Lichter's October 28, 2014 e-mail scripted:

(i.) that the proposed insured state that her total net worth "is being valued at" $119,880,990.00;

(ii.) (ii.) that her most recent doctor visit was in September 2014, "where you got a clean bill of health with no medical issues whatsoever";

(iii.) (iii.) that she state that she did "not currently intend to leave the country";

(iv.) (iv.) that the insurance being applied for was "NOT to replace any insurance that is currently in force" but was "only to buy additional coverage for estate planning"; and

(v.) detailed figures concerning her purported assets, business interests, cash position, and existing policies — all supplied by Lichter, and not by the proposed insured.

84. The Frohlich Defendants and their agents — not the Plaintiffs and not the proposed insured — were thus the source and the authors of the financial and medical information submitted to the LIFE INSURANCE COMPANY in connection with the application for and underwriting of the Policy.

85. Upon information and belief, the Frohlich Defendants scripted the underwriting interview so that the Policy — an unaffordable policy that should never have been solicited or issued — would pass underwriting and would generate the Frohlich Defendants' outsized commissions.

**C. The Frohlich Defendants' False Execution of the Application Paperwork**

86. In addition to their false representations and promises made to the Plaintiffs, the Frohlich Defendants engaged in deceptive practices in the preparation and execution of the application paperwork for the Policy

87. The Frohlich Defendants, through Lichter, presented application and related paperwork to Plaintiff Oberlander in Brooklyn, New York in blank or substantially incomplete form and directed him to sign.

88. Upon information and belief, Defendant Frohlich thereafter completed the paperwork himself in Boca Raton, Florida, filling in material terms, dates, and legends after the signatures had been given.

89. The signature page of the application for the Policy states that the "Owner" signed at "Boca Raton, FL," with the title "Trustee," on December 17, 2014, and bears Defendant Frohlich's signature and his certification, as writing agent (Florida State License # P177222), that "the information supplied has been truthfully and accurately recorded on the Part A application."

90. That date-and-place legend is false. Plaintiff Oberlander, the Trustee of the Ader I Trust (the owner of the Policy), was in New York; he did not execute any application document at Boca Raton, Florida on December 17, 2014.

91. Upon information and belief, Ms. Pearl Oberlander, the proposed insured, likewise did not execute the application paperwork at Boca Raton, Florida on December 17, 2014. Ms. Oberlander has never in her life been to Boca Raton, Florida.

92. Upon information and belief, to the extent that the application paperwork bears what purports to be Ms. Oberlander's signature affixed at Boca Raton,

Florida on December 17, 2014, the paperwork was signed in blank in New York and was thereafter completed the date-and-place information by or at the direction of the Frohlich Defendants, without Ms. Oberlander's presence.

93. Ms. Oberlander's travel records corroborate the falsity of this information. American Airlines records reflect a ticket issued on November 26, 2014 for Ms. Oberlander's travel from LaGuardia Airport, New York to Miami, Florida on December 20, 2014. Plaintiff Oberlander recalls that his mother remained in New York through December 2014, *including on December 17, 2014,* the date that the papers were supposedly signed in Florida.

94. Upon information and belief, Defendant Frohlich's certification as writing agent that the application information had been "truthfully and accurately recorded" was false when made, and the Frohlich Defendants' preparation, completion, execution, and false legending of the application paperwork were deceptive acts in furtherance of the scheme alleged in this First Amended Complaint and are further evidence of the Frohlich Defendants' intent to deceive the Plaintiffs and potentially others.

Formatted: Indent: Before: 1", No bullets or numbering

**D. Defendants Issue the Policy**

Deleted: B

Deleted: ' Issuance of

95. On or about March 5, 2015, the Frohlich Defendants coordinated, cooperated and collaborated with AIG, to issue a life insurance policy on Plaintiff Oberlander's mother.

Deleted: Frohlich'

96. A true and accurate copy of the policy is annexed and made a part of this First Amended Complaint as **Exhibit C**. Pursuant to the practices of this Court,

Deleted: Original Verified Complaint

Deleted: B

personally identifiable information has been redacted from Exhibit B, unredacted versions will be disclosed to the Defendants upon the entry of an appropriate protection order.

97. The policy required quarterly premiums of not less than two hundred and fifty thousand dollars ($250,000.00), which the Plaintiffs could not afford.

98. Indeed, Lichter has admitted under oath, in his since-dismissed complaint filed in State Court against Oberlander, that each of the two policies procured on Ms. Oberlander's life carried an annual premium of approximately one million dollars ($1,000,000.00), and that the Policy at issue in this First Amended Complaint eventually collapsed.

