**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SALAMAN OBERLANDER, and SALAMON OBERLANDER, as Trustee of THE ADER I TRUST dated December 11, 2014,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, MARC FROHLICH, and FROHLICH FINANCIAL GROUP, LLC,<br><br>Defendants. | Civil Action No. 1:20-cv-00567 |

# DEFENDANT AMERICAN GENERAL LIFE INSURANCE COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED VERIFIED COMPLAINT


Andrew P. Fishkin
Zachary W. Silverman
FISHKIN LUCKS LLP
233 Broadway, Suite 2005
New York, NY 10279
646.755.9200
afishkin@fishkinlucks.com
zsilverman@fishkinlucks.com

*Attorneys for Defendant American General Life Insurance Company*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

FACTS ..... 2

ARGUMENT ..... 5

I. Plaintiffs' Attempt to Hold AGLIC Vicariously Liable for an Alleged Scheme to Defraud AGLIC Fails as a Matter of Law ..... 6

II. Plaintiffs Fail to State a Claim Against the Frohlich Defendants ..... 9

A. Plaintiffs' Fraudulent Misrepresentation Claim Fails, Because the Amended Complaint Does Not Identify an Actionable Misrepresentation, and Plaintiffs' Allegations Establish the Absence of Reasonable Reliance ..... 9

B. Plaintiffs' Contract and Implied Covenant Claims Fail, Because Plaintiffs Do Not Plausibly Allege That Any Specific Term of a Valid Written Contract Was Breached ..... 11

C. Plaintiffs' Fiduciary Duty Claim Fails Because It Is Untimely and Because No Such Duty Existed ..... 12

D. Plaintiffs' Negligence Claim Is Time-Barred and Otherwise Fails ..... 14

E. Plaintiffs' New York General Business Law § 349 Claim is Time-Barred and Otherwise Fails ..... 14

F. Plaintiffs' Unjust Enrichment Claim is Untimely, and the Amended Complaint Fails to Plausibly Plead It ..... 15

G. There Is No Basis for a Declaratory Judgment ..... 16

CONCLUSION ..... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

Brahver v. Fishman, No. 09616/07,
2008 WL 2614847 (Sup. Ct. N.Y. Cnty. June 19, 2008) .................... 9, 10

Cathy Daniels, Ltd. v. Weingast,
91 A.D.3d 431 (1st Dep't 2012) .................... 12

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002) .................... 2

City of Almaty v. Ablyazov,
No. 15-CV-5345, 2018 WL 1583293 (S.D.N.Y. Mar. 27, 2018) .................... 16

Courtois v. TOMS Cap. Mgmt. LP,
210 A.D.3d 522 (1st Dep't 2022) .................... 8

Dooner v. Keefe, Bruyette & Woods, Inc.,
No. 00 Civ. 572, 2003 WL 135706 (S.D.N.Y. Jan. 17, 2003) .................... 10

Fadlevich v. JD 34th St. Realty LLC,
775 F. Supp. 3d 668 (E.D.N.Y. 2025) .................... 6

Flax v. Lincoln Nat'l Life Ins. Co.,
54 A.D.3d 992 (2d Dep't 2008) .................... 15

Green v. Beer,
No. 06 Civ. 4156, 2007 WL 576089 (S.D.N.Y. Feb. 22, 2007) .................... 13

Hale v. Teledoc Health, Inc.,
No. 20 CV 5245, 2021 WL 1163925 (S.D.N.Y. Mar. 25, 2021) .................... 7

Heffernan v. Marine Midland Bank,
267 A.D.2d 83 (1st Dep't 1999) .................... 9

Higgins v. 120 Riverside Boulevard at Trump Place Cond.,
No. 21-cv-4203, 2022 WL 3920044 (S.D.N.Y. Aug. 31, 2022) .................... 10

Hoffend & Sons, Inc. v. Rose & Kiernan, Inc.,
19 A.D.3d 1056 (4th Dep't 2005) .................... 9

Holbern Corp. v. Sawgrass Mut. Ins. Co.,
304 F. Supp. 3d 392 (S.D.N.Y. 2018) .................... 14

IDT Corp. v. Morgan Stanley Dean Witter & Co.,
12 N.Y.3d 132 (2009) .................... 12

Jun v. Bank of America, N.A.,
No. 22-CV-10466, 2023 WL 7220755 (S.D.N.Y. Nov. 2, 2023)
aff'd, No. 23-7903, 2024 WL 5135381 (2d Cir. Dec. 17, 2024) .................... 7, 8

Kampuries v. Am. Honda Motor Co., Inc.,
204 F. Supp. 3d 484 (E.D.N.Y. 2016) .......... 14

