UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SALAMAN OBERLANDER, INDIVIDUALLY AND AS TRUSTEE OF THE ADER I TRUST,<br><br>Plaintiff,<br><br>- against -<br><br>AMERICAN GENERAL LIFE INSURANCE COMPANY, *et al.*,<br><br>Defendants. | : | **MEMORANDUM DECISION AND ORDER**<br><br>20-cv-567 (BMC) |

**COGAN**, District Judge.

This case, brought by plaintiff against American General Life Insurance Company ("AGLIC"), Marc Frohlich, and the Frohlich Financial Group, LLC (the latter two together, the "Frohlich Defendants"), is before the Court on two motions to dismiss, one filed by AGLIC and the other filed by the Frohlich Defendants. For the reasons that follow, AGLIC's motion is granted and the Frohlich Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I. Factual

The following facts are summarized from plaintiff's amended complaint and assumed to be true for purposes of these motions.

On or about July or August 2014, some individuals approached plaintiff and solicited the sale of a life insurance policy on the life of his mother, Pearl Oberlander. Specifically, the individuals encouraged plaintiff to have a newly formed trust, the Ader I Trust, purchase a $15 million policy. Plaintiff told these individuals that his mother already had several life insurance policies and that he was struggling to pay the premiums on them.

One of those individuals was a non-party named Menachem Lichter, a life insurance professional associated with a company called 10/50 Group LLC. While soliciting plaintiff's purchase of the life insurance policy, Lichter promised plaintiff that the Frohlich Defendants would secure a financing agreement with a third-party lender to fund the premiums. The Frohlich Defendants told plaintiff that he would not have to pay anything out of his own pocket for the policy. The following meetings occurred before plaintiff purchased the life insurance policy:

- On October 21, 2014, at approximately 11:39 a.m., at the offices of Lightstone Management, 4424 18th Avenue, Brooklyn, New York, Lichter met with plaintiff and another individual named Barry Farkas. Farkas and Lichter told plaintiff that the Frohlich Defendants could deliver premium-financed life insurance without the purchaser "investing a dime" (or words to that effect). The Frohlich Defendants had allegedly paid Farkas approximately $15,000.00 to pose as an independent person vouching for the premium financing pitch.

- On or about November 3, 2014, Lichter met with plaintiff and discussed the policy.

- On or about November 9, 2014, Lichter met with plaintiff in advance of the telephonic underwriting interview of plaintiff's mother. He did so to script the answers to the policy application.[1]

- On November 24, 2014, at approximately 1:00 p.m., Lichter met with plaintiff in Williamsburg, Brooklyn and discussed the policy.

- On November 27, 2014, at approximately 4:30 p.m., Lichter met with plaintiff at plaintiff's home in Boro Park, Brooklyn and discussed the policy.

- On December 2, 2014, Lichter met with plaintiff at 500 Fifth Avenue, 15th Floor, Suite 1520, New York, New York and discussed the policy.

- On December 4, 2014, at approximately 1:00 p.m., Lichter met with plaintiff at 250 West 55th Street, 14th Floor, New York, New York and discussed the policy.

- On December 9, 2014, at approximately 7:21 p.m., Lichter met with plaintiff at plaintiff's home at 1430 47th Street, Brooklyn, New York and promised that plaintiff would "get reimbursed on all his outlays" (or words to that effect). Defendant Frohlich participated in this meeting by telephone or video.

---

[1] Lichter also sent the scripted answers via email on October 28, 2014 at approximately 8:15 p.m.

- On January 5, 2015, at the Core Club, 66 East 55th Street, New York, New York, Lichter met with plaintiff and another individual named Eli Gross, who vowed that financing would be obtained and plaintiff would not "have to pay a dime" (or words to that effect).

Once plaintiff agreed to purchase the policy, Lichter presented the application and related paperwork to plaintiff in blank or substantially incomplete form and directed him to add his signature. Plaintiff believes that defendant Frohlich thereafter completed the paperwork himself, filling in material information after plaintiff added his signature to the documents.

AGLIC issued the life insurance policy on or about March 5, 2015 to the Ader I Trust. The policy required monthly premiums of $87,346.45, which plaintiff began to pay. To make these payments, plaintiff took out various loans and borrowed hundreds of thousands of dollars. While the policy was in effect, at least two more conversations reinforced plaintiff's belief that the premiums would be financed by a third party:

- On March 27, 2015, at approximately 3:30 p.m., defendant Frohlich personally telephoned plaintiff and promised that he would be reimbursed and would "not pay a nickel" (or words to that effect).

- On May 17, 2015, at the Meor Yitzchok annual dinner at Ateres Charna Hall, 790 Main Street, Spring Valley, New York, Lichter assured plaintiff that he "shouldn't worry" and that he "will get reimbursed" (or words to that effect). Defendant Frohlich repeated his slogan that plaintiff would not "invest a nickel."