99. The Frohlich Defendants never obtained financing for the premiums on the policy, and the Plaintiffs borrowed hundreds of thousands of dollars to continue paying premiums on the policy for a number of quarters.

100. The Plaintiffs borrowed hundreds of thousands of dollars in reasonable reliance on the Frohlich Defendants' representations, promises and recommendations – all of which were lost when the policy lapsed in 2016.

101. When the Policy lapsed, Plaintiffs lost all the premiums that they paid, and directly suffered significant financial and other damage – including but not limited to the loss of insurability on their mother, the liability for the loans taken to pay the premiums, the opportunity costs of making the premiums, and other damages to be proved at trial.

**Deleted:** Upon

**Deleted:** the lapsing of the

**Formatted:** Indent: Before: 0", First line: 1", Numbered + Level: 1 + Numbering Style: 1, 2, 3, … + Start at: 1 + Alignment: Left + Aligned at: 1" + Tab after: 1.5" + Indent at: 1.5"

**Deleted:** ¶

**Deleted:** ¶

*[Remainder of Page Intentionally Left Blank]*

**FIRST CLAIM FOR RELIEF**
**Fraud and Misrepresentation**
**(Plaintiffs against all Defendants)**

Formatted: No underline

Formatted: No underline

102. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 101 of this First Amended Complaint.

Deleted: 68

Deleted: Original Verified Complaint

103. The Defendants made statements to the Plaintiffs. These statements included but are not limited to:

a. Words to the effect that "Frohlich is the largest premium-financed life insurance producer in the Northeast";

b. Frohlich would and is permitted to refund some of the commissions that the Frohlich Defendants would receive from the first year premiums to be paid on the solicited life insurance policy;

c. that it was in the Plaintiffs' interest to settle a life insurance trust pursuant to Florida law;

d. that it was in the Plaintiffs' interest that the Trust apply for and purchase an unaffordable life insurance policy on the life of Plaintiff Oberlander's mother;

e. that the Frohlich Defendants would secure a financing agreement with a third-party lender to fund the policy's unaffordable premiums;

f. words to the effect that the Plaintiffs "would not be required to pay a 'nickel out of their pocket'";

Deleted: and

g. that the Plaintiffs would be reimbursed for all of their outlays in connection with the Policy. This promise was made, among other occasions, on December 9, 2014 at Plaintiff Oberlander's home in Brooklyn (by Lichter, with Defendant Frohlich participating by telephone or video); on March 27, 2015, by telephone call at approximately 3:30 p.m.; and on May 17, 2015, at the Meor Yitzchok annual dinner in Spring Valley, New York;

h. that Defendant Frohlich, as writing agent, had truthfully and accurately recorded the application information, and that the application paperwork had been executed at the times and places stated on its face, as described above in Section III.C.; *and*

Formatted: Font: Italic, Complex Script Font: Italic

Formatted: Indent: Before: 2", No bullets or numbering

i. further representations to the Plaintiffs.

104. These representations were made through telephone calls to Plaintiff Oberlander when he was physically at Brooklyn, and during in-person meetings with Plaintiff Oberlander at Brooklyn. The dates, times, places, speakers, and content of these representations are set forth with particularity above in Section III of this First Amended Complaint, including in Paragraph 74 above.

105. These statements were not true.

106. These statements were made with the intention to deceive the Plaintiffs.

107. The basis for the Plaintiffs' allegation that the statements were made with the intention to deceive the Plaintiffs include but are not limited the following:

a. Plaintiff Oberlander advised the Frohlich Defendants that there were already multiple policies in force on Ms. Pearl Oberland that, if anything, she may have been over-insured;

b. Plaintiff Oberlander advised the Frohlich Defendants that the Plaintiffs were having cash-flow difficulties with meeting the financial obligations for the premium payments on existing policies;

c. Plaintiff Oberlander advised the Frohlich Defendants that the Plaintiffs were in no a position to afford additional premium payments; and

d. The Frohlich Defendants were otherwise aware that Plaintiff Oberlander could not (and should not) have been solicited to purchase the Policy;

e. The Frohlich Defendants, through Lichter, scripted the proposed insured's underwriting interview, as described above in Section III.B., demonstrating their control over and intent to manipulate the information on which the Policy was underwritten and issued;

f. Upon information and belief, the Frohlich Defendants paid Barry Farkas approximately fifteen thousand dollars ($15,000.00) to pose as an independent person vouching that the Frohlich Defendants could deliver premium-financed life insurance without the purchaser "investing a dime";

g. The Frohlich Defendants promised and partially paid an unlawful rebate of commissions to induce the purchase of the Policy, as described above in Section III.A.; *and*

h. The Frohlich Defendants falsely signed, dated and certified the application paperwork, as described above in Section III.C.