Murphy v. Kuhn,
90 N.Y.2d 266 (1997) .......... 13

Optanix, Inc. v. Alorica Inc.,
20-cv-09660, 2021 WL 2810060 (S.D.N.Y. July 6, 2021) .......... 16

Pope v. Rice,
No. 04 Civ. 4171, 2005 WL 613085 (S.D.N.Y. Mar. 14, 2005) .......... 7

Reznick v. Bluegreen Resorts Mgmt., Inc.,
154 A.D.3d 891 (2d Dep't 2017) .......... 11

Robinson v. United States,
No. 23-cv-5444, 2024 WL 4333859 (E.D.N.Y. Sept. 27, 2024) .......... 8

Roller v. Red Payments L.L.C.,
No. CV 19-5285, 2022 WL 4226094 (E.D.N.Y. Sept. 12, 2022) .......... 16

Salomon v. Citigroup Inc.,
123 A.D.3d 517 (1st Dep't 2014) .......... 8

Spinnato v. Unity of Omaha Life Ins. Co.,
322 F. Supp. 3d 377 (2018) .......... 13

**Other Authorities**

New York General Business Law § 349 .......... 14, 15

**Rules**

Fed. R. Civ. P. 9(b) .......... 9

Pursuant to this Court's August 6, 2026 minute entry and order for status conference, defendant American General Life Insurance Company ("AGLIC") submits this supplemental memorandum of law in support of its motion to dismiss the amended complaint (ECF 49) of plaintiffs Salaman Oberlander ("Salaman") and Salamon Oberlander, as Trustee of The Ader I Trust dated December 11, 2014 (the "Trust," and collectively, "Plaintiffs").

## PRELIMINARY STATEMENT

Plaintiffs acknowledge that they named AGLIC as a defendant based solely on a theory of vicarious liability, as a purported principal of defendants Marc Frohlich and Frohlich Financial Group, LLC (collectively, the "Frohlich Defendants"). The supposed agency is described in the amended complaint in the most conclusory fashion possible, and AGLIC's alleged involvement in the sordid events presented in that pleading was limited to issuing and administering a life insurance policy in the normal course of its business.

The new allegations in the amended complaint foreclose any argument to hold AGLIC vicariously liable for the Frohlich Defendants' alleged wrongdoing. Accepting those allegations, the Frohlich Defendants and their non-party agents or associates worked together to defraud AGLIC into issuing a $15 million life insurance policy to Plaintiffs based on false information provided during the underwriting process. Under well-settled law, Plaintiffs cannot plausibly allege that AGLIC is vicariously liable for an alleged fraudulent scheme intended to further the Frohlich Defendants' (and Plaintiffs') own personal interests at AGLIC's expense.

And even if AGLIC could be held liable under an agency theory for the Frohlich Defendants' and their alleged non-party agents' or associates' wrongdoing, for the reasons stated below and in defendants' earlier submissions in support of their motions to dismiss Plaintiffs'

initial complaint,[1] Plaintiffs' allegations fail to state a claim against the Frohlich Defendants.

## FACTS[2]

On March 5, 2015, AGLIC issued to Plaintiffs a 43-year life insurance policy ("Policy") on the life of Salaman's then 78-year-old mother, Pearl Oberlander, in the face amount of $15 million. See ECF 49-3 at 4. The Policy was owned by the Trust, of which Salaman is the trustee and Ms. Oberlander is the grantor. See ECF 49-3 at 50; ECF 49-2 at 1.[3]

In exchange for AGLIC's assuming the risk, over the next 43 years, of paying Plaintiffs a $15 million death benefit upon Ms. Oberlander's passing, Plaintiffs agreed to pay monthly premiums of $87,346.50. See ECF 49-3 at 4. Plaintiffs had the right to surrender the Policy within twenty days of its effective date and receive a full refund for any premiums that they had already paid, see ECF 49-3 at 1, but they never exercised that right. Instead, Plaintiffs paid the premiums on the Policy for about a year, before they stopped doing so, resulting in the Policy's lapsing by August 2016. See ECF 49 ¶¶ 99–100; ECF 24-4 at 2.[4] Given that AGLIC had held up its end of the bargain by insuring Ms. Oberlander's life while premiums were paid on the Policy and had every right to lapse the Policy when payments ceased, that should have been the end of the story

[1] AGLIC incorporates those submissions by reference. See ECF 22, 24, 32, 33.

[2] For the purposes of this motion only, AGLIC accepts as true the well-pleaded allegations in the amended complaint.

[3] All pincites to page numbers in citations to documents filed on the docket refer to the page number indicated on the PACER e-filing stamp at the top of the page of the document.