The Frohlich Defendants also promised to refund some of their commissions to plaintiff. Specifically, Lichter – who was allegedly acting as an agent of the Frohlich Defendants – promised plaintiff that approximately 10 percent of the commissions earned on the policy would be paid as a kickback to plaintiff. In or about February 2016, Lichter paid plaintiff $100,000.00 by check as partial performance of that promise. Plaintiff states that, although he now realizes that the kickback is prohibited by New York Insurance Law § 2324, he did not know that it was illegal at the time.

Also unbeknownst to plaintiff, the premium financing that the Frohlich Defendants had in mind would have required liens on Pearl Oberlander's homes. The Frohlich Defendants never found plaintiff a third-party financing arrangement that was acceptable to him, and ultimately, plaintiff stopped paying the premiums on the policy. When the policy lapsed in August 2016 because of the failure to pay premiums, plaintiff forfeited all the premiums he had already paid. He alleges additional damages "including but not limited to the loss of insurability on [Pearl Oberlander], the liability for the loans taken to pay the premiums, [and] the opportunity costs of making the premiums."

## II. Procedural

Plaintiff filed this action in New York state court in Kings County in September 2019, and AGLIC removed the case to the Eastern District of New York in January 2020. Judge Glasser presided over the case until he granted defendants' motions to dismiss, which disposed of the case in its entirety. See Oberlander v. Am. Gen. Life Ins. Co., 607 F. Supp. 3d 274 (E.D.N.Y. 2022).

In his decision, Judge Glasser noted the existence of "two related actions" commenced by Lichter: one against the Frohlich Defendants and the other against plaintiff and his attorneys. Id. at 276. Judge Glasser observed that "[t]he allegations in Lichter's pleadings present a very different story of how it came to be that Oberlander applied for and received a $15,000,000 insurance policy" as compared to plaintiff's complaint here. But he also acknowledged that "[a]lthough judicial notice may be taken of the pleadings in the other actions and the allegations contained therein, the Court may not consider those allegations for the truth of the matters asserted." Id. at 276-77.

Regardless, Judge Glasser found that plaintiff's complaint "suffer[ed] from a host of fatal

defects," and all the claims suffered from the common problem that plaintiff had "not alleged … any damages." Id. at 278. He therefore dismissed the case under Federal Rule of Civil Procedure 12(b)(6) for lack of damages. He reasoned that "[w]hen the third-party financing was not arranged in March 2015, [plaintiff] had the choice to not accept the insurance policy. But [he] chose to do so." Id. at 278. By accepting the insurance policy, plaintiff "received a benefit in the form of insurance coverage," and "the law does not recognize as damages the money a plaintiff voluntarily chooses to pay in exchange for a benefit that is received as promised." Id.

Plaintiff appealed that decision, and the Second Circuit vacated and remanded. The Second Circuit disagreed with Judge Glasser's characterization of plaintiff's damages. The Second Circuit held that "[b]ecause the Frohlich Defendants failed to deliver on the agreement to obtain [third-party] financing, Oberlander had to seek out other, less favorable – and ultimately non-viable – sources of premium funding, subjecting him to liability for those loans and other damages." Oberlander v. Am. Gen. Life Ins. Co., No. 22-1533-cv, 2023 WL 2849114, at *2 (2d Cir. April 10, 2023). "As these liabilities were 'caused by and are directly traceable to' the Frohlich Defendants' alleged breach, they constitute cognizable damages under New York law for those claims sounding in contract." Id. (quoting Bausch & Lomb, Inc. v. Bressler, 977 F.2d 720, 731 (2d Cir. 1992)). The Second Circuit also found that plaintiff could potentially prove "recoverable 'pecuniary loss' under New York law for the claims sounding in fraud" because he alleged that he would not have paid the monthly premiums but for the Frohlich Defendants' misrepresentation that there would be third-party funding. Id. (quoting Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP, 15 N.Y.3d 264, 271, 907 N.Y.S.2d 139 (2010)).

The Second Circuit declined to analyze any alternative grounds for dismissal, citing its "distinctly preferred practice to remand such issues for consideration by the district court in the

first instance." Id. at *3 (quoting Schonfeld v. Hilliard, 218 F.3d 164, 184 (2d Cir. 2000)). For the same reason, it did "not reach the issue of whether the [district] court abused its discretion in denying Oberlander leave to amend the complaint." Id.

On remand, the case was reassigned to the undersigned in July 2026. In an order following a status conference with the parties in August 2026, the Court ordered plaintiff to file an amended complaint and set a briefing schedule for defendants to submit supplemental memoranda in support of their previously filed motions to dismiss. The Court ordered such supplemental briefing to allow defendants to address any new allegations in the amended complaint and update their positions on the bases for dismissal that Judge Glasser and the Second Circuit did not address.