108. On the basis of these and other facts and circumstances, it is plain that the Defendants' false statements were specifically crafted to deceive the Plaintiffs.

109. The Plaintiffs reasonably relied on the Frohlich Defendants' representations in their purchase of the Policy.

110. As a direct and proximate consequence of the Frohlich Defendants' acts and omissions, the Plaintiffs directly suffered financial injury as a result of their reasonable reliance on the Frohlich Defendants in buying the Policy in an amount to be determined at trial.

**Deleted:** .
**Formatted:** No bullets or numbering
**Formatted:** No bullets or numbering
**Formatted:** No bullets or numbering
**Formatted:** Font: Italic, Complex Script Font: Italic
**Formatted:** No bullets or numbering

111. AIG bears co-liability for the actions of its co-venturers (the Frohlich Defendants) because the Frohlich Defendants were the agents and/or apparent agents of AIG, as described fully above.

**Deleted:** ¶

## SECOND CLAIM FOR RELIEF

**Breach of Contract**
**(Plaintiffs against all Defendants)**

112. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 111 of this First Amended Complaint.

**Deleted:** 78

**Deleted:** Original Verified Complaint

113. Rule 8(d) of the Federal Rules of Civil Procedure provides that “[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically,” that “[a] party may state as many separate claims or defenses as it has, regardless of consistency,” and that “[p]leadings must be construed so as to do justice.” Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

**Deleted:** New York Civil Practice Laws and Rules § 3014 provides that “Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically.”

114. The Federal Rules of Civil Procedure further provide that a pleading may include “a demand for the relief sought, which may include relief in the alternative or different types of relief.” Fed. R. Civ. P. 8(a)(3).

**Deleted:** The CPLR further provides that “[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded”. CPLR § 3017[a].

115. Therefore without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief under a theory that Defendants breached their contract with the Plaintiffs as described below:

116. The Frohlich Defendants entered into a contract to serve as the life insurance agents to the Plaintiffs. This contract was offered and accepted through oral

conversations between the Plaintiffs and the Frohlich Defendants and through e-mail and other written communication.

117. The Plaintiffs' contract with the Frohlich Defendants provided for the Frohlich Defendants to provide life insurance advisory services, premium financing services, and imposed other obligations; and the Plaintiffs provided consideration in the nature of their purchase of the life insurance policy.

118. The Plaintiffs complied with their contractual obligations, while the Frohlich Defendants breached their contractual obligations by selling the Policy, failing to obtain third-party financing for the premiums, and otherwise failing to live up to their contractual duties.

119. As a direct and proximate consequence of the Frohlich Defendants' acts and omissions, the Plaintiffs directly suffered financial injury in an amount to be determined at trial.

120. AIG bears co-liability for the actions of its co-venturers (the Frohlich Defendants) because the Frohlich Defendants were the agents and/or apparent agents of AIG, as described fully above.

Deleted: in Paragraphs 12 – 22 in this Original Verified Complaint

Deleted: ¶

**<u>THIRD CLAIM FOR RELIEF</u>**
**Breach of Implied Covenant of Good Faith and Fair Dealing**
**(Plaintiffs against all Defendants)**

121. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 111 of this First Amended Complaint.

Deleted: 87

Deleted: Original Verified Complaint

122. Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

**Deleted:** New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically."

123. The Federal Rules of Civil Procedure further provide that a pleading may include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

**Deleted:** The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded". CPLR § 3017[a].

124. Therefore, without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief under a theory that Defendants breached their covenant of good faith and fair dealing with the Plaintiffs as described below:

125. The Frohlich Defendants entered into a contract to serve as the life insurance agents to the Plaintiffs. This contract was offered and accepted through oral conversations between the Plaintiffs and the Frohlich Defendants and through e-mail and other written communication.

126. The Plaintiffs' contract with the Frohlich Defendants included – as does every contract under New York law – a covenant of good faith and fair dealing. With respect to the contract at issue here, this covenant provided that Frohlich Defendants were to provide life insurance advisory services, premium financing services, and imposed other professional obligations.

127. The Plaintiffs provided consideration for the underlying contract in the nature of their purchase of the life insurance policy.

128. The Plaintiffs complied with their contractual obligations.

129. The Frohlich Defendants breached their covenant of good faith and fair dealing by selling the Policy, failing to obtain third-party financing for the premiums, and otherwise failing to live up to their contractual duties.