[4] The Court can consider ECF 24-4—a correspondence from AGLIC to Plaintiffs dated August 8, 2016, notifying Plaintiffs that the Policy had lapsed due to non-payment of premiums—in deciding this motion to dismiss, because the amended complaint relies on the effect of that notification (i.e., of the Policy lapsing) as integral to Plaintiffs' claims. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (citation and quotation marks omitted)).

for AGLIC.

According to Plaintiffs, however, the Policy was a part of a broader course of dealings between Plaintiffs, the Frohlich Defendants, and the Frohlich Defendants' non-party agents or associates. Plaintiffs allege that they entered into an arrangement with the Frohlich Defendants for the latter to provide, as the amended complaint euphemistically describes it, "life insurance advisory services" and "premium financing services," among "other obligations." See ECF 49 ¶ 117. The amended complaint's factual allegations show, however, that "the Policy was procured through" Plaintiffs' knowing and active participation in "the Frohlich Defendants' fraudulent scheme," id. ¶ 172—a scheme that Plaintiffs allege involved the following:

- the Frohlich Defendants persuading Plaintiffs to apply for "an unaffordable policy that should never have been solicited or issued" that would entitle Plaintiffs, as the Policy's owners, to receive death benefit proceeds of $15 million upon the death of the then-78-year-old Ms. Oberlander and that would, in turn, "generate the Frohlich Defendants' outsized commissions," id. ¶ 85; ECF 49-3 at 4;
- Plaintiffs proceeding to apply for the Policy—despite self-professed concerns that they were unable to afford the premiums to maintain the Policy and that Ms. Oberlander was "over-insured"—after the Frohlich Defendants and their alleged non-party agent offered, (i) to help Plaintiffs "secure a financing agreement with a third-party lender to fund the [Policy's] unaffordable premiums," (ii) to reimburse Plaintiffs "for all of their outlays in connection with the Policy," and (iii) to pay Plaintiffs a rebate from the allegedly "outsized" commission that the Frohlich Defendants "would receive from the first-year premiums to be paid" on the Policy (a rebate practice that violates New York's Insurance Law), such that Plaintiffs

"would not be required to pay 'a nickel out of their pocket' (or words to that effect) for the [P]olicy," ECF 49 ¶¶ 61–62, 65–69, 74(a)–(c), 85, 107(a)–(c);

- Plaintiffs coordinating with an alleged agent of the Frohlich Defendants "in advance of [AGLIC's underwriting vendor's] telephonic underwriting interview of Ms. Pearl Oberlander . . . to script," and later certify as true, false "answers to the [P]olicy application," including false information about Ms. Oberlander's "net worth," the outcome of "her most recent doctor visit," her lack of intent to leave the country, whether the Policy was intended to replace any insurance that is currently in force, and other "detailed figures concerning her purported assets, business interests, cash position, and existing policies"—such that Plaintiffs allowed the "Frolich Defendants and their agents" and "not the Plaintiffs and not the proposed insured" to be "the source of and the authors of the financial and medical information submitted" to AGLIC "in connection with the application for and underwriting of the Policy," id. ¶¶ 74(c), 83(i)–(v)–84, 89; ECF 49-3 at 53–55;
- the Frohlich Defendants presenting plaintiff Salaman with a "blank or substantially incomplete [application] form and direct[ing] [Salaman] to sign," and then, "[u]pon information and belief," Plaintiffs and Ms. Oberlander allowing the Frohlich Defendants to complete the paperwork with false information by "filling in material terms, dates, and legends after the signatures had been given," ECF 49 ¶¶ 87–88; and
- Plaintiffs allowing the Policy to "collapse[]" only after the Frohlich Defendants failed to consummate their part of the scheme, by obtaining "financing for the premiums on the [P]olicy" and after "the Plaintiffs borrowed hundreds of thousands

> of dollars to continue paying premiums on the [P]olicy for a number of quarters." Id. ¶¶ 98–99.

More starkly stated, Plaintiffs acknowledge in the amended complaint that they worked in concert with the Frohlich Defendants to defraud AGLIC into taking on a $15 million risk under false pretenses, and that their fraudulent scheme ultimately failed only after the Frohlich Defendants failed to uphold their end of the scheme, to obtain premium financing.

As to AGLIC's purported involvement—or more precisely, lack of any—in this fraudulent scheme, Plaintiffs allege only that AGLIC issued the Policy and "[u]pon information and belief," had an actual or apparent agency relationship with the Frohlich Defendants. See ECF 49 ¶¶ 18–30. Moreover, Plaintiffs allege that non-parties Menachem Lichter, Barry Farkas, and Eli Gross are directly responsible for most of the alleged wrongdoing, see id. ¶ 74, but Plaintiffs do not allege that any of them was an agent of AGLIC. Rather, they allege that only Lichter's conduct was "undertaken as [an] agent for, with the authority of, for the financial benefit of, and in concert with the Frohlich Defendants." Id. ¶ 16.