In his amended complaint, plaintiff brings claims for fraudulent misrepresentation; breach of contract; breach of implied covenant of good faith and fair dealing; breach of fiduciary duty; negligence; violation of New York General Business Law § 349; and unjust enrichment.[2] All claims are brought against all three defendants. AGLIC and the Frohlich Defendants have moved to dismiss all claims against them.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The complaint must further "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3]

---

[2] Plaintiff also purports to bring a standalone "declaratory judgment" claim, but declaratory judgment is a form of relief, not a cause of action. See Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 406-07 (S.D.N.Y. 2010); see also Mulgrew v. U.S. Dep't of Transp., 750 F. Supp. 3d 171, 210 (S.D.N.Y. 2024) (collecting cases).

[3] Put another way, the Court must consider whether plaintiff's allegations, if true, could satisfy the elements of each claim. Plaintiff's claims are common-law and state-law claims; the elements are thus provided by state law.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of N.Y. Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

## DISCUSSION

### I. AGLIC as Defendant

AGLIC argues that no claim has been stated against it. Plaintiff alleges that AGLIC had an actual or apparent agency relationship with the Frohlich Defendants and is therefore liable for their actions. See LPD N.Y., LLC v. Adidas Am., Inc., 15-cv-6360, 2022 WL 4450999, at *8 (E.D.N.Y. Sept. 24, 2022) ("A principal can be held vicariously liable for the acts of another under a theory of actual or apparent authority."). But AGLIC asserts that, even if plaintiffs' allegations are accepted as true, plaintiff has not alleged facts sufficient to show there as an agency relationship relevant to the alleged misconduct. The Court agrees. See Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 457 (S.D.N.Y. 2005) ("Under New York law, 'an insurance broker is the agent of the *insured*, not the insurance company[.]'" (citation omitted)).

To adequately plead actual authority, plaintiff must allege that the agents "receive[d] explicit permission from the principal to act on its behalf." Fadlevich v. JD 34th St. Realty LLC, 775 F. Supp. 3d 668, 693 (E.D.N.Y. 2025) (quoting United States v. Gatto, 986 F.3d 104, 127 (2d Cir. 2021)). Actual authority is based on "direct manifestations from the principal to the agent." Id. (quoting LPD N.Y., 2022 WL 4450999, at *8). Plaintiff alleges that AGLIC

Because the parties all appear to agree that New York substantive law should apply to plaintiff's claims, the Court will consider the elements under New York law.

"provided the Frohlich Defendants express authority to act as [its] agents in their solicitation of [insurance policies] and related activities." But this "bare assertion" is "nothing more than a 'formulaic recitation of the elements'" of actual authority and therefore "not entitled to be assumed true." Iqbal, 556 U.S. at 681 (quoting Twombly, 550 U.S. at 555). Plaintiff must plead *facts* to support his claim; he cannot just recite the legal requirements. See Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A., 14 F. Supp. 3d 191, 215 (S.D.N.Y. 2014) ("[A] simple conclusory allegation to the effect that 'defendant A acted as defendant B's agent,' without more, would not plausibly state an agency relationship." (citation omitted)). Plaintiff's assertion that AGLIC gave express authority to the Frohlich Defendants is therefore insufficient to allege actual authority.

Plaintiff's apparent authority theory fares no better. "To prove that an agent has apparent authority, the plaintiff must establish that '(1) the principal was responsible for the appearance of authority in the agent to conduct the transaction in question and (2) the third party reasonably relied on the representations of the agent.'" LPD N.Y., 2022 WL 4450999, at *9 (quoting Star Funding, Inc. v. Tire Ctrs., LLC, 717 F. App'x 38, 41 (2d Cir. 2017)). Plaintiff alleges that AGLIC "had specific knowledge about the Frohlich Defendants, their business practices, and their 'pitch' of unaffordable policies to potential customers" and that AGLIC "communicated to [plaintiff] that the Frohlich Defendants were acting on [its] behalf" via letters. Those letters purportedly suggested that AGLIC "consent[ed] to the preparation of the life insurance policy application paperwork by the Frohlich Defendants."

Plaintiff's allegations about the letters from AGLIC come the closest to plausibly alleging an agency relationship, but even these allegations fall short because plaintiff does not (and very likely cannot) suggest that AGLIC gave the Frohlich Defendant's any authority regarding "the

transaction in question." LPD N.Y., 2022 WL 4450999, at *9. "[T]he mere creation of an agency for some purpose does not automatically invest the agent with apparent authority to bind the principal without limitation." Highland Cap. Mgmt. LP v. Schneider, 607 F.3d 322, 328 (2d Cir. 2010) (quoting Ford v. Unity Hosp., 32 N.Y.2d 464, 472, 346 N.Y.S.2d 238 (1973)). "A party cannot claim that an agent acted with apparent authority when it 'knew, or should have known, that [the agent] was exceeding the scope of its authority.'" Id. (quoting Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 33 (2d Cir. 2001)).