130. As a direct and proximate consequence of the Frohlich Defendants' acts and omissions, the Plaintiffs directly suffered financial injury in an amount to be determined at trial.

131. AIG bears co-liability for the actions of its co-venturers (the Frohlich Defendants) because the Frohlich Defendants were the agents and/or apparent agents of AIG, as described fully above.

**Deleted:** in Paragraphs 12 – 22 in this Original Verified Complaint

**FOURTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty**
**(Plaintiffs against All Defendants)**

132. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 131 of this First Amended Complaint.

**Deleted:** 97

**Deleted:** Original Verified Complaint

133. Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

**Deleted:** New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically."

134. The Federal Rules of Civil Procedure further provide that a pleading may include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

**Deleted:** The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded". CPLR § 3017[a].

135. Therefore, without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief under a theory that Defendants breached their fiduciary duties to the Plaintiffs as described below:

136. The Frohlich Defendants acted as a fiduciary to the Plaintiffs and breached that fiduciary duty by selling the Policy, failing to obtain third-party financing for the premiums as they had committed, and otherwise providing improper professional advice in violation of their fiduciary duty; and otherwise failing to proper professional advice in violation of their fiduciary duty.

137. These duties were separate and apart from Frohlich Defendants' contractual duties, therefore whether or whether not this Honorable Court were to find that there was a binding contract, the relationship between the Plaintiffs and the Frohlich Defendants' also had a fiduciary relationship which covered matters parallel to and in addition to the contractual relationship between the parties. In other words, the scope of the breach of fiduciary duty alleged here also includes claims that are broader and distinct from the claim for breach of contract.

138. As a direct and proximate consequence of the Frohlich Defendants' acts and omissions, the Plaintiffs directly suffered financial injury in an amount to be determined at trial.

139. AIG bears co-liability for the actions of its co-venturers (the Frohlich Defendants) because the Frohlich Defendants were the agents and/or apparent agents of AIG, as described fully above.

**Deleted:** in Paragraphs 12 – 22 in this Original Verified Complaint

**<u>FIFTH CLAIM FOR RELIEF</u>**
**<u>Negligence</u>**
**<u>(Plaintiffs against All Defendants)</u>**

140. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 139 of this First Amended Complaint.

**Deleted:** 106

**Deleted:** Original Verified Complaint

141. Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

**Deleted:** New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically."

142. The Federal Rules of Civil Procedure further provide that a pleading may include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

**Deleted:** The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded". CPLR § 3017[a].

143. Therefore without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief under a theory that Defendants acted negligent in their dealing with the Plaintiffs as described below:

144. The Frohlich Defendants owed a duty to the Plaintiffs and breached that duty by selling the Policy, failing to obtain third-party financing for the premiums, and

otherwise providing improper professional advice in violation of their fiduciary duty; and failing to proper professional advice in a negligent manner.

145. These duties were separate and apart from Frohlich Defendants' contractual duties and fiduciary duties; therefore whether or whether not this Honorable Court were to find that there was a binding contract or fiduciary relationship, there were additional duties arising from general rules of negligence that covered matters parallel to and in addition to the contractual and fiduciary relationship between the parties. In other words, the scope of the negligence alleged here also includes claims that are broader and distinct from the claim for breach of contract and breach of fiduciary duty.

146. In other words, the scope of the negligence alleged here includes claims that are broader and distinct from Defendants' breach of contract and breach of fiduciary duty.

147. AIG bears co-liability for the actions of its co-venturers (the Frohlich Defendants) because the Frohlich Defendants were the agents and/or apparent agents of AIG, as described fully above.

**Deleted:** in Paragraphs 12 – 22 in this Original Verified Complaint

**SIXTH CLAIM FOR RELIEF**
**Violation of General Business Law § 349**
**(Plaintiffs against All Defendants)**

148. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 147 of this First Amended Complaint.

**Deleted:** 14

**Deleted:** Original Verified Complaint

149. Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or

**Deleted:** New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically."

hypothetically," that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

150. The Federal Rules of Civil Procedure further provide that a pleading may include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

**Deleted:** The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded". CPLR § 3017[a].

151. Therefore, without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief under a theory that Defendants violated General Business Law § 349; specifically:

152. New York General Business Law § 349 prohibits the use of deceptive acts or practices in the conduct of any business, including life insurance, in the State of New York.

153. The Frohlich Defendants' representations to the Plaintiffs to solicit the policy were false and otherwise qualified as deceptive acts and practices.