## ARGUMENT

Plaintiffs' new allegations in the amended complaint establish, as a matter of law, the absence of any basis for finding that AGLIC actually or apparently authorized the Frohlich Defendants or their unauthorized non-party subagents to engage in the alleged conduct on which Plaintiffs base their claims. The amended complaint should be dismissed as to AGLIC for that reason alone. But even if Plaintiffs' agency theory against AGLIC could withstand this motion to dismiss, AGLIC (and the Frohlich Defendants) should prevail, because Plaintiffs, despite being afforded the opportunity to amend their pleading, still cannot show that the conduct in question, as alleged, is actionable.

## I. Plaintiffs' Attempt to Hold AGLIC Vicariously Liable for an Alleged Scheme to Defraud AGLIC Fails as a Matter of Law

The new factual allegations in the amended complaint illustrate that none of the alleged misconduct underlying their claims could have possibly been within the scope of AGLIC's actual or apparent authority. To adequately allege that AGLIC may be liable as a principal of the Frohlich Defendants under a theory of actual authority, Plaintiffs must plausibly plead that the Frohlich Defendants "receive[d] explicit permission from the principal to act on its behalf" when engaging in their alleged wrongdoing. Fadlevich v. JD 34th St. Realty LLC, 775 F. Supp. 3d 668, 693 (E.D.N.Y. 2025) (citation omitted).[5] Alternatively, to adequately allege that AGLIC may be liable under a theory of apparent authority, Plaintiffs must plausibly plead that AGLIC's "representations . . . made to [Plaintiffs] make it reasonable for [Plaintiffs] to believe the [the Frohlich Defendants] ha[d]" the ability to enter into the course of dealing at issue on AGLIC's behalf. Id. at 694 (citation omitted).

Here, all that Plaintiffs muster to attempt to establish agency are conclusory allegations, mostly made "[u]pon information and belief," that AGLIC, (i) "provided the Frohlich Defendants express authority to act as [AGLIC's] agents in their solicitation of the Policies and related activities," ECF 49 ¶ 18, (ii) engaged in the "standard life insurance industry practice" of authorizing insurance brokers to act as agents, id. ¶ 21, (iii) "communicated to the Plaintiffs that the Frohlich Defendants were acting on [AGLIC's] behalf," including in unspecified "letters from [AGLIC] to Plaintiffs," id. ¶¶ 24–25, and (iv) "consent[ed] to the preparation of the life insurance policy application paperwork by the Frohlich Defendants," as well as other unspecified "express

[5] As noted in the Frohlich Defendants' reply brief in support of their prior motion to dismiss, Plaintiffs do not appear to contest that New York law applies to all their claims. See ECF 32 at 11. To the extent Plaintiffs argue in response to this supplemental brief that Florida law should apply, AGLIC will show in its reply that the same results should obtain under Florida law.

representations" from AGLIC to Plaintiffs. Id. ¶ 25.

None of Plaintiffs' allegations identify specific conduct, documents, or communications from AGLIC reflecting that the Frohlich Defendants and their non-party agents or associates had actual authority to do anything other than solicit an AGLIC life insurance policy, or that could reasonably lead Plaintiffs to believe that the Frohlich Defendants apparently had authority to do anything beyond that. This is fatal to Plaintiffs' attempt to hold AGLIC vicariously liable. See, e.g., Hale v. Teledoc Health, Inc., No. 20 CV 5245, 2021 WL 1163925, at *4 (S.D.N.Y. Mar. 25, 2021) ("[i]t is well-established that apparent authority must derive from statements or actions of the alleged principal, not the alleged agent;" allegation that defendant advertised a company's services among a bundle of other services was insufficient to plausibly state a claim against the company based on vicarious liability) (citations omitted)); Jun v. Bank of America, N.A., No. 22-CV-10466, 2023 WL 7220755, at *3 (S.D.N.Y. Nov. 2, 2023) (finding plaintiff failed to plausibly allege vicarious liability of financial institutions based on conclusory allegations, references to the name of a financial institution on letterhead, and the alleged "representations of the Individual Defendants, people [plaintiff] herself alleges to be fraudsters"), aff'd, No. 23-7903, 2024 WL 5135381 (2d Cir. Dec. 17, 2024) (summary order).[6]

Their pleading deficiencies aside, Plaintiffs' characterization in the amended complaint of