Put simply, the conduct that plaintiff complains of – the Frohlich Defendants misleading plaintiff about third-party financing so that he would purchase a life insurance policy he could not afford – has only a tangential connection to AGLIC.[4] Although AGLIC has a general interest in customers buying its insurance policies, an insurance company does not care if the premiums are paid by the insured or a third-party so long as the premiums are paid. Additionally, by plaintiff's own account, the Frohlich Defendants committed insurance fraud against AGLIC.[5] The complaint alleges that the Frohlich Defendants "scripted" Ms. Oberlander's answers for her underwriting interview and submitted false application paperwork

---

[4] Plaintiff's unjust enrichment claim alleges that defendants' "tortious conduct … allowed [AGLIC] to realize substantial revenues [in the form of] the premiums received directly by [AGLIC]." But AGLIC was not responsible for the tortious conduct, so it was not unjustly enriched. Further, there was nothing improper about AGLIC's receipt of the premiums because although plaintiff was paying the premiums, AGLIC was obligated to pay the $15 million benefit if Ms. Oberlander died. As between AGLIC and plaintiff, everyone got what they bargained for.

[5] For this reason, AGLIC also could not ratify the Frohlich Defendants' actions. "Ratification is the express or implied adoption, *i.e.*, recognition and approval, of the unauthorized acts of another." RLI Ins. Co. v. Athan Contracting Corp., 667 F. Supp. 2d 229, 235 (E.D.N.Y. 2009) (citation omitted). "Ratification 'must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language.'" Royal Bank Invs. SA/NV v. Deutsche Bank Nat'l Trust Co., No. 14-cv-4394, 2016 WL 4613390, at *16 (S.D.N.Y. Aug. 31, 2016) (citation omitted). Plaintiff pleads no facts to suggest that AGLIC knew about the representations that the Frohlich Defendants and Lichter were making to plaintiff about third-party financing. AGLIC therefore could not ratify those actions. See Mun. of Bremanger v. Citigroup Glob. Mkts., Inc., No. 09-cv-7058, 2013 WL 1294615, at *21 (S.D.N.Y. March 28, 2013) (finding no ratification when purported principal was not "fully aware of the material facts relating to the transaction, specifically the nature of [the agent's] representations").

to AGLIC. It simply makes no sense to suggest that AGLIC somehow authorized the Frohlich Defendants to act as its agent in this capacity.

In short, it is implausible that the Frohlich Defendants had actual or apparent authority to commit the acts alleged as agents of AGLIC. AGLIC is therefore correct that no claim has been stated against it. Accordingly, all claims against AGLIC are dismissed. The Court thus moves to its analysis of whether plaintiff has adequately alleged each of his claims against the Frohlich Defendants.

## II. Fraud

### A. Lichter as the Frohlich Defendants' Agent

Before the Court can decide whether plaintiff has adequately pleaded his fraud claim against the Frohlich Defendants, the Court must undertake another agency analysis. Specifically, it must decide whether plaintiff has adequately pleaded that Lichter was the Frohlich Defendants' agent. The parties agree that most of plaintiff's support for his fraud claim comes from Lichter's statements.

Although plaintiff need not prove an agency relationship at this stage, plaintiff must plead "specific allegations from which an agency relationship can be inferred." Mosdos Chofetz Chaim, 14 F. Supp. 3d at 215 (quoting Meisel v. Grunberg, 651 F. Supp. 2d 98, 111 (S.D.N.Y. 2008)). As explained above, "a simple conclusory allegation … without more, [does] not plausibly state an agency relationship." Id. But here, there is "more." Plaintiff alleges, based on Lichter's sworn statements in a separate action, that Marc Frohlich was Lichter's "senior colleague"; that the two men agreed to split commissions 50/50; and that plaintiff's application was placed under Frohlich's name because Lichter's employer did not permit him to sell AGLIC products. The principal (Frohlich)'s actions as alleged further support a potential agency

relationship. Plaintiff describes meetings between himself, Lichter, and Frohlich about the policy, which supports plaintiff's allegations that his meetings with Lichter alone about the policy were on behalf of the Frohlich Defendants. This "circumstantial evidence is sufficient to establish the agent's authority to act for the principal" at the pleading stage. Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 327, 345 (S.D.N.Y. 2010).

The Frohlich Defendants urge a different result by citing cases finding no agency relationship in other commission-sharing arrangements. But in Kyung Sup Ahn v. Rooney, Pace Inc., 624 F. Supp. 368, 371 (S.D.N.Y. 1985) (and similar cases), "[t]here [was] no evidence" that the two brokers were "anything other than entirely independent entities." Here, the Frohlich Defendants may have had an unusual amount of control over Lichter pursuant to the commission-sharing arrangement because Lichter could only file an AGLIC application under Frohlich's name. Also, as noted above, plaintiff alleges that Frohlich was present at some of the meetings between Lichter and plaintiff, which further suggests that he may have been "responsible for the appearance of authority in [Lichter] to conduct the transaction in question." LPD N.Y., 2022 WL 4450999, at *9 (quoting Star Funding, Inc., 717 F. App'x at 41).