154. The aforementioned conduct was likely to mislead and in fact has misled reasonable consumers acting reasonably under the circumstances.

155. The Frohlich Defendants' conduct was consumer-oriented and of a recurring nature.

156. The Frohlich Defendants violation of § 349 occurred within the State of New York because the Policy was purchased in New York, the Policy was marketed in New York, and the Policy was administered in New York.

157. As a direct and proximate cause of The Frohlich Defendants' violation of § 349, the Plaintiffs has been damaged as alleged in this Complaint in an amount to be proven at trial.

158. AIG bears co-liability for the actions of its co-venturers (the Frohlich Defendants) because the Frohlich Defendants were the agents and/or apparent agents of AIG, as described fully above.

Deleted: in Paragraphs 12 – 22 in this Original Verified Complaint

159. Plaintiffs therefore seeks monetary, declaratory and injunctive relief as well as costs and reasonable attorneys' fees.

**SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Plaintiffs against All Defendants)**

Formatted: No underline

Formatted: No underline

160. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 150 of this First Amended Complaint.

Deleted: 26

Deleted: Verifi

161. Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

Deleted: New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically."

162. The Federal Rules of Civil Procedure further provide that a pleading may include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

Deleted: The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded". CPLR § 3017[a].

163. Therefore, without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief under a theory of unjust enrichment.

164. Defendants' tortious conduct as described in this First Amended Complaint, allowed Defendants to realize substantial revenues including the commissions paid to the Frohlich Defendants and the premiums received directly by AIG.

165. Under New York common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's payment of premiums.

166. Therefore, Plaintiffs seeks disgorgement of all revenue and profits resulting from the premium payments and the establishment of a constructive trust from which Plaintiff may seek restitution.

**EIGHTH CLAIM FOR RELIEF**
**Declaratory Judgment**
**(Plaintiffs against All Defendants)**

167. The Plaintiff repeats and incorporates by reference, as though fully set forth herein, Paragraphs 1 through 166 of this First Amended Complaint.

168. Rule 8(d) of the Federal Rules of Civil Procedure provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," that "[a] party may state as many separate claims or defenses as it has, regardless of consistency," and that "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(d)(2), 8(d)(3), 8(e).

**Deleted:** Verifi

**Formatted:** No underline

**Formatted:** No underline

**Deleted:** 133

**Deleted:** Verifi

**Deleted:** New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency. Causes of action or defenses may be stated alternatively or hypothetically."…

169. The Federal Rules of Civil Procedure further provide that a pleading may include "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

**Deleted:** The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled. Relief in the alternative or of several different types may be demanded". CPLR § 3017[a].

170. Therefore, without prejudice to the other Causes of Action, the Plaintiff argues in the alternative and hypothetically that they are entitled to relief in the nature of a declaratory judgment separate from the other causes of action.

171. There exists a real and actual dispute and controversy between the Plaintiffs and the Defendants concerning whether the policy as a whole should be rescinded retroactively and all premium payments repaid to the Plaintiffs.

172. The grounds for such rescission and repayment include, without limitation, that the Policy was procured through the Frohlich Defendants' fraudulent scheme described above — including the scripted underwriting interview described in Section III.B. and the falsely-executed and falsely-legended application paperwork described in Section III.C. — such that the Policy was void or voidable from its inception and all premiums paid on it should be returned to the Plaintiffs.

173. Accordingly, the Plaintiff seeks a declaration that Defendants are obligated to repay all premium payments.

174. Such a declaration will help prevent and limit further controversies under the policies by ameliorating the damage caused to the Plaintiffs by the issuance of the policy by fraud and other wrong bases.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully prays for judgment as follows:

A. Awarding Plaintiffs compensatory and other damages pursuant to their First, Second, Third, Fourth, Fifth and Sixth Claims for Relief;

B. Awarding Plaintiffs the equitable relief demanded in their Seventh and Eighth Claims for Relief;

**Deleted:** Fifth and Six

C. Awarding the Plaintiffs pre-judgment and post-judgment interest, as well as costs; and

D. Awarding the Plaintiffs such other relief as this Court may deem just and proper under the circumstances; and

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues so triable.

**Dated:** August 21, 2026

**Deleted:** January 17, 2019

RESPECTFULLY SUBMITTED,

Baruch S. Gottesman, Esq.
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
Phone: (212) 401-6910
e-mail: bg@gottesmanlegal.com

**Formatted:** Small caps
**Deleted:** 185-12 Union Turnpike
**Deleted:** Fresh Meadows
**Deleted:** 1366