[6] Plaintiffs' pleading failure is particularly damaging to their claims here, because the vast majority of the alleged misconduct is not even attributed to the Frohlich Defendants themselves, but rather, to their alleged non-party agent Menachem Lichter or his associates Barry Farkas and Eli Gross—whom Plaintiffs do not allege are AGLIC's agents or authorized subagents of the Frohlich Defendants. See supra, 3–5; Pope v. Rice, No. 04 Civ. 4171, 2005 WL 613085, at *9 (S.D.N.Y. Mar. 14, 2005) ("[a]n agent gains the authority to appoint a subagent" only "when the principal through word or conduct causes the agent reasonably to believe it has such authority" and "[a]n agent gains apparent authority" for the subagent "by the same method as that which creates authority, except that the manifestation of the principal is to [a] third person rather than to the agent." (citations omitted))

the alleged fraudulent scheme undermines their attempt to show that AGLIC may be vicariously liable based on either agency theory. In fact, Plaintiffs' new allegations demonstrate that AGLIC was the victim of insurance fraud. The fraud denied AGLIC an opportunity to accurately assess the underwriting risks associated with issuing a $15 million policy insuring the life of Salaman's elderly mother and, in the process, caused it to pay the Frohlich Defendants outsized commission fees. See supra, 3–5. Plaintiffs cannot plausibly plead that the Frohlich Defendants had actual authority—or that Plaintiffs reasonably believed the Frohlich Defendants had apparent authority—from AGLIC to engage in conduct designed to enrich themselves and the Frohlich Defendants at AGLIC's risk and expense. See, e.g., Courtois v. TOMS Cap. Mgmt. LP, 210 A.D.3d 522, 523 (1st Dep't 2022) (granting defendant employer's motion to dismiss vicarious liability claims based on its alleged agent conspiring with plaintiff's wife to direct plaintiff to an unsuitable investment strategy because "the alleged acts . . . clearly were not made within the scope of [the alleged agent's] employment or in furtherance of [the employer's] business, but rather, for his own personal gain"); Salomon v. Citigroup Inc., 123 A.D.3d 517, 518–19 (1st Dep't 2014) (finding that trial court properly granted employer's motion to dismiss conversion claim based on vicarious liability "where the factual allegations indicated that" a secretary's theft "was in furtherance of the secretary's personal gain, not in furtherance of [the employer's] business," and the "conduct constituted such a gross departure from the normal performance of her secretarial duties"); cf. Robinson v. United States, No. 23-cv-5444, 2024 WL 4333859, at *4 (E.D.N.Y. Sept. 27, 2024) (finding, in granting motion to dismiss, "[t]here is no plausible factual basis to conclude that" the employer, the U.S. DOJ, "benefitted from [its employee] violating [DOJ's] policies, misappropriating its evidence, and retaliating against one of its witnesses.")

The scope of the Frohlich Defendants' alleged apparent authority here is even more

implausible, in that it is based on Plaintiffs' extraordinary contention that they reasonably believed (and did not need to scrutinize) the notion that the Frohlich Defendants had AGLIC's authority not only to guarantee premium financing from a non-AGLIC, third-party provider but that such financing would allow Plaintiffs to pay nothing and bear no risk—and also included the authority to defraud AGLIC during the underwriting process. See, e.g., Heffernan v. Marine Midland Bank, 267 A.D.2d 83, 84 (1st Dep't 1999) (finding plaintiff failed to satisfy burden of pleading an agency relationship where there was no showing plaintiff undertook a "reasonable inquiry" into the authority of the alleged agent to offer the "extraordinary" promise of "guaranteed rate of return on risk-free bank notes").

## II. Plaintiffs Fail to State a Claim Against the Frohlich Defendants

Even if AGLIC could be vicariously liable for the Frohlich Defendants' alleged misconduct, the Court should dismiss the amended complaint, because it fails to state a claim against the Frohlich Defendants.

### A. Plaintiffs' Fraudulent Misrepresentation Claim Fails, Because the Amended Complaint Does Not Identify an Actionable Misrepresentation, and Plaintiffs' Allegations Establish the Absence of Reasonable Reliance

The new allegations in the amended complaint do not cure Plaintiffs' failure to plead an actionable fraud; rather, they magnify that failure. To adequately plead fraud (or misrepresentation), one "must state with particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b). The misrepresentation on which the fraud claim is based must be a statement of fact and not "an opinion or prediction of something which is hoped to occur in the future," ECF 22-1 at 22 (quoting Brahver v. Fishman, No. 09616/07, 2008 WL 2614847, at *1 (Sup. Ct. N.Y. Cnty. June 19, 2008)), and Plaintiffs must have "reasonably relied on the alleged misrepresentation." Id. at 23–24 (quoting Hoffend & Sons, Inc. v. Rose & Kiernan, Inc., 19 A.D.3d 1056, 1058 (4th Dep't 2005)).