The Frohlich Defendants also insist that they could not have ratified Lichter's actions – specifically, his alleged kickback promise to plaintiff – because illegal actions cannot be ratified. That is incorrect. Although "[a] principal cannot ratify an agent's act that the principal itself could not have authorized," N.Y. State Med. Transporters Ass'n, Inc. v. Perales, 77 N.Y.2d 126, 131-32, 564 N.Y.S.2d 1007 (1990), a principal cannot avoid vicarious liability because he was allegedly involved in an illegal scheme, see Doro v. Sheet Metal Workers' Int'l Ass'n, 498 F.3d 152, 156 (2d Cir. 2007) (international union could be liable for ratifying local union's illegal acts); In re South African Apartheid Litig., 633 F. Supp. 2d 117, 122-23 (S.D.N.Y. 2009) (a

principle can liable for ratifying illegal acts). A contrary rule would allow a principal to escape liability when it knows its agent is acting illegally on its behalf.

Whether plaintiff will ultimately be able to prove an agency relationship between Lichter and the Frohlich Defendants is by no means clear, but the Court is convinced that plaintiff's allegations on this point are sufficient to survive the pleading stage.

**B. Falsity**

Under Federal Rule of Civil Procedure 9(b), a complaint of fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Plaintiff identifies 11 meetings at which the Frohlich Defendants or Lichter made allegedly fraudulent statements. He generally identifies the times and locations of such meetings and explains why he believes the statements were fraudulent (*i.e.*, because no premium financing ever materialized). However, many of plaintiff's allegations do not satisfy the heightened standard for pleading fraud under Rule 9(b) because they merely allege that Lichter made "false representations about the costs of the policy and the benefits of purchasing the policy" during a meeting on a specific date at a specific location. The statements themselves must be specified for a factfinder to assess whether they were fraudulent; an assertion that Lichter "made false representations" is not enough. See Iqbal, 556 U.S. at 681 (quoting Twombly, 550 U.S. at 555). This is not an overwhelming burden to place on plaintiff because, according to his pleading, he was present for each of the statements.

To be fair, some of plaintiff's allegations are specific. For example, plaintiff alleges that at the October 21, 2014 meeting, Lichter vouched that plaintiff would not need to "invest a dime" to obtain the life insurance policy. Regarding the December 9, 2014 meeting, plaintiff alleges that Lichter promised plaintiff that he would "get reimbursed on all his outlays." And regarding the March 27, 2015 meeting, plaintiff alleges that Frohlich promised that plaintiff would be reimbursed for his outlays and would "not pay a nickel" for the policy.[6] Of course, plaintiff contends that all these representations were false because no third-party financing ever materialized.

To adequately plead fraud, plaintiff must further allege that the Frohlich Defendants and Lichter knew the statements were false at the time. See Channel Master Corp. v. Aluminum Ltd. Sales, 4 N.Y.2d 403, 407-08, 176 N.Y.S.2d 259 (1958) (explaining that one element of a fraudulent representation is "that the defendant knowingly uttered a falsehood"). A statement may be false because it materially omits important information. See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co., 553 F.3d 187, 197 (2d Cir. 2009) (explaining that plaintiff states a securities fraud claim if he shows that defendant "made a materially false statement *or omitted a material fact*" (emphasis added); see also King Cnty., Wash. v. IKB Deutsche Industriebank AG, 708 F. Supp. 2d 334, 338 (S.D.N.Y. 2010) ("Because the elements of common law fraud under New York law are 'substantially identical to those governing [securities fraud claims], the identical analysis applies.'" (citation omitted)).

[6] The Frohlich Defendants argue that plaintiff could not have relied on the March 27 statement because it was made after plaintiff's purchase of the policy. Although it is true that plaintiff could not have relied on this statement to purchase the policy, plaintiff continued making premium payments for more than a year after this statement. It is therefore plausible that the March 27 statement induced plaintiff to keep making premium payments, and the Court thus finds that the timing of the statement does not preclude it from forming part of plaintiff's fraud claim.

Here, plaintiff has alleged just enough facts for the Court to conclude that the Frohlich Defendants may have known at the time they made each statement that they were materially omitting material information (*i.e.*, that the third-party financing would have required collateralization of Pearl Oberlander's properties). Plaintiff apparently understood that the third-party financer would pay the premiums without requiring any collateral. A reasonable factfinder could find that, during the many meetings with plaintiff about this policy, the Frohlich Defendants (and Lichter) purposefully omitted the specifics of the contemplated financing arrangement. See Channel Master Corp., 4 N.Y.2d at 408 (explaining that a fraud claim is viable "where a defendant has fraudulently and positively as with personal knowledge stated that something was to be done when he knew all the time it was not to be done and that his representations were false").