The alleged misrepresentation at issue here—namely, if premium financing were secured, Plaintiffs would not need to "pay 'a nickel out of their pocket' (or words to that effect)" to keep the Policy in force, ECF 49 ¶ 62—is precisely the type of forward-looking statement of opinion or prediction that courts hold is not actionable. See ECF 22-1 at 21–22; see, e.g., Brahver, 2008 WL 2614847, at *1 (statements "to the effect that the plaintiff would never have to make any insurance premium payments or that the policy would never cost the Brahvers any money is nothing more than an opinion or prediction of something which is hoped to occur in the future and cannot sustain a claim for fraud"). The new allegations in the amended complaint include only some vague variant of the same thing, e.g., that the Frohlich Defendants and their agent or associates made unspecified "false representations" about "the wisdom and value of the [P]olicy, and how much it would cost the Plaintiffs to carry the [P]olicy." See, e.g., ECF 49 ¶ 74(d). None of them change the fundamentally non-actionable character of such classic forward-looking statements.

In any event, the amended complaint and the Policy documents annexed to it show that Plaintiffs could not have reasonably relied on the Frohlich Defendants' implausible representations about the benefits of premium financing for the Policy, including because Plaintiffs could have easily verified that they were false by reading the Policy documents or insisted on arranging the financing before or contemporaneously with obtaining coverage under the Policy. See, e.g., Dooner v. Keefe, Bruyette & Woods, Inc., No. 00 Civ. 572, 2003 WL 135706, at *4 (S.D.N.Y. Jan. 17, 2003) (plaintiff failed to plausibly plead reasonable reliance for fraud claim based on "patently implausible" representations as to the "certainty of the IPO"); Higgins v. 120 Riverside Boulevard at Trump Place Cond., No. 21-cv-4203, 2022 WL 3920044, at *34 (S.D.N.Y. Aug. 31, 2022) (plaintiff failed to plausibly allege reasonable reliance on representations "that there were no active or recent leaks" in an apartment because "[a]fter being directly confronted with

circumstances that would suggest the [individual defendant's] representations were false, [plaintiff] made no investigation to determine" their accuracy).

B. Plaintiffs' Contract and Implied Covenant Claims Fail, Because Plaintiffs Do Not Plausibly Allege That Any Specific Term of a Valid Written Contract Was Breached

Plaintiffs allege that the Frohlich Defendants breached a contract to provide services related to life insurance—but they fail to show there was any such contract, let alone a valid and written one with an identifiable term that was breached. Reznick v. Bluegreen Resorts Mgmt., Inc., 154 A.D.3d 891, 893 (2d Dep't 2017) (to plausibly plead a breach of contract claim or a breach of the implied covenant of good faith claim arising from a contract, plaintiffs "must identify the provisions of the contract that were breached" and "vague allegations suggesting that there may have been an agreement do not suffice" (citations omitted)).

As they did in their initial complaint, ECF 22-1 at 26–27, Plaintiffs continue to make only the vaguest allegations that the Frohlich Defendants agreed to a contract, "through oral conversations between the Plaintiffs and the Frohlich Defendants and through e-mail and other written communications"—none of which are identified with any particularity—"to provide life insurance advisory services, premium financing services" and that "imposed other obligations" in exchange for Plaintiffs purchasing the Policy. See ECF 49 ¶¶ 116–17; ECF 22-1 at 26–27. Among the basic, fundamental terms of the alleged contract that Plaintiffs fail to identify are the precise "advisory or premium financing services the Frohlich Defendants were required to provide" or how the Frohlich Defendants would be compensated for those services. ECF 22-1 at 26–27. The Frohlich Defendants cannot be held liable for breaching a contract or the covenant of good faith implied in a contract where Plaintiffs cannot even identify the parties' specific obligations under the contract.[7]

---

[7] Plaintiffs do not allege—and have no basis to allege—that there was any breach of the Policy.

And even if the Court could discern a contract that imposed an obligation on the Frohlich Defendants to secure a lender for premium financing, that contract would be invalid under New York's statute of frauds, and in particular, the requirement that an agreement to procure a loan in exchange for compensation must be in writing. See id. at 28–29.

C. Plaintiffs' Fiduciary Duty Claim Fails Because It Is Untimely and Because No Such Duty Existed

As an initial matter, Plaintiffs' fiduciary duty claim is untimely. Under New York law, a fiduciary duty claim seeking a remedy that "is purely monetary in nature" has a three-year statute of limitations and accrues "as soon as the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 139–40 (2009) (citation and quotation marks omitted). Plaintiffs' fiduciary duty claim seeks money damages only, see ECF 49, Prayer for Relief ¶ A, and is thus governed by a three-year statute of limitations. See IDT Corp., 12 N.Y.3d at 140. The claim accrued no later than August 2016, when the Policy lapsed for non-payment, see ECF 24-4 at 2, and Plaintiffs filed suit (in New York State court) more than three years later, in September 2019. See ECF 1-1 at 2.