If the facts are as plaintiff alleges them, such omissions were more than "representation[s] of opinion or a prediction of something which is hoped or expected to occur in the future," Chase Invs., Ltd. v. Kent, 256 A.D.2d 298, 299, 681 N.Y.S.2d 319 (2nd Dep't 1998). If the Frohlich Defendants had merely said, for example, "we think we can get you third-party financing that does not require collateralization of your mother's homes," they could rely on the fact that statements of prediction or hope are not actionable fraudulent misrepresentations. But as pleaded, the Frohlich Defendants never alerted plaintiff to the likely third-party financing arrangement – *i.e.*, an arrangement that would require liens on Ms. Oberlander's properties. Plaintiff's allegations regarding those repeated omissions state a plausible fraud claim.

However, plaintiff may not stake his fraud claim on Lichter's promise to pay an illegal kickback. First, Lichter in fact paid him an illegal kickback in the amount of $100,000.00. Plaintiff cannot show that Lichter's statement about the kickback was a false representation of

material fact because it was not false. Second, if the "partial performance" was not enough, plaintiff fails to plead any particular facts about the illegal kickback. He alleges that Lichter promised him approximately 10 percent of the commissions earned on the policy, but he does not allege when that statement was made, where it was made, or whether Lichter knew that he would never fully perform the promise when he made it.

To summarize, plaintiff's fraud claim based on the Frohlich Defendants' representations that he would "not pay a nickel" (and similar statements) may proceed. The Court notes that it reaches this result without relying on the contents of Lichter's state court complaint. On a motion to dismiss, the Court may consider documents that are incorporated by reference and integral to the complaint. Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). Still, although Lichter tells a very different story from plaintiff, it is not the role of the Court to weigh the credibility of two conflicting stories at the motion-to-dismiss stage.[7]

## III. Breach of Contract & Breach of Implied Covenant of Good Faith

The Frohlich Defendants contend that plaintiff's breach of contract claim fails because it is barred by the statute of frauds. They further argue that the insurance policy itself cannot be the underlying contract because the Frohlich Defendants were not party to the policy. Plaintiff agrees that the Frohlich Defendants were not parties to the policy but argues that this is "beside the point" because his claims are based on an agreement with the Frohlich Defendants that plaintiff would buy a life insurance policy and the Frohlich Defendants would serve as plaintiff's insurance broker and provide "premium financing services."

[7] Lichter's allegations on which plaintiff partially relies to allege the agency relationship between Lichter and the Frohlich Defendants do not contradict plaintiff's account, and thus the Court may accept them as true without weighing credibility prematurely.

Plaintiff therefore brings his breach of contract and breach of implied covenant of good faith and fair dealing claims pursuant to an oral contract. The New York statute of frauds, New York General Obligations Law § 5-701, requires "a contract to pay compensation for services rendered in negotiating a loan" to be in writing. Id. § 5-701(a)(1). Plaintiff's claim is therefore barred by the statute of frauds because the oral contract was an agreement pursuant to which the Frohlich Defendants agreed to secure premium financing (*i.e.*, negotiate a loan) and plaintiff agreed to buy a policy (*i.e.*, compensate the Frohlich Defendants in the form of commissions).

To avoid this result, plaintiff argues that his claim is not based on "compensation for *negotiating* a loan" because the Frohlich Defendants did not negotiate anything. This argument ignores the plain text of the statute, which states that the term "'negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction," id. That the Frohlich Defendants did not introduce plaintiff to a third-party financer or otherwise assist in procuring third-party financing is the substance of plaintiff's breach of contract claim, and this type of contract is covered by the statute of frauds. Because there is no written agreement regarding this purported contract, the claim is dismissed.

Additionally, because there is no enforceable contract, there can be no breach of the implied covenant of good faith and fair dealing. In any event, "New York law … does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Gan v. GSUIG Real Est. Member LLC, 797 F. Supp. 3d 69, 102 (E.D.N.Y. 2025) (quoting Harris v. Provident Life & Acc. Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)), aff'd, No. 25-2313-cv, 2026 WL 1145891 (2d Cir. April 28, 2026). "[W]hen a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as the breach of contract claim, the claim for

the breach of implied covenant must be dismissed as duplicative of the breach of contract claim." Id. (quoting Hadami, S.A. v. Xerox Corp., 272 F. Supp. 3d 587, 588 (S.D.N.Y. 2017)). Thus, plaintiff's breach of implied covenant claim is dismissed because there is no enforceable contract and it is duplicative of the breach of contract claim.

## IV. Breach of Fiduciary Duty

The Frohlich Defendants argue that the breach of fiduciary duty claim is time-barred. Under New York law, "[b]reach of fiduciary duty claims that seek monetary damages only are subject to a three-year statute of limitations."[8] Murphy v. Morlitz, 751 F. App'x 28, 30 (2d Cir. 2018) (summary order). However, "where an allegation of fraud is essential to a breach of fiduciary duty claim, courts have applied a six-year statute of limitations." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 139, 879 N.Y.S.2d 355 (2009). Without plaintiff's fraud claim, there is no breach of fiduciary duty claim. The Court thus finds that the "allegation of fraud is essential," and the statute of limitations does not bar this claim. See Kaufman v. Cohen, 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003) ("The timeliness of [plaintiff's] breach of fiduciary duty claim … turns on the viability of [plaintiff's] fraud cause of action[.]").