Even if Plaintiffs' fiduciary duty claim were timely, based on Plaintiffs' allegations, their alleged dealings with the Frohlich Defendants did not give rise to any fiduciary duty. Plaintiffs' contention that a fiduciary duty existed and was breached by the Frohlich Defendants by "selling the Policy, failing to obtain third-party financing for the premiums as they had committed, and otherwise providing improper professional advice in violation of their fiduciary duty," ECF 49 ¶ 136, fails as a matter of law, because they do not, and cannot allege a special relationship. See ECF 22-1 at 33–35; Cathy Daniels, Ltd. v. Weingast, 91 A.D.3d 431, 433 (1st Dep't 2012) ("In

---

And indeed, so long as premiums were paid on the Policy, AGLIC provided coverage in return.

the absence of a special relationship, a claim against an insurance agent or broker for breach of fiduciary duty does not lie"). Such a relationship is rare and "considered 'exceptional' by New York courts." Spinnato v. Unity of Omaha Life Ins. Co., 322 F. Supp. 3d 377, 392 (2018) (quoting Murphy v. Kuhn, 90 N.Y.2d 266, 272 (1997)).

The only scenarios in which courts have recognized a special relationship entailing fiduciary duties in the insurance brokerage context are where (1) the insurance agent receives compensation for consultation other than from the payment of premiums, (2) the plaintiff can show there was an interaction regarding a question of coverage for which the insured relied on the expertise of the agent, and (3) there is a course of dealing over an extended period of time that placed an objectively reasonable agent on notice that its advice was being sought and relied on by the plaintiff. See id.

None of these scenarios are presented here. The first scenario does not apply, because Plaintiffs allege the Frohlich Defendants' only compensation was the commissions they received after AGLIC issued the Policy (a consequence of Plaintiffs paying their premiums). The third scenario is inapplicable, because it requires showing that the relationship began prior to the transaction at issue in the case, which is not alleged. See Green v. Beer, No. 06 Civ. 4156, 2007 WL 576089, at *3 (S.D.N.Y. Feb. 22, 2007) (finding plaintiff failed to plausibly allege a special relationship based on a "relationship of trust with Defendants before the advent of the tax-shelter transaction" at issue). Finally, the second scenario is inapplicable because, while Plaintiffs allege they received advice from the Frohlich Defendants, "courts have generally required that the insured make a specific request about the feature of the proposed insurance at issue" to establish a special relationship under that scenario. Spinnato, 322 F. Supp. 3d at 393 (citation omitted). As in Spinnato, Plaintiffs here offer "no contention that [Plaintiffs] made any affirmative request of

the [Frohlich Defendants] or inquired as to any aspect" of the terms of the Policy or the scope of its coverage and instead raise only "vague allegations" about the Frohlich Defendants' pitch for Plaintiffs to seek premium financing, among other aspects of the alleged fraud, which cannot support a finding of a special relationship as a matter of law. Id.; see also Holbern Corp. v. Sawgrass Mut. Ins. Co., 304 F. Supp. 3d 392, 405 (S.D.N.Y. 2018) (finding plaintiff's alleged interaction with the defendant broker regarding plaintiff's insurance needs was insufficient to establish a fiduciary relationship at the pleading stage because "[i]f such a generalized and common inquiry were sufficient to create a special relationship between an insurance broker and customer, courts would be required to find the existence of a special relationship in nearly every insurance purchase and the exception would swallow the general rule" against finding a fiduciary duty in the insurance broker context).

D. Plaintiffs' Negligence Claim Is Time-Barred and Otherwise Fails

As with their fiduciary duty claim, Plaintiffs' negligence claim is untimely, because it is governed by a three-year statute of limitations and accrued no later than August 2016. See Kampuries v. Am. Honda Motor Co., Inc., 204 F. Supp. 3d 484, 490–91 (E.D.N.Y. 2016) (negligence claim under New York law has a three-year statute of limitations and accrues at the time of plaintiff's injury).

In any event, there are no new allegations in the amended complaint that remedy the deficiencies in Plaintiffs' negligence claim identified in defendants' earlier briefing. See ECF 22-1 at 37–39.

E. Plaintiffs' New York General Business Law § 349 Claim is Time-Barred and Otherwise Fails

Plaintiffs' attempt to turn a (meritless) dispute between them and the Frohlich Defendants into an unfair, deceptive, or abusive practices claim under New York General Business Law § 349

fails as time-barred and because the misconduct alleged by Plaintiffs did not impact New York State's public at-large.