The Frohlich Defendants argue alternatively that the breach of fiduciary claim fails because plaintiff has not alleged a special relationship. See Cathy Daniels, Ltd. v. Weingast, 91 A.D.3d 431, 433, 936 N.Y.S.2d 44 (1st Dep't 2012) ("In the absence of a special relationship, a claim against an insurance agent or broker for breach of fiduciary duty does not lie."). In Voss v. Netherlands Ins. Co., 22 N.Y.3d 728, 735, 985 N.Y.S.2d 448 (2014), the Court of Appeals of

[8] Plaintiff brings a standalone "declaratory judgment" claim seeking "a declaration that [d]efendants are obligated to repay all premium payments" because the policy was void. Because the Court finds that this request for equitable relief is really just a claim for monetary relief – and because the declaratory judgment request is not tied to any particular claim in any event – the Court does not believe that this aspect of the complaint warrants treating the breach of fiduciary duty claim (or any other claim) as seeking equitable relief.

New York identified three "exceptional situations that may give rise to a special relationship" between an insurance broker and a client:

> (1) the agent receives compensation for consultation apart from payment of the premiums; (2) there was some interaction regarding a question of coverage, with the insured relying on the expertise of the agent; or (3) there is a course of dealing over an extended period of time which would have put objectively reasonable insurance agents on notice that their advice was being sought and specially relied on.

The first two exceptions are inapplicable here, although plaintiff argues that the Frohlich Defendants' advice about premium financing was "regarding a question of coverage." The Court disagrees and finds that it is the third exception that might apply. Although not all of the meetings plaintiff describes in his complaint are pleaded with sufficient particularity to support a fraud claim, the series of meetings may establish "a course of dealing over an extended period of time which would have put [the Frohlich Defendants] on notice that their advice was being sought and specially relied on." Although "it remains to be determined whether a special relationship existed here," id. at 736, the Court finds that plaintiff's allegations state a plausible basis for a special relationship. The Court thus declines to dismiss the breach of fiduciary duty claim.

## V. Negligence

The Frohlich Defendants assert that plaintiff's negligence claim also is time-barred. The Court agrees. Negligence claims under New York law have a three-year statute of limitations period. See N.Y. C.P.L.R. § 214. "As a general rule under New York law, statutes of limitation begin to run at the time an injury is inflicted, irrespective of whether or not a plaintiff is aware of the fact that they have been injured." Greenwald v. City of New York, No. 06-cv-2864, 2012 WL 6962297, at *7 (E.D.N.Y. July 19, 2012). "Unlike federal law and the law of some other

states, New York does not, as a general matter, apply a discovery rule," id., meaning that the limitations period begins to run even if plaintiff has not "discovered" his injury.

Although plaintiff insists that his "injuries were not a single event," the events supporting the negligence claim against the Frohlich Defendants all occurred before or near the time when plaintiff acquired the life insurance policy in March 2015. And even under the most charitable reading, the injury accrued when the policy lapsed in August 2016, *i.e.*, more than three years before plaintiff filed this lawsuit in September 2019. The negligence claim is therefore dismissed as untimely.

## VI. Violation of New York General Business Law § 349

The Frohlich Defendants argue that plaintiff's claim under New York General Business Law § 349 is also time-barred and fails on the merits because the conduct alleged is not "consumer-oriented."

To state a claim under Section 349, plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.3d 529 (1995). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Id. Plaintiff argues that the Frohlich Defendants used a standard "pitch" to deceive him and "[w]hether the Frohlich Defendants used the same pitch on other buyers is a fact for discovery." Although marketing of life insurance through an "extensive marketing scheme" may be consumer-oriented, Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177 (1999), the Court is not convinced that plaintiff has plausibly alleged such an "extensive marketing scheme" here. The facts of this case are more like Flax v. Lincoln National Life Insurance Company, 54 A.D.3d 992, 995, 864 N.Y.S.2d 559 (2nd Dep't 2008), in which the court held that plaintiff's

allegations about "misleading oral representations regarding the nature of [a life insurance policy]" were "insufficient to show that the defendants engaged in consumer oriented conduct, and [did] not state a cause of action for violation of General Business Law § 349."

The Court likely would not allow this claim to proceed to discovery based on plaintiff's conclusory allegations that the Frohlich Defendants used the same "pitch" on other individuals, but in any event, plaintiff's Section 349 claim is time-barred. See Statler v. Dell, Inc., 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) ("Actions brought pursuant to Section 349 must be commenced within three years of the date of accrual."); Wiseman v. ING Groep, N.V., No. 16-cv-7587, 2017 WL 4712417, at *10 (S.D.N.Y. Sept. 28, 2017) (explaining that Section 349's "statute of limitations runs from the date on which the injury occurs rather than from when it is discovered by the plaintiff"). As discussed above, at the latest, plaintiff's injury accrued on the date the policy lapsed, August 8, 2016. He did not file this suit until September 2019, more than three years later. His Section 349 claim is therefore dismissed as untimely.