The section 349 claim is untimely for the reason explained in AGLIC's prior briefing, see ECF 24-1 at 4–5, and for the same reasons as Plaintiffs' fiduciary duty, negligence, and (as explained below) unjust enrichment claims. Notably, when AGLIC raised the statute of limitations bar in its motion to dismiss Plaintiffs' initial complaint, Plaintiffs opposed the motion by arguing that their "relationship with the Frohlich Defendants . . . continued long after the [P]olicy lapsed and well into the three years before this action was filed" or that "Plaintiffs['] discovery of the damages they suffered was within the three years before this action was filed, regardless of the time that the Policy lapsed." ECF 31 at 7. Setting aside whether those statements, accepted as true, would change the analysis (they would not), they did not appear in Plaintiffs' initial complaint, and they remain conspicuously absent from Plaintiffs' amended complaint.

Plaintiffs' section 349 claim also fails, because Plaintiffs do not allege unfair, deceptive, or abusive acts or practices that are "consumer-oriented," such that they affect the New York public at large. As defendants addressed in their prior briefing, this is a fundamental requirement for seeking relief under this consumer protection statute, and Plaintiffs fail to satisfy it, because all the alleged misconduct involves a private dispute over insurance. See ECF 22-1 at 39–40; see Flax v. Lincoln Nat'l Life Ins. Co., 54 A.D.3d 992, 995 (2d Dep't 2008) (alleged misconduct regarding solicitation of life insurance policy did "not have an impact on the public at large"). The amended complaint offers no new allegations that even begin to suggest that the dispute here is anything more than that.

### F. Plaintiffs' Unjust Enrichment Claim is Untimely, and the Amended Complaint Fails to Plausibly Plead It

As with Plaintiffs' fiduciary duty, negligence, and section 349 claims, Plaintiffs' unjust

enrichment claim is subject to a three-year statute of limitations and thus, it too is time-barred. See City of Almaty v. Ablyazov, No. 15-CV-5345, 2018 WL 1583293, at *4–*5 (S.D.N.Y. Mar. 27, 2018). In addition, the Frohlich Defendants' prior briefing demonstrates that Plaintiffs' allegations fall short of stating a claim for unjust enrichment. See ECF 22-1 at 41–42. In fact, Plaintiffs paid premiums for coverage, and so long as they paid the premiums, they received that coverage. Nothing in the amended complaint remedies the fundamental problem with arguing that this arrangement resulted in unjust enrichment.

G. There Is No Basis for a Declaratory Judgment

Plaintiffs cannot justify their request for a declaratory judgment. There are no ambiguities to resolve as to the terms of the Policy or other matters that can be addressed through a declaration of the parties' rights. This is a dispute about alleged misconduct and non-performance under a (dubious) agreement, which Plaintiffs readily acknowledge can be addressed by resolving their underlying substantive state law claims seeking money damages alone. See, e.g., ECF 49, Prayer for Relief ¶ A; Roller v. Red Payments L.L.C., No. CV 19-5285, 2022 WL 4226094, at *8 (E.D.N.Y. Sept. 12, 2022) (holding "Plaintiffs are not entitled to independent declaratory relief" when their "underlying substantive claims are dismissed for failure to state a claim"); Optanix, Inc. v. Alorica Inc., 20-cv-09660, 2021 WL 2810060, at *4 (S.D.N.Y. July 6, 2021) (holding claim for declaratory judgment should be dismissed where the claim "essentially replicates the issues that will be resolved by a determination" on the underlying contract claim); cf. ECF 22-1 at 42–43. The additional allegations in the amended complaint do nothing to change the fact that this is not an appropriate case for a declaratory judgment.

## CONCLUSION

For the reasons stated above, and in the defendants' briefing in support of their motions to dismiss Plaintiffs' initial complaint (which arguments are expressly adopted and incorporated by

reference as if set forth fully here), AGLIC respectfully requests that this Court dismiss the amended complaint as to it with prejudice.

Dated: New York, NY
September 21, 2026

/s/ *Zachary W. Silverman*
Andrew P. Fishkin
Zachary W. Silverman
FISHKIN LUCKS LLP
233 Broadway, Suite 2005
New York, NY 10279
646.755.9200
afishkin@fishkinlucks.com
zsilverman@fishkinlucks.com

*Attorneys for Defendant*
*American General Life Insurance Company*

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that Defendant American General Life Insurance Company's Supplemental Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' Amended Verified Complaint is 5,222 words, excluding the caption, table of contents, table of authorities, signature blocks, and this certification. I calculated this word count by using Microsoft Word's "Word Count" feature.

Dated: New York, NY
September 21, 2026

/s/ *Zachary W. Silverman*
Zachary W. Silverman