## VII. Unjust Enrichment

The Frohlich Defendants next argue that plaintiff's claim for unjust enrichment must fail because it is duplicative of his contract and tort claims.[9] Plaintiff counters that this claim is not duplicative but rather pleaded in the alternative, as permitted by Federal Rule of Civil Procedure 8(d). Plaintiff is correct that he may plead claims in the alternative at this stage, although "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional

[9] AGLIC, which addresses plaintiff's claims against the Frohlich Defendants because they are relevant to its vicarious liability, argues that this claim is also time-barred. Although some courts have held that unjust enrichment claims seeking monetary damages have a three-year statute of limitations, see, e.g., Ruiz v. N.Y. Mortg. Agency, No. 25-cv-1837, 2026 WL 851403, at *14 (E.D.N.Y. March 28, 2026), the Second Circuit has stated that "[t]he statute of limitations in New York for claims of unjust enrichment … is generally six years." Golden Pac. Bancorp v. F.D.I.C., 273 F.3d 509, 518 (2d Cir. 2001). The Court thus declines to dismiss the claim on this basis.

contract or tort claim," Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790-91, 944 N.Y.S.2d 732 (2012).

Unjust enrichment is a quasi-contract claim and "rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142, 879 N.Y.S.2d 355 (2009) (citation omitted). "The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." Goel v. Ramachandran, 111 A.D.3d 783, 791, 975 N.Y.S.2d 428 (2nd Dep't 2018) (citation omitted). "Critical is that under the circumstances and as between the two parties to the transaction the enrichment be unjust." Id. at 791 (quoting McGrath v. Hilding, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603 (1977)).

Here, plaintiff essentially argues that the Frohlich Defendants were unjustly enriched with the commissions they earned when AGLIC issued the life insurance policy because the policy was obtained as a result of their fraud. This unjust enrichment claim regarding the Frohlich Defendants' commissions is therefore distinct from the fraud claim, which concerns plaintiff's own outlays (*i.e.*, the premiums he paid on the policy and related expenditures). The Court thus declines to dismiss this claim as duplicative of plaintiff's other claims.[10]

[10] The fact that the commissions were not paid directly by plaintiff does not pose an obstacle to plaintiff's claim. "[A] New York unjust enrichment claim requires no 'direct relationship' between plaintiff and defendant." Myun-Uk Choi v. Tower Rsch. Cap. LLC, 890 F.3d 60, 69 (2d Cir. 2018). "Rather, the requirement of a connection between plaintiff and defendant is a modest one: '[A] claim will not be supported if the connection between the parties is too attenuated.'" Id. (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465 (2011)). The relationship between plaintiff's paying of premiums (in reliance on third-party financing that never materialized) and defendants' receipt of commissions is not "too attenuated" to support an unjust enrichment claim.

**VIII. Damages**

On appeal, the Second Circuit declined to decide "whether the measure of [plaintiff's] damages is too speculative to support a cause of action." Oberlander, 2023 WL 2849114, at *2 n.1 (citing Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 279 (2d Cir. 1992), abrogated on other grounds by Gerosa v. Savasta & Co., Inc., 329 F.3d 317 (2d Cir. 2003)). The Frohlich Defendants did not raise this issue in their original briefing or before the Second Circuit, but they now contend that plaintiffs' fraud-based damages are too speculative.

To adequately allege damages due to defendants' fraudulent representations or breach of fiduciary duty, plaintiff must allege "proof of a causal connection between the fraud perpetrated and the loss complained of." Diduck, 974 F.2d at 279. Plaintiff has alleged that causal connection here. He alleges that at the time defendants solicited the relevant policy, he was already worried about being overextended by premiums on other life insurance policies and explained to defendants that he could not afford to pay additional premiums. Assuming this is true, plaintiff would not have purchased the life insurance policy or taken out loans to pay the premiums but for defendants' representations about the premium financing. Whether plaintiff will ultimately be able to prove reliance or whether his damages will ultimately be reduced by the value of the insurance coverage he received while paying the premiums are irrelevant at this stage; he has adequately alleged damages.

**CONCLUSION**

For the foregoing reasons, AGLIC's motion to dismiss is granted and the Frohlich Defendants' motion to dismiss is granted in part and denied in part. The Clerk is directed to dismiss AGLIC as a defendant. The Court finds that any further amendment of the complaint

would be futile and thus does not grant plaintiff leave to amend. See Attestor Value Master Fund v. Republic of Argentina, 940 F.3d 825, 833 (2d Cir. 2019).

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
November 14, 2026